# EXHIBIT

# D

At a Commercial Part of the Supreme
Court of the State of New York, held in
and for the County of Kings, at the
Courthouse located at 360 Adam Street,
Brooklyn, New York, on the _3_ day of
April___, 2016.

PRESENT: <u>Honorable Lawrence Knipel</u>
            Justice of the Supreme Court

WELLS FARGO BANK, N.A., as Trustee for       Index No. 500469/2013
the registered holders of Sovereign Commercial
Mortgage    Securities    Trust,    2007-C1,
Commercial     Mortgage    Pass-Through
Certificates, Series 2007-C1,
                                             **AMENDED FINAL JUDGMENT**
                                             **OF FORECLOSURE AND SALE**
                    Plaintiff,

            - against -                       Foreclosure of: 3126 Coney Island
                                              Avenue, Brooklyn, NY 11235
BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,              Block: 8678
PRESERVATION AND DEVELOPMENT, NEW             Lot:      59
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN
DOE NO. 10" inclusive, the last ten names being
fictitious and unknown to plaintiff, the persons or
parties intended being the tenants, occupants,
persons or corporations, if any, having or claiming
an interest in or lien upon the premises described
in the complaint,

                    Defendants.

        UPON the summons and complaint dated January 30, 2013 duly filed in this action with

the Office of the Kings County Clerk on the same date (the "Complaint"); and upon the Notice

of Pendency of Action duly filed in this action with the Office of the Clerk of Kings County on

May 17, 2013; and upon proceedings thereon, showing that each of the defendants herein have

been duly served with the Summons and Complaint in this action; and it appearing to the

satisfaction of the Court that plaintiff Wells Fargo Bank, N.A., as Trustee for the registered

11252977V.2 057301/0853817

holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Plaintiff"), acting by and through Waterstone Asset Management LLC, its Sub-Special Servicer, brings this action to foreclose a Consolidation, Extension and Modification Agreement (the "Consolidated Mortgage") upon certain real and personal property situated in the City of New York, County of Kings, State of New York, Block 8678, Lot 59 on the Tax Map of the County of Kings, known by the street address 3126 Coney Island Avenue (the "Premises"); and upon the executed Stipulation of Settlement entered February 28, 2014 (the "Stipulation"), pursuant to which Boysin Lorick consented to entry of this final judgment of foreclosure and sale; and upon the Final Judgment of Foreclosure and Sale dated February 21, 2014 and entered herein on March 5, 2014; and upon the Order Appointing Substitute Referee dated August 7, 2015, which Order Appointing Substitute Referee appointed Jeffrey R. Miller, Esq., as Substitute Referee; and upon the order of the Honorable Lawrence Knipel entered November 18, 2015 directing the Substitute Referee to compute the amount due to Plaintiff and ordering Plaintiff to submit a final judgment on notice to all parties;

AND on reading and filing the Report of Amount Due of Jeffrey R. Miller, Esq., the Substitute Referee, by which Report of Amount Due, bearing the date of March 23, 2016, it appears that the sum of $3,668,619.69 was due thereon as of January 31, 2016; and that the mortgaged premises should be sold in one parcel; and upon the affirmation of Keith M. Brandofino dated March 31, 2016; and due deliberation having been had thereon;

NOW, upon proof of due notice of this application upon all parties who had not waived the same, and upon proof of service of the Order of Reference as provided therein,

ON MOTION of Kilpatrick Townsend & Stockton, LLP, attorneys for the plaintiff, it is

ORDERED, ADJUDGED AND DECREED, that the caption of this action be amended by striking therefrom the remaining defendants sued herein as "John Doe No. 1" to "John Doe No. 10", all without prejudice to the proceedings heretofore had herein; and it is further

ORDERED, ADJUDGED AND DECREED, that the caption of this action, as amended, shall read as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, | Index No. 500469/2013 |
| Plaintiff, | |
| - against - | |
| BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT AND NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, | |
| Defendants. | |

and it is further

ORDERED, ADJUDGED AND DECREED, that the said Report of Jeffrey R. Miller, Esq, dated as of March 23, 2016 be, and the same is hereby to the extent provided for herein ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED, that the above-described mortgaged premises or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold, in one parcel, at public auction in Room 224 of Kings County Supreme Court, 360

Adams Street, Brooklyn, New York 11201, on a Thursday afternoon at 2:30 P.M., by and under the direction of Jeffrey R. Miller, Esq. who is hereby appointed Substitute Referee for that purpose, that the said Substitute Referee shall set the date of sale and give public notice of the time and place of sale in accordance with RPAPL 231 in _Home Reporte_., and it is further

ORDERED, ADJUDGED AND DECREED that said Referee shall accept at such sale the highest bid offered by a bidder, who shall be identified upon the court record, and shall require that such successful bidder immediately pay to the Substitute Referee in cash or certified or bank check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the purchase of the premises, unless such successful bidder is the plaintiff herein, in which case, no deposit against the purchase price shall be required, and it is further

ORDERED, ADJUDGED AND DECREED that in the event that the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the subject property, the property shall thereafter immediately, on the same day, be reoffered at auction, and it is further

ORDERED, ADJUDGED AND DECREED that the closing of title shall take place at the office of the Substitute Referee or at such other location as the Substitute Referee shall determine within forty-five days after such sale unless otherwise stipulated by all parties. The Substitute Referee shall transfer title only to the successful bidder at the auction. Any delay or adjournment of the closing date beyond forty-five days may be stipulated among the parties, with the Substitute Referee's consent, up to ninety days from the date of sale, but any adjournment beyond ninety days may be set only with the approval of this Court, and, it is further

ORDERED, ADJUDGED AND DECREED that the Substitute Referee deposit all funds received pursuant to this Order in his/her own name as Substitute Referee in _____ *any NYC.* _____ Bank within the City of New York , and it is further

ORDERED, ADJUDGED AND DECREED that said Substitute Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

**FIRST**: The statutory fees and commissions of said Substitute Referee pursuant to CPLR § 8003 (b) which shall not exceed $500 unless the sale price (the amount of the accepted bid) exceeds $50,000. In the event the sale price exceeds fifty thousand dollars and additional compensation (including commissions) in excess of $500 is sought pursuant to CPLR § 8003(b), and if no surplus monies are produced by the sale, the parties may present a stipulation, signed by the Substitute Referee and all parties appearing, agreeing to a stated sum, to be so-ordered by the Court. Where surplus monies will be available following distribution of sums as provided herein, or where the parties are unable to agree to the Substitute Referee's proper compensation under CPLR § 8003 (b), application shall be made to this Court on notice to all parties known to be entitled to claim against any surplus monies, including the defaulting owner of the equity of redemption. Such application shall be promptly submitted to the Court within five days of the transfer of the deed and prior to filing the Report of Sale. The five day period for payment of surplus money into Court as set forth in RPAPL § 1354(4), and the thirty day period set forth in RPAPL § 1355 for the filing of the Report of Sale shall be deemed extended pending the decision of the Court regarding such application.

In the event a scheduled sale is cancelled or postponed, pursuant to CPLR § 8003(a), plaintiff shall compensate the Substitute Referee in the sum of $250.00 for each adjournment or cancellation unless the Substitute Referee has requested the delay. Such compensation may be

recouped from the proceeds of sale as a cost to plaintiff. This Order shall constitute the necessary prior authorization for compensation as set forth herein.

No compensation in excess of $750, including compensation authorized pursuant to CPLR § 8003 (a) for computation of the sum due to plaintiff, may be accepted by the Substitute Referee without Court approval and compliance with the filing provisions of Section 36.4 of the Rules of the Chief Judge.

**SECOND**: The expenses of the sale, including the cost of advertising as shown on the bills presented and certified by said Substitute Referee to be correct, copies of which shall be annexed to the Report of Sale **and the NYC Transfer Tax, pursuant to 19 RCNY 23-03(d)(2), if applicable, payable within 30 days of delivery of the deed pursuant to 19 RCNY 23-08(a). The Referee shall not be held responsible for the payment of penalties or fees pursuant to this appointment. Purchaser** *and any title company hired by the purchaser* **shall be responsible for any penalties or fees incurred as a result of a late payment of the tax as required pursuant to the City Administrative Code 19 RCNY 23-08(a) which requires payment within 30 days. The Purchaser shall hold the Substitute Referee harmless from any such penalties accessed as a result of late payment of these taxes.**

**THIRD**: Pursuant to Real Property Actions and Proceedings Law § 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the property by a city agency which have priority over the foreclosed mortgage, which are liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment.

**FOURTH**: Said Substitute Referee shall then pay to the plaintiff or its attorney the sum of $ _9602 78_ for costs and disbursements in this action to be taxed by the Clerk

and inserted herein, with interest from the date hereof, [together with an additional allowance of

$ _300_ hereby awarded to the plaintiff in addition to costs with interest thereon

from the date hereof,] and also the sum of $3,668,619.69 the said amount so reported due as

aforesaid, together with interest thereon pursuant to the terms of the Note from January 31, 2016,

the date the interest was calculated to in said Report, to the date of entry of this Order, and

thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as

the purchase money of the mortgaged premises will pay of the same, together with

$ _85,000_ hereby awarded to the plaintiff as reasonable legal fees, together with any

advances as provided for in the note and mortgage which plaintiff may have made for taxes,

insurance, principal and interest and any other charges due to prior mortgages or to maintain the

premises pending consummation of this foreclosure sale, not previously included in the

computation, upon presentation to the Substitute Referee of receipts for said expenditures, all

together with interest thereon pursuant to the note and mortgage as above provided. Copies of

such receipts shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to

confirm the Referee's Report of Sale pursuant to RPAPL § 1355. It is further

ORDERED, ADJUDGED AND DECREED that in case the plaintiff be the purchaser of

said mortgaged premises at said sale, said Referee shall not require the plaintiff to pay in cash the

entire amount bid at said sale, but shall execute and deliver only to the plaintiff a deed of the

premises sold upon the payment to said Substitute Referee of the sum awarded to him or her

under the above provisions marked "FIRST", "SECOND", and "THIRD" if such expenses were

paid by the Substitute Referee, or in lieu of the payment of said last mentioned amounts, upon

filing with said Substitute Referee receipts of the proper municipal authorities showing payment

thereof. The balance of the amount bid, after deducting therefrom the aforementioned payments

to the Substitute Referee for compensation and expenses, taxes, assessments, sewer rents, water rates, and priority liens of a city agency, shall be allowed to the plaintiff and applied by said Substitute Referee upon the amounts due to the plaintiff as specified in item marked "FOURTH". If upon so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the said Substitute Referee, upon delivery to plaintiff of said Substitute Referee's deed, the amount of such surplus which shall be applied by the Substitute Referee, upon motion made pursuant to RPAPL § 1351(3) and proof satisfactory to the Substitute Referee of the sums due thereon, to any subordinate mortgage duly recorded against the property, pursuant to RPAPL § 1354 (3), which payment shall be reported in the Referee's Report of Sale. Any surplus remaining after all payments as herein provided shall be deposited into Court in accordance with RPAPL § 1354 (4) and the Substitute Referee shall immediately give notice of such surplus to the owner of the mortgaged premises as identified by plaintiff at the time of the sale, and it is further

ORDERED, ADJUDGED AND DECREED that said Substitute Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "FOURTH", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Substitute Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Kings County Clerk, with a copy to the Chambers of the Appointing Justice, within thirty days after completing the

sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the court with respect to any application for additional compensation; and it is further

ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff may recover of the defendants Boysin Lorick and Cynthia Lorick the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceeding Law within 90 days of the delivery of the deed by the Substitute Referee, and the amount thereof is determined and awarded by an order of this Court as provided for in said action; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession on production of the Substitute Referee's deed or deeds; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to any state of facts that an inspection of the premises would disclose, any state of facts that an accurate survey of the premises would show, any covenants, restrictions, declarations, reservations, easements, right of way and public utility agreements of record, any building and zoning ordinances of the

municipality in which the mortgaged premises is located and possible violations of same, any rights of tenants or persons in possession of the subject premises, prior liens of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings law, and any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale. Risk of loss shall not pass to purchaser until closing of title.

ORDERED, that in Absence of the Substitute Referee, the Court may designate a another Substitute Referee forthwith; and it is further

ORDERED, that the Substitute Referee appointed herein is subject to the requirements of Rule 36.2(c) of the Chief Judge, and if the Substitute Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Substitute Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED, that a copy of this Judgment with Notice of Entry shall be served upon the designated Substitute Referee, the owner of the equity of redemption as of the date of this Order, any tenants named in this action and any other party entitled to notice within twenty days of entry and no less than thirty days prior to sale; and it is further

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the Owner of Equity of Redemption at both his/her last known address and the property address (affidavit of such service shall be presented to the Foreclosure Clerk on or before the auction sale) and upon the Foreclosure Department at least ten (10) days prior to the scheduled sale.

Dated: 6/3/2016

ENTERED:

HONORABLE LAWRENCE KNIPEL, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -

Index No.: 500469/2013

BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

# NOTICE OF SETTLEMENT OF PROPOSED AMENDED FINAL JUDGMENT AND AMENDED FINAL JUDGMENT OF FORECLOSURE AND SALE



## KILPATRICK TOWNSEND

### ATTORNEYS AT LAW

ATTORNEYS FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF SOVEREIGN COMMERCIAL MORTGAGE SECURITIES TRUST, 2007-C1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C1

OFFICES AND POST OFFICE ADDRESS

1114 Avenue of the Americas, 21st Floor
New York, NY 10036
TEL. NO.: (212) 775-8700
FAX NO.: (212) 775-8800

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,<br><br>                              Plaintiff,<br><br>         -against-<br><br>BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                              Defendants. | Index No.:   500469/2013<br><br><br><br><br><br><u>**REFEREE'S OATH**</u> |

STATE OF NEW YORK       )
                                            ) ss.:
COUNTY OF KINGS          )

        I, Jeffrey R. Miller, Esq., the Substitute Referee appointed by Order Appointing

Substitute Referee dated August 7, 2015 and entered September 25, 2015 and Order dated

November 13, 2015, to ascertain and compute a revised amount due to plaintiff, Wells Fargo

Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities

Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, for principal,

interest and other charges in accordance with the agreement of the parties as set forth in the

8128817V.1 057301/0853817

Stipulation of Settlement and Order entered February 28, 2014, do solemnly swear that I will faithfully and fairly determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as required by the Court and above referenced orders.

_____
Jeffrey R. Miller, Esq., Substitute Referee

Sworn to before me on this
22nd  day of _March_____, 2016

_____
Notary Public

```
EVAN MIZRAHI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MI6325621
Qualified in Kings County
Commission Expires June 1, 20
```

2

8128817V.1 057301/0853817

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,<br><br>     Plaintiff,<br><br>  -against-<br><br>BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>     Defendants. | Index No.:   500469/2013<br><br><br><br>**REPORT OF AMOUNT DUE** |

TO THE SUPREME COURT:

    In pursuance of by Order Appointing Substitute Referee dated August 7, 2015 and entered September 25, 2015 (the "Substitution Order") and Order dated November 13, 2015, whereby it was referred to the undersigned Substitute Referee to ascertain and compute a revised amount due to plaintiff, Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, in accordance with the agreement of the parties as set forth in the Stipulation of Settlement and Order entered February 28, 2014.

8128817V.1 057301/0853817

I, Jeffrey R. Miller, Esq., the Substitute Referee named in the Substitution Order, do report, that before proceeding to hear the testimony, I was first duly sworn to determine the questions referred to me, and to make a just and true report thereon, according to the best of my understanding; that by Affidavit of Amount Due of Dennis McCloskey, Senior Asset Manager with Waterstone Asset Management, LLC, the servicer of the subject loan for Plaintiff, sworn to on February 8, 2016, Plaintiff submitted evidence as to the amount due to Plaintiff as agreed to in the Stipulation of Settlement and Order entered February 28, 2014 (the "Stipulation of Settlement and Order"). I have computed and ascertained the amount due to Plaintiff upon the Stipulation of Settlement and Order and I find, and accordingly report, that there is due to Plaintiff, as of January 31, 2016, the sum of $3,668,619.69 plus interest in accordance with the terms of the Stipulation of Settlement and Order, calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $125,812.46 |
| Accrued and Unpaid Contract Interest From October 15, 2013 Through and Including January 31, 2016<br>Rate: 5.25%<br>Per Diem: $290.56<br>Number of Days: 840 | $244,070.40 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $239,768.88 |
| Accrued and Unpaid Default Interest From October 15, 2013 Through and Including January 31, 2016<br>Rate: 10.75%<br>Per Diem: $594.96<br>Number of Days: 840 | $499,766.40 |
| Accrued and Unpaid Late Charges (as agreed to per | $100,056.38 |

2

| | |
|---|---|
| the Stipulation and ordered per the Foreclosure Judgment) | |
| Tax Advances | $141,532.17 |
| Insurance Advances | $149,418.97 |
| Interest on Advances | $32,903.62 |
| Special Servicer Administration Fees (as agreed to per the Stipulation and ordered per Foreclosure Judgment) | $300.00 |
| Liquidation Fee | $ 73,075.89 |
| Appraisal (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $5,000.00 |
| Attorneys' Fees and Costs through execution of the Stipulation (as agreed to per the Stipulation and ordered per Foreclosure Judgment)[1] | $74,816.50 |
| Holdback Fee | $15,000.00 |
| *Subtotal* | *$3,693,932.52* |
| Reserve Balance | ($25,312.83) |
| **Total Amount Due** | **$3,668,619.69** |

Dated: _____3/23//6_____, 2016

_____
Jeffrey R. Miller, Esq., Referee

---

[1] Additional attorneys' fees and costs have been incurred and will be sought by Plaintiff in connection with its application to the Court and to confirm the Substitute Referee's report of amount due.

3

## SCHEDULE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Copy of Summons and Complaint |
| Exhibit 2 | Copy of Stipulation of Settlement and Order entered February 28, 2014 |
| Exhibit 3 | Copy of Order Appointing Substitute Referee dated August 7, 2015 and entered September 25, 2015 |
| Exhibit 4 | Copy of Order dated November 13, 2015 |
| Exhibit 5 | Affidavit of Amount Due of Dennis McCloskey, with Exhibits A through H attached thereto |

E

X

H

I

B

I

T

1

Case 1:18-cv-07178-ENV-JO   Document 45-5   Filed 06/01/20   Page 20 of 157 PageID #: 551

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, | Index No.: _____ |
| Plaintiff, | Date of Filing: _____ |
| - against - | |
| | **SUMMONS** |
| BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, | |
| Defendants. | |

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to appear in this action and to serve a copy of your answer to the complaint in this action upon the attorneys for plaintiff within twenty days after service of this summons, exclusive of the day of service, or within thirty days after service is complete if the summons is not personally delivered to you within the State of New York. In case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the complaint.

4153388V.1 57301/853817

Plaintiff designates Kings County as the place of trial.  The basis of venue is the location of the property that is the subject of this foreclosure action.

Dated: New York, New York
       January 30, 2013

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____
     Keith M. Brandofino, Esq.
     Tamara A. Daniels, Esq.
     Attorneys for Plaintiff
        WELLS FARGO BANK, N.A., as Trustee for the
        registered holders of Sovereign Commercial
        Mortgage Securities Trust, 2007-C1, Commercial
        Mortgage Pass-Through Certificates, Series 2007-
        C1
     1114 Avenue of the Americas, 21st Floor
     New York, New York  10036
     (212) 775-8700

TO:   BOYSIN LORICK
      38 Utica Road
      Edison, New Jersey  08820

      CYNTHIA LORICK
      38 Utica Road
      Edison, New Jersey  08820

      NEW YORK CITY DEPARTMENT
         OF HOUSING, PRESERVATION AND DEVELOPMENT
      100 Gold Street, 3rd Floor
      New York, New York  10038

      THE CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD
      66 John Street, 10th Floor
      New York, New York  10038

2

4153388V.1 57301/853817

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, <br><br>                         Plaintiff, <br><br>         - against - <br><br> BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, <br><br>                    Defendants. | Index No.: _____ <br><br><br><br> **COMMERCIAL MORTGAGE FORECLOSURE COMPLAINT** |

       Plaintiff WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Plaintiff" or "Trustee") by its attorneys, Kilpatrick Townsend & Stockton LLP, for its complaint, alleges the following:

       1.     Trustee, by and through Waterstone Asset Management, LLC, its Sub-Special Servicer, is a national banking association with an office located at c/o Waterstone Asset Management, LLC, 8720 Red Oak Boulevard, Suite 300, Charlotte, North Carolina 28217, and is the current holder of the loan documents that are the subject of this foreclosure action.

       2.     Defendant Boysin Lorick is an individual having an address at 38 Utica Road, Edison, New Jersey 08820.

4152733V.2 57301/853817

3.      Defendant Cynthia Lorick is an individual having an address at 38 Utica Road, Edison, New Jersey 08820.  Cynthia Lorick together with Boysin Lorick shall be referred to collectively as the "Borrowers".

4.      Borrowers are the obligors on the notes and mortgages described below, which are the subject of this action, and are the owners of real property known as 3126 Coney Island Avenue, Brooklyn, New York 11235 (the "Premises"), as is more particularly described in Exhibit A hereto.

5.      New York City Department of Housing, Preservation Environmental Control Board is named herein as a party solely because of any claim it may have against the Premises as a result of certain judgments it may have against the Borrower and the Premises, copies of which are attached as Exhibit B hereto and to extinguish any right, title, claim or interest it may have upon the Premises.

6.      New York City Environmental Control Board is named herein as a party solely because of any claim it may have against the Premises as a result of certain judgments it may have against the Borrower and the Premises, copies of which are attached as Exhibit C hereto and to extinguish any right, title, claim or interest it may have upon the Premises.

7.      John Doe No. 1 to John Doe No. 10, inclusive, are fictitious and unknown to Trustee.  They are named herein to designate any and all tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the Premises.

8.      Trustee brings this action to foreclose a consolidated first mortgage in the original principal amount of $2,250,000.00, that is on the Premises.

2

## FIRST CAUSE OF ACTION
## FORECLOSING MORTGAGE

9.      Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 8 of this complaint as though fully set forth at length herein.

**The Loan Documents**

10.     On or about September 13, 2005, Independence Community Bank ("Independence"), Trustee's predecessor-in-interest, made a loan to Borrowers in the original principal amount of $2,250,000.00 (the "Loan") secured by a Consolidation, Extension and Modification Agreement dated September 13, 2005 (the "Consolidated Mortgage"), and evidenced by a Consolidated and Restated Mortgage Note dated September 13, 2005 (the "Consolidated Note").

11.     The Consolidated Note, inter alia, amends, restates and modifies the following notes to form a single indebtedness in the original principal amount of $2,250,000.00:

(a)     that certain Mortgage Note dated October 19, 1995 in the original principal amount of $450,000.00 from Borrowers to Fourth Federal Savings Bank ("Fourth Federal"); and

(b)     that certain Mortgage Note dated September 13, 2005 in the original principal amount of $2,025,603.85 from Borrowers in favor of Independence; and

12.     As collateral security for the payment of the Consolidated Note, Borrowers executed, acknowledged and delivered to Independence the Consolidated Mortgage on the Premises in the aggregate principal amount of $2,250,000.00.

13.     The Consolidated Mortgage was duly recorded against the Premises in the Office of the Register of the City of New York (the "Register's Office") on October 17, 2005 as

3

City Register File Number ("CRFN"): 2005000577501. The Consolidated Mortgage was exempt from mortgage recording tax.

        14.     The Consolidated Mortgage amends, restates and modifies the following mortgages to form a single lien on the Premises in the original principal amount of $2,250,000.00:

        (a)     Multifamily Mortgage, Assignment of Rents and Security Agreement dated October 19, 1995 in the original principal amount of $450,000.00 executed acknowledged and delivered by Borrowers to Fourth Federal and recorded on November 14, 1995 in the Office of the Register of the County of Kings in Reel 3608 at Page 1747 ("Mortgage A"). The mortgage tax on Mortgage A was duly paid. Mortgage A was assigned by Fourth Federal to Independence, by an Assignment of Mortgage, dated as of September 8, 2005, which assignment was recorded on October 17, 2005, in the Register's Office as City Register CRFN: 200500057703; and

        (b)     Mortgage, dated September 13, 2005 in the original principal amount of $2,025,603.85 executed acknowledged and delivered by Borrowers to Independence and recorded on October 17, 2005 in the Register's Office as CRFN: 2005000577500 ("Mortgage B"). The mortgage tax on Mortgage B was duly paid.

        15.     Pursuant to the terms of the Consolidated Mortgage, Borrowers, inter alia, agreed to make monthly payments as set forth therein on the first day of each month commencing on November 1, 2005 and continuing through October 1, 2012 (the "Maturity Date"), when payment in full under the Consolidated Note and Consolidated Mortgage was due.

4

16.     The Consolidated Note and Consolidated Mortgage also provide that upon the occurrence of an event of default, Trustee is entitled to declare all of the obligations due thereunder to be immediately due and payable.

17.     The Consolidated Note and Consolidated Mortgage also provide that upon Trustee's exercise of any right of acceleration under the Consolidated Mortgage, Borrower is also liable for a prepayment premium calculated in accordance with Section 49 of the Consolidated Mortgage.

18.     The Consolidated Note and Consolidated Mortgage further provide that Borrowers will reimburse Trustee for all of its costs and expenses incurred as a result of its default on their obligations under the Consolidated Note and Consolidated Mortgage, including, without limitation, Trustee's reasonable attorneys fees and costs.

**Assignment of Loan Documents**

19.     By Assignment of Mortgage dated as of June 21, 2007 (the "Assignment of Mortgage"), Sovereign Bank, successor by merger to Independence, assigned to Trustee all of its right, title and interest in and to the Consolidated Mortgage.

20.     The Assignment of Mortgage was recorded on July 17, 2007 in the Register's Office as CRFN: 2007000365694.

**The Default**

21.     Borrowers defaulted under the terms of the Consolidated Note and Consolidated Mortgage by failing, inter alia, to make payment in full when due on the Maturity Date, and said default continues to the date hereof.

22.     By Notice of Default and Demand for Payment dated November 2, 2012, Trustee through its counsel notified Borrowers of the default and demanded that Borrowers

5

4152733V.2 57301/853817

satisfy their remitting the full amount due and owing under the Consolidated Note and Consolidated Mortgage on or before November 17, 2012.

23.     Borrowers failed to pay the Loan in full to Trustee as demanded.

24.     The amount due and owing as of October 1, 2012 is principal in the outstanding amount of $1,992,410.85, plus accrued and unpaid interest, continuing to accrue at the default rate of interest as provided in the Consolidated Note, late charges and other charges pursuant to the Consolidated Note and Consolidated Mortgage to the date of entry of foreclosure judgment herein, plus reasonable attorneys' fees, costs and expenses.

25.     In order to protect its security, Trustee may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the Premises, to pay taxes, water rates, sewer rents, insurance premiums, mortgage insurance premiums, if any, and any other charges affecting the Premises, as well attorneys' fees to the extend provided for in the above described instruments, and Trustee requests that any sums so paid be added to the sum otherwise due and be deemed secured by the Mortgage and adjudged a valid lien on the Premises herein described.

26.     The defendants herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Premises, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

**WHEREFORE**, Trustee demands judgment against defendants as follows:

A.     On its First Cause of Action:

(i)     Adjudging and decreeing the amounts due it as demanded in this complaint by means of Borrowers' default under the Consolidated Note and Consolidated Mortgage;

6

(ii)      Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Premises which are the subject of this foreclosure action subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Premises and each and every part and parcel thereof;

(iii)      Adjudging and decreeing that (a) the Premises may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Mortgage; (b) that the Premises may be sold in one or more parcels as determined by Trustee; (c) that the money resulting from said sale be brought into court; and (d) that Trustee be paid (1) the expenses of said sale, (2) the costs, allowances, and disbursements of this action, (3) the amounts due on the notes and mortgages, as consolidated, together with interest and late payment charges thereon as provided therein to the time of such payment, (4) all money advanced or paid by Trustee pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Premises, (5) its expenses of collection, including reasonable attorneys' fees, and (6) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money property applicable thereto will pay the same;

(iv)      Adjudging and decreeing that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties;

7

(v)     Adjudging and decreeing that Borrowers be adjudged to pay any deficiency remaining after the application of the monies as aforesaid in accordance with Section 1371 of the Real Property Actions and Proceedings Law;

(vi)    Adjudging and decreeing that Trustee shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

(vii)   Adjudging and decreeing that in the event that Trustee possesses any other lien(s) against the Premises either by way of judgment, junior mortgage or otherwise, Trustee requests that such other lien(s) shall not be merged in Trustee's cause of action set forth in this complaint, but that Trustee shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

(viii)  Adjudging and decreeing that Trustee have such other and further relief as may be just and equitable.

Dated: New York, New York
       January 30, 2013

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____

Keith M. Brandofino, Esq.
Tamara A. Daniels, Esq.
Attorneys for Plaintiff
    WELLS FARGO BANK, N.A., as Trustee for
    the registered holders of Sovereign
    Commercial Mortgage Securities Trust, 2007-
    C1, Commercial Mortgage Pass-Through
    Certificates, Series 2007-C1
1114 Avenue of the Americas, 21st Floor
New York, NY 10036
(212) 775-8700

4152733V.2 57301/853817

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

WELLS FARGO BANK, N.A., as Trustee for the
registered holders of Sovereign Commercial
Mortgage Securities Trust, 2007-C1, Commercial
Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -                                                    Index No.:

BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,
PRESERVATION AND DEVELOPMENT, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN DOE
NO. 10" inclusive, the last ten names being fictitious
and unknown to plaintiff, the persons or parties
intended being the tenants, occupants, persons or
corporations, if any, having or claiming an interest in
or lien upon the premises described in the complaint,

Defendants.

# SUMMONS AND COMPLAINT



**KILPATRICK
TOWNSEND**

ATTORNEYS AT LAW

ATTORNEYS FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF
SOVEREIGN COMMERCIAL MORTGAGE SECURITIES TRUST, 2007-C1, COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-C1

OFFICES AND POST OFFICE ADDRESS

1114 Avenue of the Americas, 21st Floor
New York, NY 10036
TEL. NO.: (212) 775-8700
FAX NO.: (212) 775-8800

EXHIBIT

2

INDEX NO. 500469/2013
NYSCEF DOC. NO. 151                                    RECEIVED NYSCEF: 02/28/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, | Index No. 500469/2013 |
| Plaintiff, | |
| - against - | |
| BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, | **STIPULATION OF** <br> **SETTLEMENT AND ORDER** |
| Defendants. | |

This Stipulation dated November ___, 2013 (the "Stipulation"), is entered into by and between Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Lender") acting by and through Waterstone Asset Management LLC and Boysin Lorick ("B. Lorick").

<u>WITNESSETH</u>

WHEREAS, on or about September 13, 2005, Independence Community Bank ("Independence"), Trustee's predecessor-in-interest, made a loan to B. Lorick and Cynthia Lorick (collectively, "Borrowers") in the original principal amount of $2,250,000.00 (the "Loan");

WHEREAS, as evidence of the Loan, Borrowers executed and delivered to Independence a Consolidated and Restated Mortgage Note dated September 13, 2005 in the original principal amount of $2,250,000.00 (the "Consolidated Note");

WHEREAS, as collateral security for the payment of the Consolidated Note, Borrowers executed, acknowledged and delivered to Independence a Consolidation, Extension and Modification Agreement dated September 13, 2005 (the "Consolidated Mortgage") on the Premises in the aggregate principal amount of $2,250,000.00;

WHEREAS, the Consolidated Mortgage was duly recorded against the Premises in the Office of the Register of the City of New York (the "Register's Office") on October 17, 2005 as City Register File Number ("CRFN"): 2005000577501;

WHEREAS, by assignment of mortgage dated June 21, 2007 and recorded July 17, 2007 in the Register's Office as CRFN: 2007000365694 (the "Assignment of Mortgage"), Sovereign Bank ("Sovereign"), successor by merger to Independence, assigned to Trustee all of its right, title and interest in and to the Consolidated Mortgage;

WHEREAS, by allonge executed contemporaneous with the Assignment of Mortgage (the "Allonge"), Sovereign transferred and assigned to Lender all of its right to obtain payment from Borrowers under the Consolidated Note;

WHEREAS, Lender is the current owner and holder of the Consolidated Note (and the notes consolidated thereby), Consolidated Mortgage (and the mortgages consolidated thereby), all other documents evidencing or securing the Loan (collectively, the "Loan Documents") and all rights relating thereto;

2

WHEREAS, Borrowers defaulted on their obligations under the Consolidated Note and Consolidated Mortgage by, inter alia, failing to pay the Loan in full on the Maturity Date (the "Default");

WHEREAS, by Notice of Default and Demand for Payment dated October 26, 2012 (the "Notice"), Lender, through its counsel, notified Borrowers, among others, of the Default and demanded payment within fifteen (15) days of the date of the Notice, no part of which has been paid despite demand;

WHEREAS, on January 30, 2013, Lender commenced this action to foreclose the Consolidated Mortgage on the Premises by filing a summons and complaint of the same date (the "Complaint") in the Supreme Court of the State of New York, County of Kings;

WHEREAS, Lender duly served each of the defendants herein with copies of the Complaint;

WHEREAS, on or about March 20, 2013, Defendant B. Lorick, appearing pro se, filed an answer dated March 20, 2013 (the "Answer");

WHEREAS, by Consent to Substitute Attorney dated May 8, 2013, Mark S. Friedlander, Esq. became counsel of record for B. Lorick;

WHEREAS, on May 17, 2013, Lender filed its Notice of Pendency with the Kings County Clerk's Office;

WHEREAS, Defendant New York City Department of Housing Preservation and Development appeared by notice filed June 11, 2013 and waived "service of all papers and notice of all proceedings in said action, except amended pleadings, notices of settlement of judgments and orders, notices of entry of judgments and orders, notices of applications for discontinuance of the action, referee reports, and all surplus money proceedings;"

WHEREAS, Defendants Cynthia Lorick and The New York City Environmental Control Board failed to answer or appear and their time to do so expired on March 20, 2013 and April 19, 2013, respectively;

WHEREAS, by Order Appointing Rent Receiver dated April 2, 2013, this Court appointed Douglas R. Rosenberg as Receiver of the Premises;

WHEREAS, by Order to Show Cause and Stipulation dated June 13, 2013, this Court, upon the consent of the parties, stayed the receivership;

WHEREAS, on July 22, 2013, Lender file an omnibus motion for summary judgment, which B. Lorick did not oppose;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree, as follows:

1.  Recitals.  All of the foregoing recitals are specifically incorporated into this Stipulation and made a part hereof.

2.  Acknowledgement of B. Lorick.  B. Lorick hereby agrees and acknowledges that:

(a)  Lender is the current holder of the Loan Documents;

(b)  Borrowers are in default of their respective obligations under the Loan Documents by failing to satisfy the amounts due at maturity; and

(c)  As of November 12, 2013 the total amount due under the Loan Documents is $2,447,121.60 (the "Outstanding Indebtedness") calculated as follows:

4

| | |
|---|---|
| Unpaid Principal Balance | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 | $125,812.46 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 | $239,768.88 |
| Accrued and Unpaid Late Charges | $100,056.38 |
| Servicer Administrative Fees | $300.00 |
| Interest on Advances | $2,499.34 |
| Property Protection Advances | $375.00 |
| Outstanding Escrow Advances | $1,855.75 |
| Appraisal Fee | $5,000.00 |
| Attorneys' Fees and Costs through execution of Settlement Agreement | $74,816.50 |
| *Subtotal* | *$2,542,895.16* |
| Credit for Escrow Funds on Deposit | $95,773.56 |
| Total | **$2,447,121.60** |

(d)     Borrower acknowledges that the amount due under the Loan Documents shall continue to accrue through the date of payment. The Outstanding Indebtedness together with such additional interest calculated through the date of payment as well as Lender's costs and expenses incurred through the date of payment shall be referred to as the "Payoff Amount."

3.     Release of Lender. Simultaneously with the execution of this Stipulation, B. Lorick shall execute and deliver to Lender a release in the form attached hereto as **Exhibit 1**.

4.     The Foreclosure Action.

5

(a)     B. Lorick consents to the relief sought by Lender in the Complaint and the parties request that contemporaneously with so ordering this Stipulation, the Court enter final judgment of foreclosure and sale in the form attached hereto as **Exhibit 2**;

(b)     B. Lorick hereby waives the right to a hearing on the computation by a court appointed referee;

(c)     B. Lorick consents to a foreclosure sale being held after January 1, 2014, subject to publication requirements, which shall commence on or after January 1, 2014;

(d)     B. Lorick hereby waives notice, including, without limitation, notice of the foreclosure sale; and

(e)     In the event that B. Lorick pay the Payoff Amount prior to January 1, 2014, Lender shall discontinue this action and discharge the Notice of Pendency.

5.     <u>Representations, Warranties, and Covenants</u>.  B. Lorick hereby represents warrants, and covenants to Lender that:

(a)     he shall execute any other documents and perform such other acts as are reasonably required by Lender and its counsel in furtherance of this Stipulation and the transactions contemplated hereby;

(b)     all representations and warranties herein shall be true and correct in all material respects, as of the date hereof, except if such representation, warranty, or covenant specifically states a different time period;

(c)     there exist no claims, actual, threatened, or alleged against B. Lorick of which B. Lorick has knowledge or reason to know of relating to or arising in connection with the Premises, other than those made by Lender in connection with the Loan Documents;

6

(d)    no petition for bankruptcy, reorganization, or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, whether voluntary or involuntary, has been filed by or against B. Lorick, and that no receiver, liquidator, or trustee has been appointed in regard to the Premises, with the exception of the receiver appointed in this action;

(e)    there are no pending, or to the knowledge of B. Lorick, threatened, condemnation or eminent domain proceedings that would affect any part of the Premises;

(f)    B. Lorick will not enter into any new leases, licenses, occupancy agreements, or other agreements for any portion of the Premises without Lender's prior written consent;

(g)    the documents required to be delivered to Lender, pursuant to this Stipulation, if any, are true, correct, and complete in all material respects, and have not been modified or amended; and

(h)    B. Lorick knowingly and intentionally covenants and agrees not to sue or commence any action or counterclaim or cross-claim against Lender or its affiliates, agents, employees, and attorneys, for any claims, demands, expenses, and liabilities of whatsoever kind and nature arising from or in any matter connected with this Stipulation, the Loan Documents, and the lending relationship between the parties.

7.    Ratification and Reaffirmation.  B. Lorick hereby ratifies and reaffirms: (i) that the security interest granted in and to the Premises by the Consolidated Mortgage is valid, binding, and in full force and effect; and (ii) all of his obligations under the Loan Documents. B. Lorick represents and warrant to Lender that as of the date hereof, he has no right of set-off, nor any defense, protest, objection, claim, or counterclaim with respect to the loan amount or against

7

the enforcement of Lender's rights and remedies hereunder or under the Loan Documents, at law, in equity or otherwise.

        8.    <u>Further Security</u>.

        (a)    B. Lorick shall sign any and all documents (including, without limitation, UCC financing statement(s)) reasonably required by Lender to perfect and maintain the security interest granted herein and in accordance with the Loan Documents, and B. Lorick authorizes Lender to file any such statements, amendments, and continuations thereto without B. Lorick's signature, and B. Lorick designates Lender or Lender's designee as B. Lorick's attorney-in-fact to sign, file and/or record any such documents.

        (b)    B. Lorick shall sign and deliver any other documents or perform such actions reasonably requested by Lender to further the intent this Stipulation and the Loan Documents.

        9.    <u>Indemnification</u>.   B. Lorick shall, and hereby covenant and agree to, protect, defend, indemnify, and hold Trustee and its affiliates, agents, employees and attorneys, harmless from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs, and expenses (including, without limitation, reasonable attorneys' fees and expenses) arising or occurring out of: (i) any of the representations and warranties made by B. Lorick in this Stipulation being untrue in any material respect; and (ii) any and all claims of any kind and description made against Lender.

        10.    <u>Hazardous Materials</u>.   B. Lorick represents that to the best of his knowledge there are no materials currently located on the Premises that violate any applicable federal, state, or local law, statute, ordinance, or regulation, court or administrative order or decree, or private agreement (hereinafter collectively called "Environmental Requirements") or

that require special handling in collection, storage, treatment, or disposal (the "Hazardous Materials"). B. Lorick represents that he has not placed or permitted to be placed any such materials on the Premises and has not used or permitted the use of the Premises in a manner that violates applicable Environmental Requirements. B. Lorick represents that he has received no letters or other communications respecting the Premises from any governmental or quasi-governmental authority or agency concerning Environmental Requirements nor has he sent the same to any such authority or agency. B. Lorick shall indemnify, hold harmless, reimburse, and, upon request of Lender, its designee or assignee, defend Trustee, its designee or assignee, from, against, and for any and all liability or responsibility that may at any time be imposed upon it by reason of the Premises or any portion thereof or the operation or use thereof by B. Lorick or any prior owner thereof not complying fully with all Environmental Requirements.

11.   <u>No Assumption</u>.  Lender expressly does not assume any of the rights or obligations of Borrowers, contractual or otherwise, in connection with the Premises or any part thereof. If Trustee wishes to assume any such rights or obligations, it shall be deemed to have done so only in a writing signed by the Lender.

12.   <u>Fraudulent Transfer</u>. If any payments of money made by B. Lorick to Lender or Lender's agents, hereunder, should for any reason subsequently be declared to be "fraudulent" (within the meaning of any state or federal law relating to fraudulent conveyances), preferential, or otherwise voidable or recoverable, in whole or in part for any reasons, under the Bankruptcy Code or any other federal or state law (collectively referred to herein as "Voidable Transfers") and Lender is required to repay or restore the amount of any such Voidable Transfers or any portion thereof, then, as to the amount repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses, and attorneys' fees of Lender related thereto) the liability

of B. Lorick shall automatically be revived, reinstated, and restored in such amount or amounts, and shall exist as though such Voidable Transfer had never been made to Lender. Nothing set forth herein is an admission that such Voidable Transfer has occurred or will occur. B. Lorick expressly acknowledges that Lender may rely upon advice of counsel and, if so advised by counsel, may settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement B. Lorick shall again be liable for any deficiency resulting from such settlement as provided in this Stipulation.

13.    Event of Default. The occurrence or happening of any one of the following events (an "Event of Default") shall constitute a default hereunder in which event B. Lorick shall be in default under this Stipulation:

(a)    failure of B. Lorick to perform all terms and conditions of this Stipulation, or under any other document agreement or instrument entered into by the parties in connection herewith as and when required by the terms hereof;

(b)    there is a default or an Event of Default under any of the Loan Documents other than the Default,

(c)    if there shall occur any uninsured damage to the Premises caused by the negligence of B. Lorick; or

(d)    the inaccuracy or breach of any of the agreements, representations, warranties, acknowledgments, or covenants, made by B. Lorick in this Stipulation;

(e)    if any voluntary proceeding is commenced by B. Lorick under any reorganization, arrangement, readjustment, moratorium law or statute including, without limitation, the United States Bankruptcy Code, or if any involuntary proceeding under any reorganization, arrangement, readjustment, moratorium law or statute, including without

10

limitation, the United States Bankruptcy Code, is commenced against B. Lorick and such proceeding is not dismissed within twenty (20) days of its commencement, or if B. Lorick make, negotiate, or commence negotiations for a partial or complete assignment of his assets for the benefit of creditors pursuant to statutory or common law;

(f)     if B. Lorick or any of his successors or assigns, or any other person or entity including, without limitation, a debtor-in-possession or a trustee, commences and obtains judgment in any action under any federal or state statute or common law to avoid all or any part of the transactions or payments contemplated by this Stipulation; or

(g)     if B. Lorick shall commit any waste of the Premises.

14.     Remedies.  Upon the occurrence of an Event of Default, Lender shall send B. Lorick written notice of such default and provide him with five (5) days to cure such default. In the event that B. Lorick shall fail to cure such Event of Default within such five (5) day period, then, at the option of Lender, the Stay Period shall expire immediately and Lender may:

(a)     immediately schedule a foreclosure sale; and

(b)     invoke such other or additional remedies, in its sole discretion, as may be permitted under the Loan Documents or available to Lender at law or in equity.

15.     Notices. All notices, requests, and demands required to be given hereunder shall be in writing and shall be deemed to have been duly given upon the date of service if served personally upon the party for whom intended or upon the date of mailing if mailed by certified mail to such party at the address as shown below, or such other address as hereafter designated by such party in writing:

11

|                   |                                                                                                                |
|-------------------|----------------------------------------------------------------------------------------------------------------|
| If to Trustee:    | Waterstone Asset Management, LLC<br>8720 Red Oak Blvd., Ste. 300<br>Charlotte, North Carolina 28217<br>Attn: Sumit K. Jain |
| with a copy to:   | Kilpatrick Townsend & Stockton LLP<br>1114 Avenue of the Americas, 21st Floor<br>New York, New York 10036<br>Attention: Keith M. Brandofino, Esq. |
| If to B. Lorick:  | Boysin Lorick<br>38 Utica Road<br>Edison, New Jersey 08820                                                     |
| With a copy to:   | Mark S. Friedlander, Esq.<br>15 Maiden Lane<br>Suite 2000<br>New York, New York 10028                          |

16. Miscellaneous.

(a)    Financial Statements. B. Lorick shall deliver a copy of the current financial statements for the Premise contemporaneously with the execution of this Stipulation. This shall include, but is not limited to, the following: (i) copies of all tax returns; (ii) monthly operating statements for the Premises; (iii) quarterly operating statements for the Premises; (iv) annual financial statements for B. Lorick (setting forth B. Lorick's balance sheet and operating statements for the Premises); and (v) a current Rent Roll certified by B. Lorick as being true, correct and complete.

(b)    Delay not a Waiver. No delay or omission in the exercise of any power or remedy herein provided or otherwise available to Lender shall impair or affect Lender's right thereafter to exercise same.

(c)    Conflicts. If the terms and provisions contained in the Loan Documents in any way conflict with the terms and provisions contained in this Stipulation, the terms and provisions of this Stipulation shall prevail.

12

(d)      Material Adverse Change. B. Lorick shall, as soon as practicable but in any event within five (5) days after learning of any of the following, give written notice to Lender or its designated agent of: (i) any material proceeding instituted or threatened to be instituted, by or against B. Lorick in any federal, state, local, or foreign court or before any commission or other regulatory body (federal, state, local, or foreign); (ii) any material adverse change in business, assets, or condition, financial or otherwise, of B. Lorick; and (iii) the filing of any lien or encumbrance against the Premises.

(e)      Compliance with Laws. B. Lorick will comply with all applicable laws and regulations with respect to his property and business, or such laws and regulations as are hereafter enacted or promulgated by any governmental or quasi-governmental authority having jurisdiction over his or any of his property.

(f)      Remedies Cumulative. The rights and remedies granted to Lender hereunder are cumulative, and Lender has the right, without waiving any rights, to exercise any one or more of such rights alternatively, successively, or concurrently, as Trustee, in its sole discretion, deems advisable.

(g)      Partial Invalidity. In the event any of the terms, conditions, or covenants contained in this Stipulation shall be held to be invalid, then any such invalidity shall not affect any other of the terms, conditions, or covenants contained herein, which terms, conditions, and covenants shall remain in full force and effect.

(h)      Construction. The terms and conditions set forth in this Stipulation are the product of joint draftsmanship by the parties, each being represented by counsel, and any ambiguities in this Stipulation or any documentation prepared pursuant to or in connection with this Stipulation shall not be construed against any of the parties because of draftsmanship.

13

(i)     Time is of the Essence. B. Lorick understands and agrees that **TIME IS OF THE ESSENCE** with respect to all dates set forth in this Stipulation.

17.     Counterparts. This Stipulation may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. A facsimile or Portable Document Format copy of this Stipulation shall be deemed an original.

18.     Waiver or Amendment. No amendment, modification, termination, or waiver of any provision of this Stipulation, nor consent to any departure by B. Lorick from this Stipulation, shall in any event be effective unless the same shall be in writing and signed by Trustee, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

19.     Merger. This Stipulation constitutes the entire agreement of the parties hereto, it being understood and agreed that all prior and contemporaneous representations, statements, understandings and agreements, oral or written, between the parties concerning the subject matter of this Stipulation are merged into this Stipulation, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying on any statement or representation, whether written or oral, not embodied in this Stipulation made by the other or any third party acting on behalf of the other. To the extent that any provision of this Stipulation conflicts with any provision in the Loan Documents, this Stipulation shall govern.

20.     Successors. This Stipulation shall be binding upon and inure to the benefit of Lender and B. Lorick and their respective successors and assigns, except that B. Lorick may

14

not assign or transfer any of his rights under this Stipulation without the prior written consent of Trustee.

21.    Jury Trial.   THE   PARTIES   HEREBY   KNOWINGLY   AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY MATTER RELATING IN ANY WAY TO THE LOAN OR THIS STIPULATION.

22.    Authority.   Each of the parties hereto warrants and represents to the other that each of them is authorized and empowered to enter into this Stipulation and perform its terms, and that in entering into this Stipulation and performing its terms, neither of them will be in violation of any other agreement, oral or written.

Dated:

KILPATRICK TOWNSEND & STOCKTON LLP

By:
Name: Keith M. Brandofino, Esq.
        Stefanie Lampf, Esq.
Attorneys for Plaintiff
1114 Avenue of the Americas
The Grace Building
New York, New York 10036
(212) 775-8713

BORROWER:

By:
Name: Boysin Lorick

By:
Mark S. Friedlander, Esq
Attorney for Defendant Boysin Lorick
15 Maiden Lane
Suite 2000
New York, New York 10028
(212) 962-2877

SO ORDERED:

_____
_____ J.S.C.

15

not assign or transfer any of his rights under this Stipulation without the prior written consent of Trustee.

21.   Jury Trial.   THE   PARTIES   HEREBY   KNOWINGLY   AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY MATTER RELATING IN ANY WAY TO THE LOAN OR THIS STIPULATION.

22.   Authority.   Each of the parties hereto warrants and represents to the other that each of them is authorized and empowered to enter into this Stipulation and perform its terms, and that in entering into this Stipulation and performing its terms, neither of them will be in violation of any other agreement, oral or written.

Dated: 2/21/14

KILPATRICK TOWNSEND & STOCKTON          BORROWER:
LLP

By:_____          By:_____
Name: Keith M. Brandofino, Esq.          Name: Boysin Lorick
      Stefanie Lampf, Esq.
Attorneys for Plaintiff
1114 Avenue of the Americas          By:_____
The Grace Building                   Mark S. Friedlander, Esq.
New York, New York 10036             Attorney for Defendant Boysin Lorick
(212) 775-8713                       15 Maiden Lane
                                     Suite 2000
                                     New York, New York 10028
                                     (212) 962-2877

SO ORDERED:

_____ J.S.C.
HON. BERNARD J. GRAHAM

15

E

X

H

I

B

I

T

3

FILED: KINGS COUNTY CLERK 09/25/2015 03:34 PM

INDEX NO. 500469/2013

NYSCEF DOC. NO. 219

RECEIVED NYSCEF: 09/25/2015

At IAS Part 57 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse thereof, located at 360 Adams Street, Brooklyn, New York, on the 7 day of _____, 2015.

PRESENT: HON. LAWRENCE KNIPEL
Justice of the Supreme Court

---

WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -

BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

---

Index No.:   500469/2013

**ORDER APPOINTING
SUBSTITUTE REFEREE**

UPON the Final Judgment of Foreclosure Sale of the Honorable Bernard J. Graham, signed on February 21, 2014 and entered on March 5, 2014 (the "Final Judgment"), appointing James I. Williams, Esq. as Referee to sell the property subject to the within action, and on reading and filing the annexed affirmation of Therese M. Reyes, Esq., dated July 14, 2015, it is hereby

7322151V.1 57301/853817

ORDERED, that this action be, and the same is hereby referred to: _Jeffery Miller_ of _Jeffrey R. Miller & Assoc._ having an office at _32 Broadway - 13th Fl. NY NY 10004_ and telephone number of _(212) 227-4200_ as Substitute Referee for James I. Williams, Esq., to carry out all duties as Referee as set forth in the Final Judgment; and it is further

ORDERED, that James I. Williams, Esq., previously appointed Referee in this action pursuant to the Final Judgment be and he hereby is released and discharged from his duties as Referee without compensation; and it is further

ORDERED, that the Successor Referee herein appointed shall comply in all respects with the Final Judgment, which shall remain in full force and effect except as otherwise set forth herein.

ENTER,

_____
HON. LAWRENCE KNIPEL, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

WELLS FARGO BANK, N.A., as Trustee for the
registered holders of Sovereign Commercial
Mortgage Securities Trust, 2007-C1, Commercial
Mortgage Pass-Through Certificates, Series 2007-C1,

                    Plaintiff,

                - against -                                    Index No.: 500469/2013

BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,
PRESERVATION AND DEVELOPMENT, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN DOE
NO. 10" inclusive, the last ten names being fictitious
and unknown to plaintiff, the persons or parties
intended being the tenants, occupants, persons or
corporations, if any, having or claiming an interest in
or lien upon the premises described in the complaint,

                    Defendants.

# ORDER APPOINTING SUBSTITUTE REFEREE



## KILPATRICK TOWNSEND

### ATTORNEYS AT LAW

ATTORNEYS FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF
SOVEREIGN COMMERCIAL MORTGAGE SECURITIES TRUST, 2007-C1, COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-C1

OFFICES AND POST OFFICE ADDRESS

1114 Avenue of the Americas, 21st Floor
New York, NY 10036
TEL. NO.: (212) 775-8700
FAX NO.: (212) 775-8800

E

X

H

I

B

I

T

4

FILED: KINGS COUNTY CLERK 11/18/2015 03:43 PM INDEX NO. 500469/2013

NYSCEF DOC. NO. 253                                              RECEIVED NYSCEF: 11/18/2015

COM-6

At an I.A.S. Trial Term, Part of the Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Borough of Brooklyn, City and State
of New York, on the 13 day of November 2015

P R E S E N T :

Hon. _Lawrence Knipel_
                    **Justice**

---

Wells Fargo Bank, N.A. et-al                        Cal. No.
                                    **Plaintiff(s)**   Index No. 500469/13

- against -

Boysin Lorick, et-al.

                                    **Defendant(s)**

| The following papers numbered 1 to ___ read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause | |
| and Affidavits (Affirmations) Annexed_____ | |
| Answering Affidavit (Affirmation)_____ | |
| Reply Affidavit (Affirmation)_____ | |
| _____Affidavit (Affirmation)_____ | |
| Pleadings - Exhibits_____ | |
| Stipulations - Minutes_____ | |
| Filed Papers_____ | |

Receiver's Order to show cause is granted to the extent that
Receiver choose best proposal for environmental Remediation
upon Plaintiff's consent and shall be permitted to expend the
funds to obtain the environmental remediation work and for
the retainer of the engineer and Architect to facilitate
the remediation work. Receiver shall also be permitted
to solicit bids and expend funds to Retain an electrician to cure it's
electrical defects. Plaintiffs cross
motion is granted to the extent that the cross
Referee shall compute a revised amount due and
Plaintiff shall

E N T E R

For Clerks use only

MG ✓✓✓

MD ___

Motion Seq. #

10, 11, 12

_____
            J.S.C.

EJV-rev 11-04

**PAGE 2**

INDEX# 500 469 -- 13          DATE 11/3/15

PLAINTIFF Wells Fargo   vs   DEFENDANT Lonick

Submit a ~~Order~~ judgment on Notice to all parties
for entry and the court shall permit Plaintiff
to file a ~~~~ Notice of Sale thereafter

ENTERED/SO ORDERED

JSC

**PAGE 2**

HON. LAWRENCE KNIPEL
SUPREME COURT JUSTICE

EXHIBIT

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,<br><br>                      Plaintiff,<br><br>     -against-<br><br>BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                      Defendants. | Index No.:   500469/2013<br><br><br><br>**AFFIDAVIT OF AMOUNT DUE** |

STATE OF NORTH CAROLINA    )
                              ) ss:
COUNTY OF MECKLENBURG    )

        DENNIS MCCLOSKEY, being duly sworn, deposes and says:

        1.     I am a Senior Asset Manager with Waterstone Asset Management, LLC ("Waterstone"), the sub-special servicer to C-III Asset Management, LLC, the Special Servicer of the subject loan for Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Plaintiff").  I make this affidavit based on personal knowledge and upon the books and records of Plaintiff and Waterstone in my possession or subject to my control.

7855505V.5 057301/0853817

2.     Plaintiff commenced this action to foreclose a mortgage in the original principal amount of $2,250,000.00 on real property commonly known as 3126 Coney Island Avenue, Brooklyn, New York located in the City of New York, County of Kings and State of New York also described as Block 8678, Lot 59 (the "Premises"), as more particularly described as Exhibit A hereto.  The Premises is occupied by a multi-tenant apartment building.

3.     By Final Judgment of Foreclosure and Sale dated February 21, 2014 (the "Foreclosure Judgment"), the Court confirmed that the total amount due Plaintiff as of November 12, 2013 was $2,447,121.60, calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 | $125,812.46 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 | $239,768.88 |
| Accrued and Unpaid Late Charges | $100,056.38 |
| Servicer Administrative Fees | $300.00 |
| Interest on Advances | $2,499.34 |
| Property Protection Advances | $375.00 |
| Outstanding Escrow Advances | $1,855.75 |
| Appraisal | $5,000.00 |
| Attorneys' Fees and Costs through execution of Settlement Agreement | $74,816.50 |
| *Subtotal* | *$2,542,895.16* |
| Credit for Escrow Funds on Deposit | $95,773.56 |
| **Total** | **$2,447,121.60** |

A copy of the Foreclosure Judgment is attached hereto as Exhibit B.

2

4.      In anticipation of the court-appointed receiver remediating the environmental concerns at the Premises and the foreclosure sale being conducted within the next year, the Court directed Plaintiff to update its computation of amount due.  Accordingly, I submit this affidavit in support of the court-appointed referee's computation of the amount due to Plaintiff.  A copy of the November Order is attached hereto as Exhibit C.

## THE LOAN DOCUMENTS

5.      On or about September 13, 2005, Boysin Lorick ("B. Lorick") and Cynthia Lorick (collectively, "Borrowers") obtained from Independence Community Bank ("Independence"), Plaintiff's predecessor-in-interest, a loan in the original principal amount of $2,250,000.00 (the "Loan").

6.      The Loan is evidenced by, inter alia, a Consolidated and Restated Mortgage Note in the amount of $2,250,000.00, dated September 13, 2005, and executed by Borrowers in favor of Independence (the "Consolidated Note").  A copy of the Consolidated Note dated September 13, 2005 and Allonge is attached hereto as Exhibit D.

7.      The Consolidated Note, inter alia, amends, restates and modifies:

(a)      that certain Mortgage Note dated October 19, 1995 in the original principal amount of $450,000.00 from Borrowers to Fourth Federal Savings Bank ("Fourth Federal"); and

(b)      that certain Mortgage Note dated September 13, 2005 in the original principal amount of $2,025,603.85 from Borrowers in favor of Independence.

8.      Pursuant to the terms of the Consolidated Note, Borrowers, inter alia, promised to pay to Independence or its assigns the principal sum of $2,250,000.00 plus interest thereon at the rates set forth in the Consolidated Note.

7855505V.5 057301/0853817

9.     As collateral security for the payment of the Consolidated Note, Borrowers executed, acknowledged and delivered to Independence a Consolidation, Extension and Modification Agreement on the Premises dated September 13, 2005 in the original principal amount of $2,250,000.00 (the "Consolidated Mortgage").  A copy of the Consolidated Mortgage is attached hereto as Exhibit E.

10.     The Consolidated Mortgage was duly recorded against the Premises in the Office of the Register of the City of New York (the "Register's Office") on October 17, 2005 as City Register File Number ("CRFN"): 2005000577501.   The Consolidated Mortgage was exempt from mortgage recording tax.

11.     The Consolidated Mortgage amends, restates and modifies the following mortgages to form a single lien on the Premises in the original principal amount of $2,250,000.00:

(a)     That certain Multifamily Mortgage, Assignment of Rents and Security Agreement dated October 19, 1995 in the original principal amount of $450,000.00 executed by Borrowers in favor of Fourth Federal and recorded on November 14, 1995 in the Office of the Register of the County of Kings in Reel 3608 at Page 1747 ("Mortgage A").  The mortgage tax on Mortgage A was duly paid. Mortgage A was assigned by Fourth Federal to Independence, by an Assignment of Mortgage, dated as of September 8, 2005, which assignment was recorded on October 17, 2005, in the Register's Office as City Register CRFN: 200500057703; and

(b)     That certain Mortgage, dated September 13, 2005 in the original principal amount of $2,025,603.85 executed by Borrowers in favor of Independence and recorded on October 17, 2005 in the Register's Office as CRFN: 2005000577500 ("Mortgage B").  The mortgage tax on Mortgage B was duly paid.

4

12.     By assignment of mortgage dated June 21, 2007 and recorded July 17, 2007 in the Register's Office as CRFN: 2007000365694 (the "Assignment of Mortgage"), Sovereign Bank ("Sovereign"), successor by merger to Independence, assigned to Plaintiff all of its right, title and interest in and to the Consolidated Mortgage.  A copy of the Assignment of Mortgage is attached hereto as Exhibit F.

13.     By allonge executed contemporaneous with the Assignment of Mortgage (the "Allonge"), Sovereign transferred and assigned to Plaintiff all of its rights to obtain payment from Borrowers under the Consolidated Note.  See Exhibit D.

14.     Plaintiff is the current holder of the Consolidated Note, Consolidated Mortgage and all rights relating thereto (collectively, the "Loan Documents").

15.     Pursuant to the terms of the Consolidated Note, Borrowers, inter alia, agreed to make monthly payments as set forth therein on the first day of each month commencing on November 1, 2005 and continuing through October 1, 2012 (the "Maturity Date"), when payment in full under the Consolidated Note and Consolidated Mortgage was due.

16.     The Consolidated Note and Consolidated Mortgage further provide that Borrowers will reimburse Plaintiff for all of its costs and expenses incurred as a result of their default on their obligations under the Consolidated Note and Consolidated Mortgage, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

17.     The Consolidated Note and Consolidated Mortgage also provide that upon the occurrence of an event of default, Plaintiff is entitled to declare all of the obligations due thereunder to be immediately due and payable.

## DEFAULT UNDER THE LOAN DOCUMENTS

18.     Borrowers defaulted on their obligations under the Loan Documents by, inter alia, failing to pay the Loan in full on the Maturity Date (the "Default").

5

7855505V.5 057301/0853817

19.     By Notice of Default and Demand for Payment dated October 26, 2012 (the "Notice"), Plaintiff, through its counsel, notified Borrowers, among others, of the Default and demanded payment within fifteen (15) days of the date of the Notice, no part of which has been paid despite demand.

20.     Borrowers nonetheless failed to cure the Default. As a result, Plaintiff commenced this action.

## SETTLEMENT OF THIS FORECLOSURE

21.     By Stipulation of Settlement and Order entered on February 28, 2014 (the "Stipulation"), B. Lorick acknowledged and agreed that he owed the $2,447,121.60 (the "Outstanding Indebtedness") with such additional interest calculated from October 15, 2013 through the date of payment as well as Plaintiff's costs and expenses incurred through the date of payment (the "Payoff Amount"). A copy of the Stipulation is attached hereto as Exhibit G.

22.     As set forth in the Stipulation, B. Lorick waived the right to a hearing before a referee on the amount due as well as receipt of all notices in this action. See Exhibit G.

23.     Plaintiff agreed that if B. Lorick paid the Payoff Amount prior to January 1, 2014, Plaintiff would discontinue this action and discharge the Notice of Pendency. However, B. Lorick consented to Plaintiff scheduling a foreclosure sale based on a final judgment in the amount of the Payoff Amount if payment was not made by that date. B. Lorick further agreed that should he default, Plaintiff could invoke any additional remedies which may be permitted under the Loan Documents or available at law or in equity.

24.     By the Foreclosure Judgment, the Court awarded Plaintiff a final judgment equaling the Outstanding Indebtedness ($2,447,121.60), plus expenses and additional interest being computed October 15, 2013. In addition, the Court appointed James I. Williams, Esq. (the "Referee") as referee to conduct the foreclosure sale. See Exhibit B.

6

25.     By Order Appointing Substitute Referee dated August 7, 2015 and entered on September 25, 2015 ("Order Appointing Substitute Referee"), the Court substituted Jeffrey R. Miller, Esq. (the "Substitute Referee") as substitute referee to carry out all of the duties of the Referee.  A copy of the Order Appointing Substitute Referee is attached hereto as Exhibit H.

### DEFAULT UNDER THE SETTLEMENT

26.     After entering into the Stipulation, Borrowers failed to satisfy their obligations under the Stipulation and did not pay any amounts toward the Outstanding Indebtedness.

27.     Due to protracted motion practice, the discovery of environmental conditions at the Premises and the retirement of the original referee, Plaintiff had been unable to schedule the foreclosure sale of the Premises within one year of entering the Foreclosure Judgment.

### CALCULATION OF AMOUNT DUE

28.     As of January 31, 2016, Borrowers are indebted to Plaintiff, pursuant to the Loan Documents for the total amount of $3,668,619.69, calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $125,812.46 |
| Accrued and Unpaid Contract Interest From October 15, 2013 Through and Including January 31, 2016     Rate: 5.25%     Per Diem: $290.56     Number of Days: 840 | $244,070.40 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $239,768.88 |
| Accrued and Unpaid Default Interest From October 15, 2013 Through and Including January 31, 2016     Rate: 10.75%     Per Diem: $594.96 | $499,766.40 |

7

| Number of Days: 840 | |
|---|---|
| Accrued and Unpaid Late Charges (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $100,056.38 |
| Tax Advances | $141,532.17 |
| Insurance Advances | $149,418.97 |
| Interest on Advances | $32,903.62 |
| Special Servicer Administration Fees (as agreed to per the Stipulation and ordered per Foreclosure Judgment) | $300.00 |
| Liquidation Fee | $73,075.89 |
| Appraisal (as agreed to per the Stipulation and ordered per the Foreclosure Judgment) | $5,000.00 |
| Attorneys' Fees and Costs through execution of the Stipulation (as agreed to per the Stipulation and ordered per Foreclosure Judgment)[1] | $74,816.50 |
| Holdback Fee | $15,000.00 |
| *Subtotal* | *$3,693,932.52* |
| Reserve Balance | ($25,312.83) |
| **Total Amount Due** | **$3,668,619.69** |

## CONCLUSION

29.     For all of the foregoing reasons, it is respectfully requested that the

Substitute Referee prepare the Report of Amount Due in the amounts set forth above.

DENNIS MCCLOSKEY

Sworn to before me
this 8th day of February, 2016

Notary Public

BARBARA LAVRIK
NOTARY PUBLIC
UNION COUNTY, NC
My Commission Expires 4-23-2020

---

[1] Additional attorneys' fees and costs have been incurred and will be sought by Plaintiff in connection with its application to the Court and to confirm the Substitute Referee's report of amount due.

8

7855505V.5 057301/0853817

E

X

H

I

B

I

T

A

Schedule "A"

All that certain plot, piece, or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Coney Island Avenue, distant 56.27 feet Southerly from the corner formed by the intersection of the Westerly side of Coney Island Avenue and the Southerly side of Ocean View Avenue;

RUNNING THENCE Westerly at right angles to Coney Island Avenue, 100 feet;

THENCE Southerly and parallel with Coney Island Avenue, 100 feet;

THENCE Easterly at right angles to Coney Island Avenue, 100 feet to the Westerly side of Coney Island Avenue;

THENCE Northerly along the Westerly side of Coney Island Avenue, 100 feet to the point or place of BEGINNING.

TOGETHER with all right, title and interest of, in and to any streets and roads abutting the above described premises.

SAID PREMISES being known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York.

E

X

H

I

B

I

T

B

INDEX NO. 500469/2013

NYSCEF DOC. NO. 152

RECEIVED NYSCEF: 03/05/2014

At a Commercial Part of the Supreme
Court of the State of New York, held in
and for the County of Westchester, at the
Courthouse located at 360 Adams Street,
Brooklyn, New York, on the 21 day of
_February_____, 2014

PRESENT: Hon. Bernard J. Graham
Justice of the Supreme Court

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, <br><br> Plaintiff, <br><br> - against - <br><br> BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, <br><br> Defendants. | Index No. 500469/2013 <br><br><br><br><br><br><br><br><br> <u>FINAL JUDGMENT OF</u> <br> <u>FORECLOSURE AND SALE</u> |

UPON the summons and complaint dated January 30, 2013 duly filed in this action with

the Office of the Kings County Clerk on the same date (the "Complaint"); and upon the Notice

of Pendency of Action duly filed in this action with the Office of the Clerk of Kings County on

May 17, 2013; and upon proceedings thereon, showing that each of the defendants herein have

been duly served with the Summons and Complaint in this action; and it appearing to the

satisfaction of the Court that plaintiff Wells Fargo Bank, N.A., as Trustee for the registered

holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Plaintiff"), acting by and through Waterstone Asset Management LLC, its Sub-Special Servicer, brings this action to foreclose a Consolidation, Extension and Modification Agreement (the "Consolidated Mortgage") upon certain real and personal property situated in the City of New York, County of Kings, State of New York, Block 8678, Lot 59 on the Tax Map of the County of Kings, known by the street address 3126 Coney Island Avenue (the "Premises"); and upon the executed Stipulation of Settlement dated November ___, 2013 (the "Stipulation of Settlement"), pursuant to which Boysin Lorick ("B. Lorick") consented to entry of this final judgment of foreclosure and sale;

ORDERED, ADJUDGED AND DECREED, that pursuant to the terms of the Stipulation of Settlement the appointment of a referee to compute and ascertain the amount due to Plaintiff is waived as B. Lorick acknowledged that as of November 12, 2013 the total amount due under the Loan Documents is **$2,447,121.60** (the "Outstanding Indebtedness") calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 | $125,812.46 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 | $239,768.88 |
| Accrued and Unpaid Late Charges | $100,056.38 |
| Servicer Administrative Fees | $300.00 |
| Interest on Advances | $2,499.34 |
| Property Protection Advances | $375.00 |
| Outstanding Escrow Advances | $1,855.75 |



| | |
|---|---|
| Appraisal | $5,000.00 |
| Attorneys' Fees and Costs through execution of Settlement Agreement | $74,816.50 |
| *Subtotal* | *$2,542,895.16* |
| Credit for Escrow Funds on Deposit | $95,773.56 |
| Total | $2,447,121.60 |

and it is further

ORDERED, ADJUDGED AND DECREED, that the mortgaged premises, as described in the Complaint filed in this action, or such part of the real property thereof as may be sufficient to discharge the mortgage debt evidenced by the Consolidated Mortgage in the original principal amount of $2,250,000.00 recorded in the Kings County Clerk's Office on October 17, 2005 as Control Number 2005000577501, the expense of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law, be sold at public auction, by and under the direction of *James I. Williams   363 6th Avenue Brooklyn NY*, at *(718) 965-1979*. In the absence of the designated Referee, the Court will designate a substitute Referee forthwith; that the said Referee give public notice of the time and place of such sale according to law and the practice of this Court, in *Brooklyn Eagle*; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee shall accept at such sale the highest bid offered by a bidder, who shall be identified upon the court record, and shall require that such successful bidder immediately pay to the Referee in cash or certified or bank check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the

purchase of the premises unless such successful bidder is the plaintiff herein, in which case, no

deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that the first successful

bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the

Terms of Sale immediately **following** the bidding upon the subject property, the property shall

thereafter immediately, on the same day, be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED, that the closing of title shall take place at

the office of the Referee or at such other **location** as the Referee shall determine within forty-five

days after such sale unless otherwise stipulated by all parties.  Any delay or adjournment of the

closing date beyond forty-five days may be stipulated among the parties, with the Referee's

consent, up to ninety days from the date of sale, but any adjournment beyond ninety days may be

set only with the approval of this Court; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that such successful

bidder shall fail to close on the date set by the Referee, then the successful bidder shall lose and

forfeit its deposit; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee deposit all funds received

pursuant to this Order in his/her own name as Referee in *such bank as referee shall designate*

and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the

proceeds of such sale shall forthwith pay there from:

FIRST:   The statutory fee of said Referee for conducting the sale not to exceed

$500.00.

SECOND:     The expenses of the sale, including the cost of advertising as shown on

the bills presented and certified by said Referee to be correct, copies of

which shall be annexed to the Report of Sale.

THIRD:      Said Referee shall also pay to the plaintiff or its attorneys the sum of

$ 2,447,121.60 , with interest at the rate set forth in the loan

documents from October 5, 2013, to the date hereof, and the interest at

the legal rate thereafter, or so much as the proceeds of the sale will pay

of the same, and any expenses necessarily paid by the plaintiff to

preserve the premises, such as the payment of taxes, etc., not previously

included in any computations.

ORDERED, ADJUDGED AND DECREED, that in case the plaintiffs be the purchaser

of the subject premises at said sale, said Referee shall not require the plaintiffs to pay in cash the

entire amount bid at said sale, but shall execute and deliver only to the plaintiffs a deed of the

premises sold upon the payment to said Referee of the sum awarded to him or her under the

above provisions marked "FIRST" and "SECOND" if such expenses were paid by the Referee,

or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts

of the proper municipal authorities showing payment thereof. The balance of the amount bid,

after deducting there from the aforementioned payments to the Referee for compensation and

expenses, taxes, assessments, sewer rents, water rates, shall be allowed to the plaintiffs and

applied by said Referee upon the amounts due to the plaintiffs as specified in item marked

"THIRD". If upon so applying the balance of the amount bid, there shall be a surplus over and

above said amounts due to the plaintiffs, the plaintiffs shall pay to the said Referee, upon

delivery to plaintiffs of said Referee's Deed, the amount of such surplus. Any surplus remaining

after all payments as herein provided shall be deposited into Court in accordance with RPAPL Section 1354 (4) and the Referee shall immediately give notice of such surplus to the owner of the subject premises as identified by plaintiffs at the time of the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee take the receipt of the plaintiffs or plaintiffs' attorney for the amounts paid as hereinbefore directed in item marked "THIRD", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Westchester County Clerk, with a copy to the Chambers of the Appointing Justice, within thirty days upon completing the sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the Court with respect to any application for additional compensation; and it is further

ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff shall recover from the defendants Boysin Lorick & Cynthia Lorick, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the Real Property Actions and Proceedings Law within the time

limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession on production of the Referee's Deed; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that the action is discontinued or the sale of the subject property is cancelled, the referee is entitled to a $250.00 fee; and it is further

ORDERED, ADJUDGED AND DECREED, that the each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such Notice of Pendency of this action, be and they hereby are, barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that the liens of the plaintiff other than the mortgage or mortgages that are the subject matter of this action also be foreclosed herein as though the plaintiff was named as a party defendant, specifically reserving to the plaintiff its right to share in any surplus monies as a result of such position as a lien creditor.

That a description of the said mortgaged premises hereinbefore mentioned, is annexed hereto as Schedule A - Legal Description.

Said Premises being commonly known as 3126 Coney Island Avenue, Brooklyn, New York; and it is further

ORDERED ADJUDGED AND DECREED, that the premises be sold in "as is" condition and sold subject to:

1.   Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley or highway;

2.   Restrictions, covenants, agreements, reservations, and easements of record, if any, insofar as the same may be in force and effect;

3.   Any state of facts an accurate, currently dated survey might disclose;

4.   Any facts an inspection of the premises would reveal;

5.   Rights of tenants and/or occupants in possession, if any;

6.   The right of redemption of the United States of America, if any;

7.   The rights of any defendants pursuant to CPLR §317, CPLR §2003 and CPLR §5015, if any;

8.   Charges for maintenance of street vaults, if any;

9.   Building or tract restrictions or regulations;

10.   Violations, notices, orders or other requirements issued by any federal, state, city, county, town or village agencies having jurisdiction of record, if any, now or hereafter against the premises;

11.   Security agreements, conditional bills of sale and chattel mortgages, if any;

12.   The liens of any prior judgments, mortgages or other encumbrances of record;

13.   Other conditions as set forth in the terms of sale more particularly to be announced at the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale shall pay for (i) any title insurance premiums; (ii) the Real Estate Transfer Tax (Article 31 of

the New York Tax Law) and any other tax imposed upon or arising from the transfer of title; (iii)

all abstract of title creation and/or continuation charges, and (iv) any other charges, occurring as

a result of the transfer, including, but not limited to, the recording fees; and it is further

    **ORDERED, ADJUDGED AND DECREED**, that a copy of this Judgment with Notice

of Entry shall be served upon the owner of Equity of redemption, any tenant named in this

action, any person having an interest in the premises, and any other party entitled to notice; and it

is further

    **ORDERED, ADJUDGED AND DECREED**, that any appointee named herein shall

comply with Section 35A of the Judiciary Law.

Dated: _z / ʒ( / ɔo(ч_

                ENTERED:

                HONORABLE BERNARD J. GRAHAM, J.S.C.

                    HON. BERNARD J. GRAHAM

5021988V.2 57301/853817

                        NANCY T. SUNSHINE
                        Clerk

2014 MJ3 -5 AM 9:07

## Schedule A

All that certain plot, piece, or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Coney Island Avenue, distant 56.27 feet Southerly from the corner formed by the intersection of the Westerly side of Coney Island Avenue and the Southerly side of Ocean View Avenue;

RUNNING THENCE Westerly at right angles to Coney Island Avenue, 100 feet;

THENCE Southerly and parallel with Coney Island Avenue, 100 feet;

THENCE Easterly at right angles to Coney Island Avenue, 100 feet to the Westerly side of Coney Island Avenue;

THENCE Northerly along the Westerly side of Coney Island Avenue, 100 feet to the point or place of BEGINNING.

TOGETHER with all right, title and interest of, in and to any streets and roads abutting the above described premises.

SAID PREMISES being known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York.

E

X

H

I

B

I

T

C

FILED: KINGS COUNTY CLERK 11/18/2015 03:43 PM
INDEX NO. 500469/2013
NYSCEF DOC. NO. 253
RECEIVED NYSCEF: 11/18/2015

COM-6

At an I.A.S. Trial Term, Part of the Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Borough of Brooklyn, City and State
of New York, on the 13 day of November 2015

P R E S E N T :

Hon. Lawrence Knipel
_____ Justice

_____

Wells Fargo Bank, N.A. et-al                  Cal. No.
                                   Plaintiff(s)    Index No. 500469/13

- against -

Boysin Lorick, et-al.

                                   Defendant(s)

_____

| The following papers numbered 1 to   read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause and Affidavits (Affirmations) Annexed_____ | |
| Answering Affidavit (Affirmation)_____ | |
| Reply Affidavit (Affirmation)_____ | |
| _____ Affidavit (Affirmation)_____ | |
| Pleadings - Exhibits_____ | |
| Stipulations - Minutes_____ | |
| Filed Papers_____ | |

Receiver's Order to show cause is granted to the extent that
Receiver choose best proposal for environmental Remediation
upon Plaintiff's consent and shall be permitted to expend the
funds to obtain the environmental remediation work and for
the retainer of the engineer and Architect to facilitate
the remediation work. Receiver shall also be permitted
to solicit bids and Retain an electrician to cure
The electrical defects. Plaintiffs cross
motion is granted to the extent that the
Referee shall compute a revised amount due and
Plaintiff shall

For Clerks use only
MG ✓✓✓
MD _____
Motion Seq. #
10, 11, 12

— E N T E R —

_____
                J.S.C.

EJV-rev 11-04

**PAGE 2**

INDEX# _500 469_ -- _13_          DATE _11/13/15_

PLAINTIFF _Wells Fargo_  vs  DEFENDANT _Lomiak_

Submit a ~~certified~~ judgment on notice to all parties
for entry and the court shall permit Plaintiff
to file a ~~~~ Notice of Sale thereafter.

ENTERED/SO ORDERED

JSC

**PAGE 2**

HON. LAWRENCE KNIPEL
SUPREME COURT JUSTICE

E

X

H

I

B

I

T

D

## Consolidated and Restated Mortgage Note

$2,250,000.00

Dated the 13th day of September, 2005
New York, New York

FOR VALUE RECEIVED, the undersigned promises to pay to Independence Community Bank, a banking corporation organized and existing under the laws of the State of New York, having its office and principal place of business at 195 Montague Street, Borough of Brooklyn, City and State of New York 11201, or order, the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars, lawful money of the United States, which the undersigned also promises and covenants to pay to any holder hereof, with interest thereon at the rate of Five and One Quarter percent (5.25%) per annum from September 13, 2005 such payment to be made in the manner provided by that certain Consolidation, Extension and Modification Agreement of even date herewith between Independence Community Bank and Boysin Lorick and Cynthia Lorick (hereinafter referred to as the "Consolidation Agreement").

Both principal and interest under this Consolidated and Restated Mortgage Note (" Note") shall be payable at the office of the holder as above set forth or such other place as the holder hereof may designate in writing.

In the event the date for payment of the principal sum secured hereunder or any part thereof falls on a Sunday or any public holiday other than a half holiday, it is understood and agreed that interest thereon at the rate(s) provided for herein shall be paid to the actual date of payment of said principal sum or any part thereof.

In the event any payment to be made hereunder or under the terms of the Consolidation Agreement shall not be received by the holder within fifteen (15) days from the due date, a late charge of five percent (5%) for each $1.00 of such payment so overdue shall be charged by the holder hereof for the purpose of defraying the expenses incidental to handling such delinquent payment. Such charge may be added to the amount owing on the principal indebtedness and its payment further secured by the Consolidation Agreement.

In addition thereto, in the event any check delivered in payment of any sum or sums of money due hereunder is dishonored, the holder hereof may charge and the undersigned shall pay a reasonable sum for the expense of handling such dishonored check.

It is hereby expressly agreed that the whole of the principal sum and interest secured by this Note shall become due and payable, at the option of the holder hereof, after default in the payment of any sum or sums of money payable hereunder or under the terms of the Consolidation Agreement for fifteen (15) days after the due date thereof or upon the happening of any default or event by which, under the terms of this Note or the Consolidation Agreement said principal sum may or shall become due and payable, and further that all of the covenants, conditions and provisions contained in the Consolidation Agreement are hereby made a part of this Note.

Loan #7207315 - File #D05-0738
Boysin Lorick and Cynthia Lorick

Restated Note Pg. 1

It is further agreed that the obligation of this Note shall continue until the entire debt evidenced hereby is paid notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this Note and the Consolidation Agreement.

In the event the principal indebtedness evidenced by this Note becomes due and payable by the terms hereof or by reason of the holder hereof exercising its option to call the same due, interest thereafter shall accrue at the lower of (a) the highest rate permitted by applicable law or (b) sixteen (16%) percent per annum and such interest shall continue to accrue and be payable at the rate or rates herein specified and the same shall be collectible in any action to enforce this Note and/or foreclose the lien of the Consolidation Agreement.

Nothing herein contained shall be construed or operate so as to require the undersigned to pay interest at a greater rate than is now lawful or to make any payment contrary to law. In any event, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law and any excess portion of such charges that have been collected shall be refunded to the undersigned.

If it ever becomes necessary to employ counsel to collect this obligation or to protect or foreclose the lien of the Consolidation Agreement collateral hereto, the undersigned shall pay all expenses and costs, including reasonable attorney's fees and out-of-pocket expenses of said attorney for the services of such counsel, whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding).

The term "holder" as used herein shall be deemed to include Independence Community Bank and any successor in interest to the ownership of this Note.

Presentment for payment, demand, notice of dishonor, protest and notice of protest are hereby waived. This Note is secured by the Consolidation Agreement hereof covering premises located at 3126 Coney Island Avenue, Brooklyn, New York 11235 being more particularly described in the Consolidation Agreement.

This Note constitutes a consolidation and restatement of the total indebtedness of the undersigned to holder in the aggregate sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest thereon, comprising the total indebtedness due under the prior mortgages and prior notes as previously consolidated, and more fully set forth in the Consolidation Agreement, creating a consolidated, single first mortgage lien in the sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars with interest covering the premises described therein.

Loan #7207315 - File #D05-0738
Boysin Lorick and Cynthia Lorick                                               Restated Note Pg. 2

This Note further evidences the undersigned's agreement to pay the consolidated principal sum hereof in the amount of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and the interest thereon; and this Note evidences a valid, consolidated indebtedness of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest owing by the undersigned to the holder and secured by a valid and subsisting consolidated first mortgage lien on the premises described in the Consolidation Agreement; and the undersigned hereby acknowledges and confirms that there are no defenses or offsets to the prior mortgages or to the prior notes or to the same as consolidated, modified and extended by the Consolidation Agreement or to the indebtedness secured thereby and evidenced by this Note.

It is further agreed by the undersigned that the terms, conditions and provisions of the consolidated indebtedness evidenced hereby as secured by the Consolidation Agreement shall control and supersede the terms, conditions and provisions set forth in the prior notes and prior mortgages. This Consolidated and Restated Mortgage Note is given by the undersigned as further evidence of the consolidated debt but not in payment, satisfaction or cancellation of the outstanding indebtedness evidenced by the prior notes, which indebtedness is now evidenced by this Note.

The undersigned represents that the indebtedness evidenced hereby is being incurred by the undersigned solely for the purposes of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

This Note shall be governed by the law of the jurisdiction in which the premises securing this Note is located.

All notices, demands and other communications required or permitted to be given by the holder to the undersigned pursuant to this Note shall be given in accordance with the provisions of the Consolidation Agreement securing this Note.

The holder, its successors and assigns, in consideration of the premises and the mutual covenants herein contained, does hereby covenant and agree as follows:

(a)     That it will not exercise its right to institute any action at law against the undersigned, or any principal of the undersigned disclosed or undisclosed, for the payment of any sum of money which is, or may be, payable hereunder other than the right to foreclose the lien of the Consolidation Agreement securing this Note, which right is specifically reserved;

(b)     That it will not seek against the undersigned, or any principal of the undersigned disclosed or undisclosed, any judgment for a deficiency in any action to foreclose the lien of the Consolidation Agreement securing this Note;

provided, however, that nothing in this covenant and agreement contained shall be or be deemed to be a release or impairment of the said indebtedness or of the lien thereof upon the premises, or shall preclude the holder from foreclosing the lien of the Consolidation Agreement in case of any default, or from enforcing any and all other rights under and by virtue of the Consolidation Agreement. The provisions of this paragraph shall not apply to any obligations or liabilities of the undersigned or any principal of the undersigned, disclosed or undisclosed, pursuant to the provisions of paragraphs 40 and 41 of the Consolidation Agreement.

IN WITNESS WHEREOF, the undersigned has duly executed this Note on the 13th day of September, 2005.

_Boysin Lorick_
Boysin Lorick

_Cynthia Lorick_
Cynthia Lorick

State of New York      )
                       : ss.:
County of New York     )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Boysin Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

**ROBERT MISTRETTA**
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4779039
Commission Exp. Aug. 31, 2009

State of New York      )
                       : ss.:
County of New York     )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Cynthia Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

**ROBERT MISTRETTA**
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4779039
Commission Exp. Aug. 31, 2009

Loan #7207315 - File #D05-0738
Boysin Lorick and Cynthia Lorick                                    Restated Note Pg. 4

Mortgage Loan Number: 7207315
CD File Number: D05-0738

Consolidated and Restated Mortgage Note

Boysin Lorick and Cynthia Lorick

- to -

Independence Community Bank

| | |
|---|---|
| Dated: | September 13, 2005 |
| Block: | 8678 |
| Lot: | 59 |
| County: | Kings |
| Premises: | 3126 Coney Island Avenue |
| | Brooklyn, New York  11235 |

Cullen and Dykman LLP
44 Wall Street, 19th Floor
New York, New York 10005

ATT:  Bernard M. Soebke

## ALLONGE

This Allonge is to be attached to and become part of that certain Consolidated and Restated Mortgage Note dated September 13, 2005 given by Boysin Lorick and Cynthia Lorick to Independence Community Bank in the original principal sum of $2,250,000.00.

Pay to the Order of Wells Fargo Bank, National Association, as trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust 2007-C1, Commercial Mortgage Pass—Through Certificates, Series 2007-C1 this ____ day of June, 2007.

Sovereign Bank, successor by merger
to Independence Community Bank

By: _____
Name: Peter M. McCarthy
Title:   Authorized Signatory

E

X

H

I

B

I

T


E

## Consolidation, Extension and Modification Agreement

**AGREEMENT**, made this 13th day of September, 2005 between Independence Community Bank, a banking corporation, organized and existing under the laws of the State of New York, having an office and place of business at 195 Montague Street, Brooklyn, New York 11201 hereinafter referred to as the mortgagee, and Boysin Lorick and Cynthia Lorick, both residing at 38 Utica Road, Edison, New Jersey 08820, hereinafter designated (and collectively referred to) as the mortgagor;

W I T N E S S E T H :

WHEREAS, the mortgagor is now the owner in fee simple of the premises known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York 11235, more fully described in Schedule "A" attached hereto and incorporated herein; and

WHEREAS, the mortgagee is the holder of one (1) certain mortgage and the note secured thereby, as hereinafter described in Schedule "B" and incorporated herein, on which there now remains unpaid the principal sum of $224,396.15; and

WHEREAS, Boysin Lorick and Cynthia Lorick has executed a note and mortgage dated September 13, 2005 to Independence Community Bank, in the principal sum of $2,025,603.85 and interest, and intended to be recorded immediately prior to the recording of this Agreement; and

WHEREAS, the mortgagor is now indebted to the mortgagee in the sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars, lawful money of the United States, with interest thereon as hereinafter provided, evidenced by a Consolidated and Restated Mortgage Note of even date herewith secured by the mortgages held by the mortgagee; and

WHEREAS, the parties hereto desire to MODIFY said mortgages, so as to CONSOLIDATE and COORDINATE the liens of each of the aforesaid mortgages so that the same shall together constitute in law but one joint lien and first mortgage upon the premises hereinafter described securing the payment of the sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest, to be paid as hereinafter provided; and

WHEREAS, the parties hereto further desire to EXTEND the time of payment of the mortgages described herein and to MODIFY the manner of payment of the entire aforesaid indebtedness, with interest thereon as hereinafter provided;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements of the parties herein contained, and of other good and valuable consideration, and of the sum of ONE ($1.00) DOLLAR lawful money of the United States, to each party by the other in hand paid, receipt whereof is hereby duly severally acknowledged, and for the purpose of carrying out the intentions above expressed, the parties hereto covenant and agree as follows:

THAT the liens of said two (2) mortgages, above described, be and the same hereby are CONSOLIDATED and COORDINATED so that the same shall and now do constitute a valid, single, first mortgage lien securing the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest, to be paid as hereinafter provided, upon the premises described herein and being known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York 11235, together with all fixtures and articles of personal property now on the premises, used or to be used in the operation or renting of the property, all as provided for in Paragraph "26" hereof;

THAT the liens of said two (2) mortgages, as so CONSOLIDATED and COORDINATED, shall be deemed and construed from the date hereof to run concurrently as one mortgage and lawfully constitute a valid, single, first mortgage lien upon the premises hereinabove described, securing the payment of the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars, with interest thereon as hereinafter provided, with the same force and effect as if the mortgagee were the holder of a single first mortgage made, executed and delivered by the mortgagor herein to the mortgagee herein and securing the payment of said principal sum with interest thereon as aforesaid, to be paid as hereinafter provided.

UPON the aforesaid consideration, the mortgagee hereby EXTENDS the time of payment of the mortgages described herein and hereby MODIFIES the manner of payment of said principal sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars, lawful money of the United States, secured by the aforesaid mortgages, as CONSOLIDATED by this agreement, so that the same shall become due and payable on October 1, 2012,

PROVIDED, that the mortgagor meanwhile pays said indebtedness owing on the above described bonds and/or notes and mortgages, as consolidated, with interest thereon at the rate of Five and One Quarter Percent (5.25%) per annum from September 13, 2005 to September 30, 2005 to be paid on October 1, 2005; and thereafter pays said indebtedness with interest thereon at the rate of Five and One Quarter Percent (5.25%) per annum from October 1, 2005 in the following manner:

BY the payment of the sum of $12,424.50 on November 1, 2005 and like payments in the sum of $12,424.50 monthly thereafter on the first day of every month in each and every year to and including September 1, 2012 with the balance of principal remaining unpaid, together with accrued interest thereon to be paid on October 1, 2012.

Interest hereinabove provided shall be computed on a monthly basis. The said monthly payments of $12,424.50 to be paid as above set forth are to be applied by the mortgagee in the following manner:

FIRST:      To the payment of interest; and

SECOND:   To the payment of the principal indebtedness above mentioned.

AND the mortgagor, in consideration of the foregoing, and of one dollar paid by the mortgagee and other valuable consideration, receipt whereof is hereby acknowledged, does hereby covenant to pay said principal sum and interest as hereinbefore set forth and, unless otherwise specifically set forth in this Agreement, not before the maturity thereof as the same is hereby extended and to comply with all other terms of said Note and mortgage; and the mortgagor further covenants that the principal and interest hereby agreed to be paid shall be a lien on the mortgaged premises and be secured by the said Note and mortgage, and that when the terms of said Note and mortgage in any way conflict with the terms and provisions of this agreement, the terms and provisions of this agreement shall prevail.

AND the mortgagor covenants with the mortgagee as follows:

1.     That the mortgagor will pay the indebtedness as hereinbefore provided.

2.     That the mortgagor will keep the buildings on the premises insured against loss by fire and against any other hazard or casualty in addition to fire, against which the mortgagee may from time to time deem it advisable to be insured (such insurance to be in such amounts and with such insurance carriers as the mortgagee may in its sole discretion require and approve,) for the benefit of the mortgagee, and the mortgagor will assign and deliver to the mortgagee fully prepaid, unassigned, unpledged, and unencumbered policies of such insurance, as the mortgagee may require, the unexpired premium or premiums on which shall at all times likewise be unassigned, unpledged and unencumbered, except that, in the event of any default hereunder, any unearned premium on any policy of insurance for fire or any other insurance required by the mortgagee is hereby assigned to the mortgagee; that the mortgagor will reimburse the mortgagee for any premiums paid for insurance by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering said policies; and that the provisions of subdivision 4 of Section 254 of the Real Property Law applying to insurance against loss by fire shall apply, so far as possible, to any other insurance required by the mortgagee hereunder.  This paragraph shall be construed pursuant to the provisions of subdivision 4 of Section 254 of the Real Property Law as it existed prior to the effective date of Chapter 830 of the Laws of 1965.

Mortgagor hereby authorizes and appoints mortgagee as attorney-in-fact for mortgagor to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds mortgagee's expenses incurred in the collection of such proceeds.  This power of attorney is coupled with an interest and therefore is irrevocable.  However, nothing contained in this paragraph shall require mortgagee to incur any expense or take any action.  Mortgagee may, at mortgagee's option, (1) hold the balance of such proceeds to be used to reimburse mortgagor for the cost of restoring and repairing the premises to the equivalent of its original condition or to a condition approved by mortgagee (the "Restoration"), or (2) apply the balance of such proceeds to

the payment of the indebtedness secured hereby, whether or not then due. To the extent mortgagee determines to apply insurance proceeds to Restoration, mortgagee shall do so in accordance with mortgagee's then-current policies relating to the restoration of casualty damage on similar multifamily properties.

Mortgagee shall not exercise its option to apply insurance proceeds to the payment of the indebtedness secured hereby if all of the following conditions are met: (1) no event of default (or any event which, with the giving of notice or the passage of time, or both, would constitute an event of default) has occurred and is continuing; (2) mortgagee determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) mortgagee determines, in its discretion, that the rental income from the premises after completion of the Restoration will be sufficient to meet all operating costs and other expenses, imposition deposits, deposits to reserves and loan repayment obligations relating to the premises; (4) mortgagee determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date or (B) one year after the date of the loss or casualty; and (5) upon mortgagee's request, mortgagor provides mortgagee evidence of the availability during and after the Restoration of the insurance required to be maintained by mortgagor pursuant to this paragraph.

If the premises is sold at a foreclosure sale or mortgagee acquires title to the premises, mortgagee shall automatically succeed to all rights of mortgagor in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the premises prior to such sale or acquisition.

3.   The mortgagor will insure and keep insured all of the articles of personal property referred to herein against loss by fire or any other casualty or hazard against which the mortgagee may from time to time deem it advisable to be insured for the benefit of the mortgagee. This provision shall be construed in the same manner as the foregoing provision for the keeping of the buildings on the premises insured against loss by fire and any other casualty or hazard.

4.   That the mortgagor will maintain the buildings on the premises in good repair; if all or any portion thereof is rented or adapted for renting, then the mortgagor will maintain same in good rentable condition at all times, whether or not occupied. Neither the value of the mortgaged premises nor the lien of the mortgage will be diminished or impaired in any way by any act or omission of the mortgagor or any successor in interest thereto and mortgagor will not do or permit to be done to, in, upon or about said mortgaged premises or any part thereof, anything that may in any way substantially impair the value thereof or substantially weaken, diminish or impair the security of the mortgage. The mortgagee may make whatever advances it deems necessary as a result of mortgagor's default and/or in order to preserve and protect the mortgaged premises and all such advances shall be deemed secured hereby, shall bear interest at the rate(s) specified herein and shall be allowed and collectible in any action to foreclose.

5.      That no structural changes shall be made to the buildings on the premises without the prior written consent of the mortgagee and that no building on the premises shall be removed or demolished without the prior written consent of the mortgagee.

6.      That the whole of said principal sum and the interest thereon shall be due, at the option of the mortgagee, after default (and the expiration of any applicable grace period set forth herein) in: a) payment of any installment of principal, of interest, or of principal and interest, for fifteen (15) days, or of any payment of an escrow deposit hereinafter referred to for real estate taxes, water rates, sewer charges, vault taxes, assessments or other charges, for fifteen (15) days; or b) payment of any taxes, including corporate franchise taxes, payable by any corporate owner of the premises for thirty (30) days; or c) delivering receipted bills showing payment of such real estate taxes, water rates, sewer charges, vault taxes or assessments for thirty (30) days after demand therefor; or d) either assigning and/or delivering the policies insuring the buildings against loss by fire or any other hazard or casualty referred to in paragraph 2 hereof or in reimbursing the mortgagee for premiums paid on such insurance as hereinbefore provided; or e) furnishing upon request a statement setting forth the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided.

7.      That the holder of the mortgage in any action to foreclose same shall be entitled to the appointment of a receiver.

8.      That the mortgagor will pay all taxes, including, but not limited to, corporate franchise taxes and real estate taxes, water rates, sewer charges, vault taxes and assessments and will submit to the mortgagee receipted bills therefor on demand, and in default thereof, the mortgagee may pay the same. If any duplication of payment results from the failure of the mortgagor to submit receipted bills, the cost and expense of procuring refund of duplicate payments shall be borne by the mortgagor.

9.      That the mortgagor within six (6) days upon request in person or within fifteen (15) days upon request by mail will furnish a written statement, duly acknowledged, setting forth the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt.

10.     That notice, notice and demand or request may be in writing and may be served in person or by mail.  Any notice required to be given by mortgagee to mortgagor shall be in writing, addressed to mortgagor at the address set forth above (or any other address which mortgagor may designate in writing), sent by regular mail and shall be deemed given on the date same is deposited in a mail receptacle maintained by the United States Postal Service.

11.     That the mortgagor warrants the title to the premises.

12.     That in case of a sale, said premises or so much thereof as may be affected by the mortgage may be sold in one parcel.

13.     That the whole of the principal sum and the interest thereon shall become due at the option of the mortgagee: a) after default for thirty days, after notice and demand, in the payment of any installment of any assessment for local improvements, heretofore or hereafter levied, which is or may become payable in installments and which has affected, now affects or hereafter may affect the said premises, notwithstanding that such installments be not due and payable at the time of such notice and demand; b) immediately upon the making of any structural change or upon the actual or threatened demolition or removal of any building erected upon said premises without the prior written consent of the mortgagee and in the event of such unauthorized structural change or demolition or removal of any building, the interest on the indebtedness secured by the mortgage shall be at the rate or rates specified herein from the date of the commencement of such unauthorized structural change or demolition or removal; c) upon any default in keeping the buildings and contents on the premises insured against loss by fire or any other casualty or hazard, as required by paragraphs numbered 2 and 3 above; d) if the buildings on the premises are not maintained in reasonably good repair and in good rentable condition; e) any failure by mortgagor to perform any of its obligations under this mortgage (other than those specified above), as and when required, which continues for a period of 30 days after notice of such failure by mortgagee to mortgagor, but no such notice or grace period shall apply in the case of any such failure which could, in mortgagee's judgment, absent immediate exercise by mortgagee of a right or remedy under this mortgage, result in harm to mortgagee, impairment of the Note or this mortgage or any other security given under any other loan document executed by mortgagor in connection with the indebtedness secured hereby; f) any failure by mortgagor to perform any of its obligations as and when required under any loan document executed by mortgagor in connection with the indebtedness secured hereby other than this mortgage which continues beyond the applicable cure period, if any, specified in that loan document executed by mortgagor in connection with the indebtedness secured hereby; and (g) any exercise by the holder of any other debt instrument secured by a mortgage, deed of trust or deed to secure debt on the premises of a right to declare all amounts due under that debt instrument immediately due and payable.

14.     In the event of the passage after the date of the mortgage of any law of the State of New York deducting from the value of land for the purposes of taxation any lien thereon or changing in any way the laws of taxation of mortgages or debts secured by mortgages for State or local purposes or the manner of the collection of any such taxes, so as to affect said mortgage, the holder hereof and of the debt secured hereby shall have the right to give thirty days' written notice to the owner of the land requiring the payment of the mortgage debt.  If such notice be given, the said debt shall become due, payable and collectible at the expiration of said thirty days.

15.     If said mortgage is now or shall hereafter be protected or affected by Moratorium Laws or by any other statute or statutes preventing the mortgagee from foreclosing for nonpayment of the principal at the expiration date hereof, the mortgagor hereby undertakes to continue to pay

amortization to the mortgagee (if the mortgagee so elects and only so long as the moratorium laws or any such other statute or statutes protect said mortgagor from foreclosure for nonpayment of the balance of the principal debt), at the default rate set forth in paragraph 33, on the maturity date hereof and, thereafter, on the same days of the months herein provided for; provided, however, that if, and as the laws of the State of New York require in connection with mortgages so protected or affected, that there be paid to the mortgagee installments amortizing said debt greater in aggregate per annum than the aggregate per annum of the payments which would be due if based on the said last year's payments, then, at the option of the mortgagee, and when after the maturity of said debt the mortgagee may so elect, the installments payable following the installment required by this paragraph to be paid on the maturity date hereof shall be as provided for in said laws with interest at the default rate set forth in paragraph 33. In the event that the mortgagor defaults in the payment of any such installment of amortization on any due date, the mortgagee shall have the right to foreclose solely by reason of such default.

16.  If any action or proceeding be commenced (except an action to foreclose or to collect the mortgage debt) to which action or proceeding the holder hereof is made a party or in which it becomes necessary to defend or uphold the lien of the mortgage, all sums paid by the holder hereof for the expense of any litigation to prosecute or defend the right and lien created by the mortgage, including reasonable counsel fees, shall be paid by the mortgagor, together with interest thereon, at the rate or rates specified herein and any such sums, with the interest thereon, shall be a lien on said premises attaching or accruing subsequent to the lien of the mortgage and shall be deemed to be secured hereby. In any action or proceeding to foreclose the mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.

17.  If the said premises as existing or used at any time are in violation of the Multiple Dwelling Law, Labor Law, or any other State or local statute, ordinance, code, rule, regulation or requirement or of any order issued or filed by any municipal or governmental authority or subdivision thereof, or if by reason of any change either in the physical condition of the premises or its use or in the aforesaid laws, statutes, ordinances, codes, rules, regulations or requirements, or direction of any municipal or governmental authority or subdivision thereof or if, by reason of the filing of a violation against the said premises they shall become and be in violation of any of the foregoing, the mortgagor shall take immediate steps to alter the premises as required to comply therewith. In any of the aforementioned events, (a) the alteration or repair shall proceed with all due diligence and shall be completed within a reasonable time and (b) there shall be submitted to the mortgagee, upon completion, (i) receipted bills evidencing the payment of the cost thereof and (ii) satisfactory proof that no liens or encumbrances have been or will be filed on account thereof; if the alterations or repairs require filing and approval of plans or specifications, said plans and specifications must first be approved by the mortgagee before they are filed with the governmental department having jurisdiction thereof and the mortgagor, on completion, shall procure and exhibit to the mortgagee a Certificate of Occupancy issued by said governmental department and a Notice of Dismissal of all violations; if the alterations do not require filing and approval of plans, the

mortgagor shall produce, on completion, a Notice of Dismissal of all violations. For the purpose of this agreement, any attempted compliance with the above by the partial or total vacating of the premises shall not be considered compliance with the requirements hereof. On any occasion when the premises shall be deemed to be in violation of any law, order, decree, code, rule or requirement relating to said premises, it shall be deemed so to be on the assumption that the premises are or will be fully occupied. The repairs and alterations to be made in order to comply with the foregoing shall include all unoccupied portions of the premises with like effect as though they were fully occupied.

18.    The Leases and Rents, as defined in that certain Collateral Assignment of Leases and Rents of even date herewith between mortgagor and mortgagee (the "Assignment"), of the mortgaged premises are assigned to the holder hereof pursuant to the provisions of the Assignment collateral hereto as further security for the payment of the obligations evidenced by the Note and secured hereby, and mortgagee shall upon the occurrence of a default hereunder which shall not have been cured within applicable grace and cure periods, if any, have all rights provided in the Assignment in consequence thereof.

19.    [Intentionally Omitted.]

20.    The mortgagor covenants that it will not assign, pledge or otherwise alienate any of the Rents (as defined in the Assignment) from the mortgaged premises without prior written consent of the mortgagee and any such attempted assignment, pledge or alienation of said Rents shall be subject and subordinate to the rights of the mortgagee.

21.    If, at any time, the income of the property shall be any criterion of the amount of interest or amortization payable by the owner, either by operation of any law or otherwise, the portion of the mortgaged premises occupied by the owner shall be treated as income producing and the reasonable rental value thereof shall be treated as additional income from the mortgaged premises.

22.    In the event that by law or by the provisions hereof the amount of income from the premises shall be any basis for a determination of the amounts payable to the mortgagee, the mortgagor shall make its books, records and vouchers of income and disbursements available for inspection by the mortgagee at any time upon the giving of five days' prior notice in writing to the mortgagor.

23.    A.    The mortgagor or any subsequent owner of said premises will, annually within sixty (60) days after the end of the mortgagor's fiscal year, furnish to the mortgagee or any subsequent holder of this consolidated mortgage both (a) a full and complete statement of all income and expenses incurred in the operation and maintenance of the said premises ("Income and Expense Statement") and (b) the personal financial statement(s) of any and all guarantor(s) of all or any portion of the loan secured hereby ("Personal Financial Statement"). The Income and Expense Statement shall include a rent roll, an accounting of all security deposits held pursuant to all leases,

including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for mortgagee to access information regarding such accounts, a statement that identifies all owners of any interest in mortgagor and the interest held by each, if mortgagor is a corporation, all officers and directors of mortgagor, and if mortgagor is a limited liability company, all managers who are not members, and such other information relating to the property as the mortgagee may require. The Income and Expense Statement will also be furnished to the mortgagee at any other time on demand. Each of the statements, schedules and reports required by this paragraph shall be certified to be complete and accurate by an individual having authority to bind mortgagor, and shall be in such form and contain such detail as mortgagee may reasonably require. The Personal Financial Statement shall be certified as complete and accurate by a certified public accountant and contain such schedules and reports as may in the mortgagee's determination be necessary, together with such information as the mortgagee in its sole discretion may require. Mortgagor shall keep and maintain at all times at the mortgaged premises or the management agent's offices, and upon mortgagee's request shall make available for review, inspection and copying by the mortgagee at the mortgaged premises, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation, income, revenue, rents, costs and expenses of the mortgaged premises, and copies of all written contracts, leases, and other instruments which affect the mortgaged premises (collectively, the "Books and Records"). All Books and Records shall be subject to examination and inspection at any reasonable time by mortgagee and shall also be subject to the following terms and provisions:

(i)  All Books and Records shall be certified to be complete and accurate by an individual having authority to bind mortgagor, and shall be in such form and contain such detail as mortgagee may reasonably require. Mortgagee also may require that any of the Books and Records be audited at mortgagor's expense by independent certified public accountants acceptable to mortgagee. Mortgagor authorizes mortgagee to obtain a credit report on mortgagor at any time.

(ii)  If Mortgagor fails to provide in a timely manner any Books and Records, mortgagee shall have the right to have mortgagor's Books and Records audited, at Mortgagor's expense, by independent certified public accountants selected by mortgagee in order to obtain such statements, schedules and reports, and all related costs and expenses of mortgagee including reasonable attorneys fees, shall become immediately due and payable and shall become secured hereby.

(iii)  If an event of default has occurred and is continuing, mortgagor shall deliver to mortgagee upon written demand all Books and Records. If an event of default has occurred and mortgagee has not previously required mortgagor to furnish a quarterly statement of income and expense for the mortgaged premises, mortgagee may require mortgagor to furnish such a statement within 45 days after the end of each fiscal quarter of mortgagor following such event of default.

B.   Regardless of whether any event of default has occurred hereunder, mortgagee, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the mortgaged premises (including environmental inspections and tests) during normal business hours, or at any other reasonable times.

24.   The mortgagor represents that it is now the owner of the premises described in the mortgage and that the aforesaid mortgage is a valid first lien for the principal sum of $2,250,000.00, with interest thereon as aforesaid, and that there are no defenses or offsets to the aforesaid mortgage or to the Note or obligation which it secures.  The said premises are known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York 11235.

25.   The mortgagor covenants to pay to the mortgagee a reasonable charge which the mortgagee may impose, at its option,  as well as mortgagee's reasonable cost incurred for the processing on its records of any change of ownership or substitution of bondsman or for any letter advice as to the amount of principal and interest owing on the mortgage or for inspections of the mortgaged premises in connection with payment of fire loss proceeds or condemnation award, or for any release, modification, extension, consent, easement, special agreement, reduction certificate, assignment, satisfaction of mortgage or other instrument relating to the mortgage.

26.   Any and all articles of personal property now or hereafter attached to or used in any way in connection with the operation or renting of the premises shall be a part of the security for the indebtedness hereinabove referred to, including, but not limiting the generality of the foregoing to, all partitions, elevators, engines, motors, dynamos, boilers, furnaces, fuel oil, coal; heating, refrigerating, air conditioning, plumbing, gas and electric light equipment; vacuum cleaning systems; sprinkler system or other fire preventing or extinguishing equipment and materials; stoves, ranges, refrigerators, washing machines, clothes dryers, dishwashers, refuse compactors, saunas, awnings, screens, window shades; furniture and furnishings for the common halls and lobbies; furnishings and equipment of any hotel, motel, resort, health spa, restaurant, recreation facility, hospital, nursing home, adult residence or other health care related facility, theater, place of public or private assemblage, club and lodge, constituting all or part of the mortgaged premises; also all other articles constituting a part of or used in connection with the operation of the buildings and other structures situated upon and constituting part of the mortgaged premises, to all of which the mortgagor represents that the mortgagor has title free from any prior liens or encumbrances, and all buildings, structures, improvements, fixtures and articles of personal property at any time, now or hereafter, constructed, affixed to or placed upon said premises or used in connection with the operation thereof. This provision shall apply to any personalty or fixtures, now or hereafter in the premises, even though any fixture or article of personal property may not form a part of the realty as a matter of law or may not be essential to the support of the realty, it being intended hereby that such fixtures and articles of personal property shall become a part of the mortgaged realty and shall be covered by the lien of the mortgage and shall be subject to a security interest in accordance with Article 9 of the Uniform Commercial Code. If any other security agreement and/or financing statement is executed simultaneously with the execution hereof, said security agreement and/or financing statement shall

be deemed to be given by the mortgagor and accepted by the mortgagee as additional security and shall be in confirmation of the foregoing; the execution or delivery of such other security agreement and/or financing statement shall not render the security interest created hereby ineffective or without force, whether said security agreement and/or financing statement is filed or refiled or not, the security interest herein created being, notwithstanding the execution and delivery of such other security agreement and/or financing statement, fully effective and operative. Should any of such fixtures and/or articles of personal property be placed in the premises by the mortgagor herein or any successor in interest subject to any prior security interest deemed superior to that created hereby, the lien hereof shall be deemed to include the equity and interest of the mortgagor or any such successor in interest in any of such fixtures and/or articles of personal property and, in the event of any default hereunder, all the right, title and interest of the mortgagor or of any such successor in interest in and to any and all such property is hereby assigned to the mortgagee, together with any benefits of any deposits or payments theretofore made thereon by the mortgagor or any such successor in interest. The provisions hereof are intended by mortgagor and mortgagee, and shall be deemed and construed to constitute a security agreement in accordance with Article 9 of the Uniform Commercial Code, creating a security interest in the property described in this paragraph. The mortgagee is hereby authorized to file and refile financing statements relating to the security interests created hereby on behalf of and in the name of mortgagor without the mortgagor's consent to or execution of such filings whenever the mortgagee deems it advisable for the purpose of complying with the Uniform Commercial Code and of effectuating, continuing or renewing the liens hereby created.

27.    The mortgagor does hereby assign to the mortgagee and the legal representatives, successors and assigns of said party, as a part of the security for the indebtedness hereinabove referred to, any and all award and awards heretofore made and hereafter to be made by any Municipal, County, State, Federal or other governmental authority to the present and/or all subsequent owners of the premises herein described including any award and awards for any change or changes of grade of streets affecting said premises; and the said mortgagee, for the said mortgagee and the legal representatives, successors and assigns of the mortgagee (at its or their option) are hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the amount owing on account hereof, notwithstanding the fact that the amount owing on account hereof may not be then due and payable, and the said mortgagor for the said mortgagor and the legal representatives, successors and assigns of the mortgagor hereby covenants and agrees to and with the said mortgagee and the legal representatives, successors and assigns of the mortgagee, upon demand by the holder hereof, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the holder hereof, free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

28.    The mortgagor covenants to pay to the mortgagee on the first day of each and every month commencing October 1, 2005, one-twelfth (1/12th) of the annual charges for real estate taxes, water rates, sewer charges, vault taxes and assessments affecting the premises herein mentioned and,

at the option of the mortgagee, the annual premiums for fire, flood and other hazard insurance, which sums shall be held by the mortgagee and used by it to pay such taxes and charges as the same become due and payable. The amount of such monthly payments is to be fixed and determined by the mortgagee immediately after the date hereof and if, on the first day of any month hereafter, the total of the monthly installments theretofore paid to the mortgagee shall be insufficient to pay such taxes and charges as shall then or thereafter be due and payable, the mortgagor or any subsequent owner of the premises shall pay to the mortgagee such further sum as shall be necessary to make up such deficit within fifteen (15) days after written notice and demand therefor; and if there be any excess in any month over and above the sum necessary to pay such taxes and charges, it shall be applied to such taxes and charges subsequently accruing. Such funds held by the mortgagee shall not be deemed trust or agency funds, may be co-mingled with the general funds of the mortgagee and no interest or earnings thereon shall be payable by mortgagee except as may be required by law. Upon any default by mortgagor, such funds may in the mortgagee's sole discretion be applied in reduction of the principal balance then remaining unpaid. Upon mortgagor's default in making any such payment or payments as and when herein provided, mortgagee shall have the right (but not the obligation), in mortgagee's sole and absolute discretion, to pay any such taxes or charges and mortgagor shall be obligated to repay the same to mortgagee with interest at the rate(s) specified hereinabove and such sums so advanced by mortgagee, together with the interest thereon, shall be a lien on said premises and secured by this agreement.

29.    In the event of a sale, conveyance or transfer of ownership of the mortgaged premises by the mortgagor, or any subsequent owner thereof, the mortgage debt will immediately become due and payable at the option of the mortgagee. As used in this paragraph, the phrase "sale, conveyance or transfer of ownership" shall be construed to include, but not be limited to, with respect to the mortgaged premises: a) an installment sales contract; b) a lease with an option to buy; c) a lease for more than three (3) years including renewal terms; d) a transfer of stock of the mortgagor, if mortgagor is a corporation; e) any change in the general partners comprising mortgagor, as same presently exist, if mortgagor is a partnership; f) any change in the members comprising mortgagor, as same presently exist, if mortgagor is a limited liability company; and g) the creation of any other lien or encumbrance involving a transfer of rights of occupancy.

30.    In the event any payment to be made hereunder shall not be received by the mortgagee within fifteen (15) days from the due date, a late charge of five (5%) percent for each $1.00 of such payment so overdue shall be charged for the purpose of defraying the expenses incidental to handling such delinquent payment. Such charge may be added to the amount owing on the principal indebtedness and its payment further secured hereby.

31.    In the event any check delivered in payment of any sum or sums of money due hereunder is dishonored, the mortgagee may charge, and the mortgagor shall pay, a reasonable sum for the expense of handling such dishonored check.

32.     All obligations of the mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.

33.     Anything herein contained to the contrary notwithstanding, in the event the principal indebtedness referred to herein becomes due and payable by the terms hereof or by reason of the mortgagee exercising its option to call the same due, interest on the said indebtedness shall thereafter accrue at the lower of (a) the highest rate permitted by applicable law or (b) sixteen (16%) percent per annum and continuing until payment of the entire principal indebtedness and the same shall be collectible in any action to enforce this agreement.

34.     Nothing contained herein shall be construed or operate so as to require the mortgagor to pay interest at a greater rate than is now lawful or to make any payment contrary to law.  In any event, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law and any excess portion of such charges that have been collected shall be refunded to the mortgagor.

35.     If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the mortgagor hereby agrees to pay all expenses and costs, including reasonable attorney's fees for the services of such counsel together with all other costs and disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding).

36.     In the event the date for payment of the principal sum or any part thereof secured hereby falls on a Sunday or any public holiday other than a half holiday, it is understood and agreed that interest thereon at the rate(s) provided for herein shall be paid to the actual date of payment of said principal sum or any part thereof.

37.     Upon the breach of any of the covenants, warranties or agreements hereof, or should any representation of mortgagor herein prove to be untrue, at the option of the mortgagee or any subsequent holder of the mortgage, the entire principal sum secured hereby shall become immediately due and payable, and the mortgagee or any subsequent holder hereof shall have the right to foreclose said mortgage.  Mortgagor hereby agrees that upon any action to foreclose or otherwise enforce the provisions contained in this agreement, mortgagor shall not interpose any counterclaim and mortgagor hereby waives any right to a jury trial.  Mortgagor hereby expressly grants to mortgagee the power to sell the premises pursuant to Article 14 of the Real Property Actions and Proceedings Law of the State of New York.  As used herein, the term or terms "foreclosure", "action to foreclose", "proceeding to foreclose", "action to collect the mortgage debt" and any similar term or terms used herein shall be deemed to expressly include and refer to mortgagee's power to sell the premises pursuant to said Article 14.

38.     This instrument and all of the covenants contained herein shall bind the heirs, executors, administrators, successors and assigns of the mortgagor and inure to the benefit of the successors and assigns of the mortgagee, with like effect as if such heirs, executors, administrators, successors and assigns were named herein.

39.     Wherever the words "Note" or "mortgage" or "Note and mortgage" are referred to herein, they shall be deemed to mean the Note and mortgage or Notes and mortgages, respectively, including the Consolidated and Restated Mortgage Note hereinabove mentioned as they have been hereby consolidated, extended or modified.  The term Note as used herein shall be construed to include Bond.

40.     Mortgagor hereby covenants and agrees as follows:

(i)           Within ninety (90) days after notification by mortgagee, mortgagor shall remove or cause to be removed any and all asbestos or correct or cause to be corrected the condition of such asbestos by enclosure or encapsulation for all asbestos which may at any time be determined to be located in or on any part of the mortgaged premises and will take or cause to be taken any and all other actions, required by law in connection therewith; and

(ii)          Mortgagor shall proceed promptly and with due diligence to perform or cause to be performed all actions required to be taken by law in connection therewith and/or as requested by mortgagee; and

(iii)         Mortgagor shall comply with all laws, rules or regulations, as the same may from time to time be amended, modified or supplemented, and relating to acceptable levels of asbestos, asbestos-containing materials or other hazardous materials including, without limitation, all pollutants, dangerous substances, toxic substances, hazardous wastes and hazardous substances as defined or set forth in or pursuant to or covered by the Resource Conservation and Recovery Act (42 U.S.C. Section 9601, et seq.), the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. Section 6901, et seq.), or any other federal, state or local environmental law, ordinance, rule or regulation.

Mortgagor shall, whenever required hereunder, perform all of the work so required in a safe and proper manner and in accordance and in compliance with all applicable federal, state, city and building laws, rules or regulations in existence now or established from time to time hereafter.  Upon completion of such work, mortgagor shall deliver to mortgagee certified copies of all clearance reports and testing results required by all applicable laws, rules and regulations in existence now or established from time to time hereafter.

Mortgagor, its successors and assigns, shall defend, indemnify and hold harmless mortgagee, including its directors, officers, employees, agents, successors and assigns, from and against any and

all claims, demands, judgments, damages, actions, causes of action, injuries, administrative orders, consent agreements and orders, liabilities, penalties, costs and expenses (including reasonable attorneys' fees) of any kind whatsoever, including claims arising out of loss of life, injury to persons, property, or business in connection with the acts or failure to act of mortgagor or mortgagor's predecessors in interest, third parties in a contractual relationship with mortgagor, or any of them, whether or not occasioned wholly or in part by any condition, accident or event caused by any act or omission of mortgagor, which:

(a)       arises out of the actual, alleged or threatened discharge, dispersal, release, generation, disposal or escape of asbestos-containing materials or other hazardous materials; or

(b)       actually or allegedly arises out of the performance or failure to perform the abatement of any asbestos or other hazardous materials source or the work required to be taken by law in connection therewith.

Mortgagee shall have the right, but not the obligation, to perform or cause to be performed all of mortgagor's obligations hereunder. If mortgagee shall perform or cause to be performed such obligations, mortgagors shall, immediately and upon demand of mortgagee, reimburse mortgagee for all costs and expenses mortgagee incurs in connection therewith.

The mortgagor, its successors and assigns, shall bear, pay and discharge when and as the same becomes due and payable, any and all such judgments or claims for damages, penalties, clean-ups or otherwise against mortgagee described in this paragraph 40, shall hold mortgagee harmless for those judgments or claims, and shall assume the burden and expense of defending all suits, administrative proceedings, and negotiations of any description with any and all persons, political subdivisions or government agencies arising out of any of the occurrences set forth in this paragraph 40.

In the event mortgagor fails to meet and comply with the covenants and conditions set forth in this paragraph 40, the entire balance of principal secured hereunder, together with all interest thereon shall immediately become due and payable at the option of the mortgagee. Mortgagor hereby represents to mortgagee that there is as of the date hereof no asbestos, asbestos-containing materials or other hazardous materials in, on or about the mortgaged premises.

Anything contained in this agreement to the contrary notwithstanding, the mortgagor hereby agrees that the indemnifications contained in this paragraph 40 shall continue and survive satisfaction of the loan whether by payment or through foreclosure or acceptance by mortgagee of a deed in lieu of foreclosure.

41.       Any provisions in this Agreement to the contrary notwithstanding, mortgagor hereby agrees to pay any and all State and local real property and other transfer taxes payable in connection

with a sale or other conveyance of the mortgaged premises arising or resulting from mortgagee's (i) foreclosure of the mortgage as extended or (ii) acceptance of a deed to the mortgaged premises in lieu of foreclosure proceedings. Mortgagor further hereby irrevocably appoints mortgagee its true and lawful attorney to act in mortgagor's name and stead in completing any and all returns, questionnaires, notices of sale or other documents which may be required in connection with any such transfer or the payment of any such transfer tax or other tax.

42.   The terms and provisions of this agreement shall not be changed, modified, or discharged in whole or part except by an instrument in writing signed by the party against whom enforcement of such change, modification or discharge is sought or by its agent thereunto duly authorized in writing.

43.   The mortgagor hereby covenants and agrees that it will open and maintain a non interest bearing checking account with the mortgagee to serve as the operating account (the "Operating Account"), for the mortgaged premises within thirty (30) days of the date hereof. The mortgagor further covenants and agrees that when so established, the Operating Account will be the sole account maintained in connection with the operation of the mortgaged premises, that all income, expenses, and other cash-flow generated by the mortgaged premises shall be deposited into or paid through the Operating Account and mortgagor shall maintain the Operating Account or guarantee the maintenance of the Operating Account until all amounts secured hereunder are repaid in full with interest.

44.   Mortgagor will not, without the prior written consent of the mortgagee, create, grant or permit to be created or granted, or permit to remain, any mortgage, pledge, lien, encumbrance, option to purchase or charge, or security interest, or conditional sale or other title retention agreement, with respect to the premises secured hereunder or any part thereof or income therefrom, whether prior or subordinate to the lien of the mortgages consolidated hereby or any extensions, renewals or modifications hereof. Mortgagee hereby consents to the mortgagor's obtaining a loan secured by a subordinate mortgage lien on the premises in an amount which, when added to the then unpaid principal balance due hereunder, shall not exceed seventy-five (75%) percent of the then appraised value of the premises based on a re-appraisal of the mortgaged premises by the mortgagee or by an appraiser selected by mortgagee with the cost thereof to be paid by the mortgagor (the "Subordinate Mortgage") provided, however, that (a) the mortgagor shall not be in default beyond any applicable notice and grace period under any of the terms, covenants or conditions of this agreement; and b) the lien of the Subordinate Mortgage is and shall continue to be subject and subordinate in all respects to the lien of the mortgages as consolidated hereby and to any extension, renewals and/or modifications hereof. Mortgagor will not increase, amend, modify, extend or renew the Subordinate Mortgage without the prior written consent of the mortgagee. Any default under any of the terms, covenants and/or conditions of the Subordinate Mortgage shall be deemed in default hereunder.

45.     Any advances made by the mortgagee under any of the terms, covenants, or conditions of this agreement shall be deemed secured hereby, shall bear interest at the default rate set forth in paragraph 33 and shall be allowed and collectible in any action to foreclose.

46.     The mortgagor covenants and agrees that it will make all of the below listed repairs to the secured premises, all to the satisfaction of the mortgagee, on or before March 13, 2006 :

1.     Replace roof;
2.     Remove graffiti from needed areas; and
3.     Repair framing area around needed apartment doors.

All such work shall be subject to inspection and approval by the mortgagee and shall be completed on or prior to March 13, 2006.  Mortgagor hereby agrees to pay to mortgagee a fee of $300.00 for each such inspection.

47.     Mortgagor hereby agrees to complete all work necessary to cure all Building and Housing violations as set forth in the Report of Ridge Abstract Corp. (Title no. L601148KZ) dated August 1, 2005, and to deliver to the mortgagee on or before March 13, 2006 evidence of such completion which evidence must be satisfactory to the mortgagee in all respects.

48.     Provided mortgagor, during the term hereof, shall have (a) made all payments required  hereunder within applicable grace periods, if any, and (b) not otherwise defaulted under any provision hereof, which default(s) shall not have been cured within applicable grace and cure periods, if any, then mortgagor is hereby given an option to extend the maturity date hereof for a period of five years, provided further that as conditions  precedent to the exercise of such option mortgagor first (a) gives mortgagee written notice of mortgagor's election to exercise such option at least sixty days prior to the original maturity date, and (b) at the time such notice is given, mortgagor simultaneously pays to mortgagee a sum equal to one (1%) percent of the then unpaid principal balance of the loan as a non-refundable extension fee.  Upon the giving of such notice and the payment of such fee the loan shall be automatically extended for a five year period and the interest rate to be paid by the mortgagor on the unpaid principal balance during such extension period will be the greater of a) a rate which is Two (2.00%) Percent per annum in excess of the Five Year Fixed Advance Rate of the Federal Home Loan Bank of New York as announced or made available on or most recently prior to a date which is sixty days prior to the commencement of such extension, or b) Five and One Quarter (5.25%) Percent per annum.  During such extended term the constant monthly payments set forth hereinabove shall be adjusted to reflect the change in the interest rate and shall include a One (1.00%) Percent per annum amortization factor.  All such payments shall be made in monthly installments and be applied first to interest at the rate specified above and the balance in reduction of principal.  In the event the Five Year Fixed Advance Rate of the Federal Home Loan Bank of New York ceases to be made available by the Federal Home Loan Bank, the mortgagee shall compute the interest rate by application of a comparable index.

49.     A prepayment premium shall be payable in connection with any prepayment, voluntary or involuntary, made under this agreement. Beginning in the first year of the term (or in the first year of the term of the extension period should the mortgagor so exercise its option to extend the maturity date under paragraph forty eight (48) hereinabove), mortgagor shall have the option of prepaying the balance of the principal sum secured hereunder at any time upon giving thirty (30) days prior written notice to the mortgagee of its intention to do so. Upon the exercise of such prepayment option the mortgagor shall, in addition to the prepayment of the entire principal balance, pay accrued interest thereon at the rate hereinabove set forth (or at the rate computed under paragraph forty eight (48) hereinabove in the event mortgagor has exercised its option to extend the maturity date) to the date of prepayment, together with a sum equal to the percentage hereinbelow set forth of the principal sum so prepaid as the agreed and reasonable recompense for damages suffered by the mortgagee in consequence thereof. Said percentage shall be five percent (5%) for prepayment made in the first year of the term (or in the first year of the term of the extension period); four percent (4%) for prepayment made in the second year of the term (or in the second year of the term of the extension period); three percent (3%) for prepayment made in the third year of the term (or in the third year of the term of the extension period); two percent (2%) for prepayment made in the fourth or fifth years of the term (or in the fourth year of the term of the extension period) and one percent (1%) for prepayment made in the sixth or seventh years of the term (or in the fifth year of the term of the extension period). It is understood that "year of the term" shall be defined to mean each annual period commencing on the date of execution of this agreement (or the date of commencement of the extension period) and ending the day before the anniversary date of such event. Notwithstanding the above, full prepayment may be made without premium or penalty within 90 days prior to either the original maturity date or extended maturity date. Provided the loan is maintained on a current basis, then for purposes of this paragraph, full or partial prepayment of principal secured hereunder resulting from application of (a) fire loss insurance proceeds and/or (b) condemnation awards elected by mortgagee to be applied to the principal sum unpaid hereunder shall not be deemed a prepayment and no premium or penalty shall be payable thereon by the mortgagor.

Upon mortgagee's exercise of any right of acceleration under this agreement, mortgagor shall pay to mortgagee, in addition to the entire unpaid principal balance of this agreement outstanding at the time of the acceleration, (A) all accrued interest and all other sums due mortgagee under this agreement, and (B) the applicable prepayment premium as set forth above (provided, however, that if such acceleration occurs at any time during the first two years of the term the applicable prepayment premium shall be five (5.00%) percent). Any application by mortgagee of any collateral or other security to the repayment of any portion of the unpaid principal balance of this agreement prior to the maturity date and in the absence of acceleration shall be deemed to be a partial prepayment by mortgagor, requiring the payment to mortgagee by mortgagor of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to mortgagee a prepayment premium computed pursuant to the applicable percentage set forth above without mortgagor having to pay out-of-pocket any additional amounts.

Mortgagor recognizes that any prepayment of the unpaid principal balance of this agreement, whether voluntary or involuntary or resulting from a default by mortgagor, will result in mortgagee's incurring loss, including reinvestment loss, additional expense and frustration or impairment of mortgagee's ability to meet its commitments to third parties. Mortgagor agrees to pay to mortgagee upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Mortgagor therefore acknowledges and agrees that the prepayment premium set forth above represents a reasonable estimate of the damages mortgagee will incur because of a prepayment. Mortgagor further acknowledges that the prepayment premium provisions of this agreement are a material part of the consideration for the loan evidenced by this agreement, and acknowledges that the terms of this agreement are in other respects more favorable to mortgagor as a result of the mortgagor's voluntary agreement to the prepayment premium provisions.

50.     The mortgagee, its successors and assigns, in consideration of the premises and the mutual covenants herein contained, does hereby covenant and agree as follows:

(a)     That it will not exercise its right to institute any action at law against the mortgagor, or any principal of the mortgagor, disclosed or undisclosed, for the payment of any sum of money which is, or may be, payable under the notes or the mortgages as consolidated hereby, other than the right to foreclose, which right is specifically reserved;

(b)     That it will not seek against the mortgagor, or any principal of the mortgagor, disclosed or undisclosed, any judgment for a deficiency in any action to foreclose the mortgages, as consolidated;

provided, however, that nothing in this covenant and agreement contained shall be or be deemed to be a release or impairment of the said indebtedness, or of the lien thereof upon the premises, or shall preclude the holder of the said bonds and/or notes secured hereby from foreclosing in case of any default or from enforcing any and all other rights under and by virtue of the mortgages, as consolidated. The provisions of this paragraph 50 shall not apply to any obligations or liabilities of the mortgagor or any principal of the mortgagor, disclosed or undisclosed, pursuant to the provisions of paragraphs 40 and 41 as herein above set forth.

51.     Notwithstanding the provisions of paragraph 29 hereinabove set forth, mortgagee hereby agrees that the following transfers shall not be considered a "sale, transfer or conveyance of ownership of the mortgaged premises":

a.     Intentionally Omitted;

---

Loan #7207315 · File #D05-0738

Boysin Lorick and Cynthia Lorick                                    Cons Agmt Page 19

b.      Transfers of membership interests of Boysin Lorick and Cynthia Lorick to his/her respective spouse and/or non minor child or children;

c.      Mortgagor's transfer of the premises to a partnership, a corporation, a limited liability company, or to any other entity, provided the parties recited in or permitted under subsections (a) and/or (b) above continue(s) to hold a 100% equity interest in said entity;

d.      A transfer to which mortgagee has consented;

e.      A transfer that occurs by devise, descent, or by operation of law upon the death of a natural person or a transfer of ownership interests of the mortgagor company by the members to a trust, the beneficiary or beneficiaries of which are such member's immediate family members (spouse and/or child or children), established for estate planning purposes; and

f.      A transfer of obsolete or worn out personalty or fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created hereby or consented to by mortgagee;

provided, however, that none of the above transfers shall be or be deemed to be or operate in any way as a full or partial release of the mortgagor or any Member from any of the liabilities or indemnities set forth in paragraphs 40 and 41 hereinabove. All other transfers shall be subject to the provisions of paragraph 29 hereinabove set forth.

52.      Mortgagor shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as mortgagee may require from time to time in order to better assure, grant, and convey to mortgagee the rights intended to be granted, now or in the future, to mortgagee under this agreement and any other document executed in connection with the loan.

53.      Each right and remedy provided in this agreement is distinct from all other rights or remedies under this agreement, any other loan document executed by mortgagor in connection with the indebtedness secured hereby or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

54.      Any forbearance by mortgagee in exercising any right or remedy under the Note, the mortgage or this agreement, or any other loan document executed by mortgagor in connection with the indebtedness secured hereby or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy.

55.     The acceptance by mortgagee of payment of all or any part of the indebtedness secured hereby after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of mortgagee's right to require prompt payment when due of all other payments on account of the indebtedness secured hereby or to exercise any remedies for any failure to make prompt payment. Enforcement by mortgagee of any security for the indebtedness secured hereby shall not constitute an election by mortgagee of remedies so as to preclude the exercise of any other right available to mortgagee. Mortgagee's receipt of any insurance or condemnation awards or proceeds does not operate to cure or waive any event of default.

56.     Mortgagor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this consolidated mortgage or to any action brought to enforce any loan document executed by mortgagor in connection with the indebtedness secured hereby.

57.     Notwithstanding the existence of any other security interests in the premises held by mortgagee or by any other party, mortgagee shall have the right to determine the order in which any or all of the premises shall be subjected to the remedies provided in this agreement, the mortgage, the Note, and any other loan document executed by mortgagor in connection with the indebtedness secured hereby or applicable law. Mortgagee shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the premises and who has actual or constructive notice of this consolidated mortgage waives any and all right to require the marshalling of assets or to require that any of the premises be sold in the inverse order of alienation or that any of the premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this agreement.

58.     This agreement, and any loan document executed by mortgagor in connection with the indebtedness secured hereby which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the premises is located (the "Property Jurisdiction"). Mortgagor agrees that any controversy arising under or in relation to the Note, the mortgage, this agreement or any other loan document executed by mortgagor in connection with the indebtedness secured hereby shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the indebtedness secured hereby, or any other loan document executed by mortgagor in connection with the indebtedness secured hereby. Mortgagor irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

59.     If more than one person or entity signs this agreement as mortgagor, the obligations of such persons and entities shall be joint and several.

---

60.     All actions regarding the servicing of the loan evidenced by the Note, including the collection of payments, the giving and receipt of notice, inspections of the Property, inspections of books and records, and the granting of consents and approvals, may be taken by the party servicing the loan for the mortgagee (if any) unless mortgagor receives notice to the contrary.  If mortgagor receives conflicting notices regarding the identity of the party servicing the loan for the mortgagee (if any) or any other subject, any such notice from mortgagee shall govern.

61.     Mortgagee may furnish information regarding mortgagor or the premises to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the indebtedness secured hereby, including trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of multifamily mortgage loans.  Mortgagor irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including any right of privacy.

62.     If, and to the extent that, the proceeds of the loan evidenced by the Note are used to pay, satisfy or discharge any obligation of mortgagor for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the premises (a "Prior Lien"), such loan proceeds shall be deemed to have been advanced by mortgagee at mortgagor's request, and mortgagee shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

63.     Notwithstanding any provision to the contrary herein, mortgagee hereby agrees that, provided the mortgagor is not in default under any of the terms, covenants and/or conditions hereof, upon payment in full of the principal balance due hereunder, together with accrued interest and any other charges due hereunder, mortgagee shall execute a satisfaction or, upon the written request of the mortgagor, an assignment of mortgage, the form and content of which shall be in the sole discretion of the mortgagee, subject, however in the case of an assignment to the following: (i) the delivery of an assignment of mortgage is in accordance with and permitted under the laws of the State of New York existing at that time, and (ii) the delivery of an assignment and/or the agreement to deliver same hereby shall not adversely affect mortgagee.  Mortgagor agrees to pay all costs in connection with such satisfaction or assignment including, but not limited to, the fees of mortgagee's attorneys and the mortgagor further agrees that mortgagee shall not be responsible for any fees, costs, or expenses incurred by reason of mortgagee's inability, for whatever reason, to comply herewith.

64.     Notwithstanding the provisions of paragraph 29 hereinabove set forth, mortgagee hereby agrees that it will not unreasonably withhold its consent to a one-time transfer of the mortgaged premises from the mortgagor to a bona fide third party purchaser of the mortgaged premises (the "Purchaser"), provided, however, that (a) there shall be no event of default hereunder the time within which to cure has expired; (b) the Purchaser shall, prior to any such transfer, complete the mortgagee's usual form of mortgage application and deliver same to the mortgagee,

together with Purchaser's personal financial statements, and such other documentary verifications as may be reasonably required by the mortgagee and provided further that, based upon such application and documentary evidence, which must be true and correct in all respects, the credit history and financial information of the Purchaser is found acceptable to the mortgagee by application of its usual underwriting standards and further that the Purchaser is found to have a net worth no less than the mortgagor at the time of mortgagor's application; (c) at the time of such transfer, the Purchaser enters into a Modification and Assumption Agreement with the mortgagee, the form and content of which shall be subject to mortgagee's sole approval; and (d) prior to any such transfer, the mortgagor pays to the mortgagee a non-refundable transfer fee equal to one (1%) percent of the unpaid principal balance at the time of such transfer. The right to transfer granted under the terms of this paragraph can be exercised only once and only by the original mortgagor and no such right to transfer is granted or deemed to be granted to any Purchaser. Mortgagor agrees to pay all costs in connection with such transfer including, but not limited to, the fees of mortgagee's attorney.

65.     Notwithstanding any of the provisions contained herein to the contrary, the mortgagee shall provide mortgagor with written notice of any default herein other than a default in the payment to the mortgagee of any sum or amount of money which may fall due or be payable from time to time under the terms of this agreement. Mortgagor shall have a period of thirty (30) days after mortgagee's giving of such notice within which time such default must be cured. However, in the event such default cannot, in the sole determination of the mortgagee, be cured within such thirty (30) day period, and provided the mortgagor has immediately commenced to take all action necessary to cure said default and continues to proceed diligently, without interruption and in good faith to cure such default, the mortgagee may in its sole discretion grant the mortgagor an additional thirty (30) day period within which time all actions required as set forth in the mortgagee's notice of default under this paragraph shall be completed. Any such default not cured within said thirty (30) day period, shall be subject to all of the other terms and provisions contained in this agreement.

This Space Intentionally Blank

**IN WITNESS WHEREOF**, this agreement has been executed by the parties hereto on the day and year first above written.

Independence Community Bank

By: _____

Name: Janet Rohrssen
Title: First Vice President

X _____
Boysin Lorick

X _____
Cynthia Lorick

State of New York      )
                                  : ss.:
County of Kings         )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Janet Rohrssen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

CHRISTINA OSBORNE
Notary Public, State Of New York
No. 01OS6095652
Qualified In Richmond County
Commission Expires 07/14/2007

State of New York      )
                                  : ss.:
County of New York   )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Boysin Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

ROBERT MISTRETTA
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4772039
Commission Exp. Aug. 31, 2006

Loan #7207315 - File #D05-0738

Boysin Lorick and Cynthia Lorick                                                                  Cons Agmt Page 23

State of New York        )
                         : ss.:
County of New York       )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Cynthia Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

ROBERT MISTRETTA
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4779039
Commission Exp. Aug. 31, 2009

---

Loan #7207315 - File #D05-0738

Boysin Lorick and Cynthia Lorick

Cons Agmt Page 25

Schedule "A"

All that certain plot, piece, or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Coney Island Avenue, distant 56.27 feet Southerly from the corner formed by the intersection of the Westerly side of Coney Island Avenue and the Southerly side of Ocean View Avenue;

RUNNING THENCE Westerly at right angles to Coney Island Avenue, 100 feet;

THENCE Southerly and parallel with Coney Island Avenue, 100 feet;

THENCE Easterly at right angles to Coney Island Avenue, 100 feet to the Westerly side of Coney Island Avenue;

THENCE Northerly along the Westerly side of Coney Island Avenue, 100 feet to the point or place of BEGINNING.

TOGETHER with all right, title and interest of, in and to any streets and roads abutting the above described premises.

SAID PREMISES being known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York.

Schedule "B"

(a)      Mortgage dated October 19, 1995, made by Boysin Lorick and Cynthia Lorick to Fourth Federal Savings Bank, in the principal sum of $450,000.00, and interest, and duly recorded in the Office of the Register of the County of Kings on November 14, 1995 in Reel 3608 at Page 1747 (upon which a mortgage tax of $9,000.00 was paid, Receipt Number CM 13178);

on which said mortgage (a), above described, there now remains unpaid the principal sum of $224,396.15;

which said mortgage (a), above described, was thereafter duly assigned by Fourth Federal Savings Bank to Independence Community Bank, by instrument of assignment dated September 8, 2005, and intended to be recorded simultaneously herewith;

Mortgage Loan Number: 7207315
CDBP File Number:  D05-0738

## Consolidation, Extension and Modification Agreement

Boysin Lorick and Cynthia Lorick

-with-

Independence Community Bank

| | |
|---|---|
| Section: | 26 |
| Block: | 8678 |
| Lot: | 59 |
| County: | Kings |
| Premises: | 3126 Coney Island Avenue |
| | Brooklyn, New York 11235 |

Submitted By: Ridge Abstract Corp.
Record and Return To:

Cullen and Dykman LLP
44 Wall Street, 19th Floor
New York, New York 10005

ATT:  Bernard M. Soebke

E

X

H

I

B

I

T


F

Assignment of Mortgage

KNOW THAT Sovereign Bank, a Federal Savings Bank, successor by merger to Independence Community Bank, having an office and place of business at 195 Montague Street, Brooklyn, New York 11201, in consideration of the sum of ONE DOLLAR, and other good and valuable consideration, paid by Wells Fargo Bank, National Association, as trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, having an office at c/o Wells Fargo Bank, NA, 1055 10th Avenue SE, Minneapolis, MN 55414, Assignee, hereby assigns unto the Assignee;

The Mortgages set forth on Schedule "A" attached hereto and made a part hereof covering the premises more fully described therein and as designated on the cover page hereto.

TOGETHER with bond(s) or note(s) or obligation(s) described in said mortgage(s), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives, and assigns of the Assignee forever.

The word "Assignor" or "Assignee" shall be construed as if it read "Assignors" or "Assignees" whenever the sense of this instrument so requires.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the Assignor has executed this Assignment as of the 21st day of June, 2007.

Sovereign Bank

By: _____

Name: Peter M. McCarthy
Title:  Authorized Signatory

(State of New York    )
                                    ): ss.:
(County of New York )

On the 21st day of June, 2007, before me, the undersigned, personally appeared Peter M. McCarthy, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

MICHELE STIUSO
Notary Public, State of New York
No. 01ST5012903
Qualified in Richmond County
Commission Expires 6/15/20 \\

**S E A L**

_____
Notary Public

Loan #7207315 - File #D05-0738

Boysin Lorick and Cynthia Lorick - Project #166

Assign Of Mortgage Pg. 1

Schedule "A" [Mortgage Chain]

1.    (a)    Mortgage dated October 19, 1995, made by Boysin Lorick and Cynthia Lorick to Fourth Federal Savings Bank, in the principal sum of $450,000.00, and interest, and duly recorded in the Office of the Register of the County of Kings on November 14, 1995 in Reel 3608 at Page 1747 (upon which a mortgage tax of $9,000.00 was paid, Receipt Number CM 13178);

2.    which said mortgage (a) above described was thereafter duly assigned by Fourth Federal Savings Bank to Independence Community Bank by instrument of assignment dated September 13, 2005 and duly recorded in said Register's Office on October 17, 2005 as City Register File Number 2005000577503;

3.    (b)    Mortgage dated September 13, 2005, made by Boysin Lorick and Cynthia Lorick to Independence Community Bank in the principal sum of $2,025,603.85, and interest, and duly recorded in the Office of the Register of the County of Kings on October 17, 2005 as City Register File Number 2005000577500 (upon which a mortgage tax of $56,716.80 was paid).

4.    which said two (2) mortgages, (a) and (b), above described, were thereafter duly consolidated into one joint lien and first mortgage in the principal sum of $2,250,000.00 and interest, by the terms of a Consolidation, Modification and Extension Agreement dated September 13, 2005 between Independence Community Bank and Boysin Lorick and Cynthia Lorick and duly recorded in said Register's Office on October 17, 2005 as City Register File Number 2005000577501.

Assignment of Mortgage

===============================================================

Sovereign Bank
(successor by merger to Independence Community Bank)

to

Wells Fargo Bank, National Association, as trustee for the registered holders
of Sovereign Commercial Mortgage Securities Trust 2007-C1,
Commercial Mortgage Pass-Through Certificates, Series 2007-C1

===============================================================

Premises:       3126 Coney Island Avenue
                Brooklyn, New York 11235

Block:          8678
Lot:            59
County:         Kings

Record and Return To:

Cullen and Dykman LLP
44 Wall Street, 19th Floor
New York, New York 10005

ATT:  Peter M. McCarthy
Project #166/D05-0738

Case 1:18-cv-07178-ENV-JO   Document 45-5   Filed 06/01/20   Page 120 of 157 PageID #: 651



**2007062100617001001E3ADF**

| **NYC DEPARTMENT OF FINANCE** **OFFICE OF THE CITY REGISTER** | |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 5**

| Document ID: **2007062100617001** | Document Date: 06-21-2007 | Preparation Date: 06-26-2007 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| CULLEN AND DYKMAN | CULLEN AND DYKMAN |
| 44 WALL STREET | 44 WALL STREET |
| 19TH FLOOR | 19TH FLOOR |
| NEW YORK, NY 10005 | NEW YORK, NY 10005 |
| 212-732-2000 | 212-732-2000 |
| pmccarthy@cullenanddykman.com (D05-0738) | pmccarthy@cullenanddykman.com (D05-0738) |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8678 | 59 | Entire Lot | | 3126 CONEY ISLAND AVENUE |

Property Type: APARTMENT BUILDING

### CROSS REFERENCE DATA

BROOKLYN **Year:** 1995 **Reel:** 3608 **Page:** 1747
x  Additional  Cross References on Continuation  Page

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| SOVEREIGN BANK | WELLS FARGO BANK, NA |
| 195 MONTAGUE STREET | 1055 10TH AVENUE SE |
| BROOKLYN, NY 11201 | MINNEAPOLIS, MN 55414 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 55.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      07-17-2007 10:44
City Register File No.(CRFN):
**2007000365694**

*Annette M. Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

2007062100617001001C385F

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | | **PAGE 2 OF 5** |
|---|---|---|
| Document ID: **2007062100617001** | Document Date: 06-21-2007 | Preparation Date: 06-26-2007 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
CRFN: 2005000577500

EXHIBIT

G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -

BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

Index No. 500469/2013

**STIPULATION OF**
**SETTLEMENT AND ORDER**

---

This Stipulation dated November ___, 2013 (the "Stipulation"), is entered into by and between Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Lender") acting by and through Waterstone Asset Management LLC and Boysin Lorick ("B. Lorick").

WITNESSETH

WHEREAS, on or about September 13, 2005, Independence Community Bank ("Independence"), Trustee's predecessor-in-interest, made a loan to B. Lorick and Cynthia Lorick (collectively, "Borrowers") in the original principal amount of $2,250,000.00 (the "Loan");

WHEREAS, as evidence of the Loan, Borrowers executed and delivered to Independence a Consolidated and Restated Mortgage Note dated September 13, 2005 in the original principal amount of $2,250,000.00 (the "Consolidated Note");

WHEREAS, as collateral security for the payment of the Consolidated Note, Borrowers executed, acknowledged and delivered to Independence a Consolidation, Extension and Modification Agreement dated September 13, 2005 (the "Consolidated Mortgage") on the Premises in the aggregate principal amount of $2,250,000.00;

WHEREAS, the Consolidated Mortgage was duly recorded against the Premises in the Office of the Register of the City of New York (the "Register's Office") on October 17, 2005 as City Register File Number ("CRFN"): 2005000577501;

WHEREAS, by assignment of mortgage dated June 21, 2007 and recorded July 17, 2007 in the Register's Office as CRFN: 2007000365694 (the "Assignment of Mortgage"), Sovereign Bank ("Sovereign"), successor by merger to Independence, assigned to Trustee all of its right, title and interest in and to the Consolidated Mortgage;

WHEREAS, by allonge executed contemporaneous with the Assignment of Mortgage (the "Allonge"), Sovereign transferred and assigned to Lender all of its right to obtain payment from Borrowers under the Consolidated Note;

WHEREAS, Lender is the current owner and holder of the Consolidated Note (and the notes consolidated thereby), Consolidated Mortgage (and the mortgages consolidated thereby), all other documents evidencing or securing the Loan (collectively, the "Loan Documents") and all rights relating thereto;

2

WHEREAS, Borrowers defaulted on their obligations under the Consolidated Note and Consolidated Mortgage by, inter alia, failing to pay the Loan in full on the Maturity Date (the "Default");

WHEREAS, by Notice of Default and Demand for Payment dated October 26, 2012 (the "Notice"), Lender, through its counsel, notified Borrowers, among others, of the Default and demanded payment within fifteen (15) days of the date of the Notice, no part of which has been paid despite demand;

WHEREAS, on January 30, 2013, Lender commenced this action to foreclose the Consolidated Mortgage on the Premises by filing a summons and complaint of the same date (the "Complaint") in the Supreme Court of the State of New York, County of Kings;

WHEREAS, Lender duly served each of the defendants herein with copies of the Complaint;

WHEREAS, on or about March 20, 2013, Defendant B. Lorick, appearing pro se, filed an answer dated March 20, 2013 (the "Answer");

WHEREAS, by Consent to Substitute Attorney dated May 8, 2013, Mark S. Friedlander, Esq. became counsel of record for B. Lorick;

WHEREAS, on May 17, 2013, Lender filed its Notice of Pendency with the Kings County Clerk's Office;

WHEREAS, Defendant New York City Department of Housing Preservation and Development appeared by notice filed June 11, 2013 and waived "service of all papers and notice of all proceedings in said action, except amended pleadings, notices of settlement of judgments and orders, notices of entry of judgments and orders, notices of applications for discontinuance of the action, referee reports, and all surplus money proceedings;"

3

WHEREAS, Defendants Cynthia Lorick and The New York City Environmental Control Board failed to answer or appear and their time to do so expired on March 20, 2013 and April 19, 2013, respectively;

WHEREAS, by Order Appointing Rent Receiver dated April 2, 2013, this Court appointed Douglas R. Rosenberg as Receiver of the Premises;

WHEREAS, by Order to Show Cause and Stipulation dated June 13, 2013, this Court, upon the consent of the parties, stayed the receivership;

WHEREAS, on July 22, 2013, Lender file an omnibus motion for summary judgment, which B. Lorick did not oppose;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree, as follows:

1.      Recitals.  All of the foregoing recitals are specifically incorporated into this Stipulation and made a part hereof.

2.      Acknowledgement of B. Lorick.  B. Lorick hereby agrees and acknowledges that:

(a)      Lender is the current holder of the Loan Documents;

(b)      Borrowers are in default of their respective obligations under the Loan Documents by failing to satisfy the amounts due at maturity; and

(c)      As of November 12, 2013 the total amount due under the Loan Documents is **$2,447,121.60** (the "Outstanding Indebtedness") calculated as follows:

4

| | |
|---|---|
| Unpaid Principal Balance | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 | $125,812.46 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 | $239,768.88 |
| Accrued and Unpaid Late Charges | $100,056.38 |
| Servicer Administrative Fees | $300.00 |
| Interest on Advances | $2,499.34 |
| Property Protection Advances | $375.00 |
| Outstanding Escrow Advances | $1,855.75 |
| Appraisal Fee | $5,000.00 |
| Attorneys' Fees and Costs through execution of Settlement Agreement | $74,816.50 |
| *Subtotal* | *$2,542,895.16* |
| Credit for Escrow Funds on Deposit | $95,773.56 |
| Total | **$2,447,121.60** |

      (d)    Borrower acknowledges that the amount due under the Loan Documents shall continue to accrue through the date of payment. The Outstanding Indebtedness together with such additional interest calculated through the date of payment as well as Lender's costs and expenses incurred through the date of payment shall be referred to as the "Payoff Amount."

      3.    <u>Release of Lender</u>. Simultaneously with the execution of this Stipulation, B. Lorick shall execute and deliver to Lender a release in the form attached hereto as **<u>Exhibit 1</u>**.

      4.    <u>The Foreclosure Action</u>.

(a)    B. Lorick consents to the relief sought by Lender in the Complaint and the parties request that contemporaneously with so ordering this Stipulation, the Court enter final judgment of foreclosure and sale in the form attached hereto as **Exhibit 2**;

(b)    B. Lorick hereby waives the right to a hearing on the computation by a court appointed referee;

(c)    B. Lorick consents to a foreclosure sale being held after January 1, 2014, subject to publication requirements, which shall commence on or after January 1, 2014;

(d)    B. Lorick hereby waives notice, including, without limitation, notice of the foreclosure sale; and

(e)    In the event that B. Lorick pay the Payoff Amount prior to January 1, 2014, Lender shall discontinue this action and discharge the Notice of Pendency.

5.    <u>Representations, Warranties, and Covenants</u>. B. Lorick hereby represents warrants, and covenants to Lender that:

(a)    he shall execute any other documents and perform such other acts as are reasonably required by Lender and its counsel in furtherance of this Stipulation and the transactions contemplated hereby;

(b)    all representations and warranties herein shall be true and correct in all material respects, as of the date hereof, except if such representation, warranty, or covenant specifically states a different time period;

(c)    there exist no claims, actual, threatened, or alleged against B. Lorick of which B. Lorick has knowledge or reason to know of relating to or arising in connection with the Premises, other than those made by Lender in connection with the Loan Documents;

6

(d)    no petition for bankruptcy, reorganization, or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, whether voluntary or involuntary, has been filed by or against B. Lorick, and that no receiver, liquidator, or trustee has been appointed in regard to the Premises, with the exception of the receiver appointed in this action;

(e)    there are no pending, or to the knowledge of B. Lorick, threatened, condemnation or eminent domain proceedings that would affect any part of the Premises;

(f)    B. Lorick will not enter into any new leases, licenses, occupancy agreements, or other agreements for any portion of the Premises without Lender's prior written consent;

(g)    the documents required to be delivered to Lender, pursuant to this Stipulation, if any, are true, correct, and complete in all material respects, and have not been modified or amended; and

(h)    B. Lorick knowingly and intentionally covenants and agrees not to sue or commence any action or counterclaim or cross-claim against Lender or its affiliates, agents, employees, and attorneys, for any claims, demands, expenses, and liabilities of whatsoever kind and nature arising from or in any matter connected with this Stipulation, the Loan Documents, and the lending relationship between the parties.

7.    Ratification and Reaffirmation.  B. Lorick hereby ratifies and reaffirms: (i) that the security interest granted in and to the Premises by the Consolidated Mortgage is valid, binding, and in full force and effect; and (ii) all of his obligations under the Loan Documents. B. Lorick represents and warrant to Lender that as of the date hereof, he has no right of set-off, nor any defense, protest, objection, claim, or counterclaim with respect to the loan amount or against

7

the enforcement of Lender's rights and remedies hereunder or under the Loan Documents, at law, in equity or otherwise.

        8.    <u>Further Security</u>.

        (a)    B. Lorick shall sign any and all documents (including, without limitation, UCC financing statement(s)) reasonably required by Lender to perfect and maintain the security interest granted herein and in accordance with the Loan Documents, and B. Lorick authorizes Lender to file any such statements, amendments, and continuations thereto without B. Lorick's signature, and B. Lorick designates Lender or Lender's designee as B. Lorick's attorney-in-fact to sign, file and/or record any such documents.

        (b)    B. Lorick shall sign and deliver any other documents or perform such actions reasonably requested by Lender to further the intent this Stipulation and the Loan Documents.

        9.    <u>Indemnification</u>.  B. Lorick shall, and hereby covenant and agree to, protect, defend, indemnify, and hold Trustee and its affiliates, agents, employees and attorneys, harmless from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs, and expenses (including, without limitation, reasonable attorneys' fees and expenses) arising or occurring out of: (i) any of the representations and warranties made by B. Lorick in this Stipulation being untrue in any material respect; and (ii) any and all claims of any kind and description made against Lender.

        10.    <u>Hazardous Materials</u>.  B. Lorick represents that to the best of his knowledge there are no materials currently located on the Premises that violate any applicable federal, state, or local law, statute, ordinance, or regulation, court or administrative order or decree, or private agreement (hereinafter collectively called "Environmental Requirements") or

that require special handling in collection, storage, treatment, or disposal (the "Hazardous Materials"). B. Lorick represents that he has not placed or permitted to be placed any such materials on the Premises and has not used or permitted the use of the Premises in a manner that violates applicable Environmental Requirements. B. Lorick represents that he has received no letters or other communications respecting the Premises from any governmental or quasi-governmental authority or agency concerning Environmental Requirements nor has he sent the same to any such authority or agency. B. Lorick shall indemnify, hold harmless, reimburse, and, upon request of Lender, its designee or assignee, defend Trustee, its designee or assignee, from, against, and for any and all liability or responsibility that may at any time be imposed upon it by reason of the Premises or any portion thereof or the operation or use thereof by B. Lorick or any prior owner thereof not complying fully with all Environmental Requirements.

11.     No Assumption. Lender expressly does not assume any of the rights or obligations of Borrowers, contractual or otherwise, in connection with the Premises or any part thereof. If Trustee wishes to assume any such rights or obligations, it shall be deemed to have done so only in a writing signed by the Lender.

12.     Fraudulent Transfer. If any payments of money made by B. Lorick to Lender or Lender's agents, hereunder, should for any reason subsequently be declared to be "fraudulent" (within the meaning of any state or federal law relating to fraudulent conveyances), preferential, or otherwise voidable or recoverable, in whole or in part for any reasons, under the Bankruptcy Code or any other federal or state law (collectively referred to herein as "Voidable Transfers") and Lender is required to repay or restore the amount of any such Voidable Transfers or any portion thereof, then, as to the amount repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses, and attorneys' fees of Lender related thereto) the liability

9

of B. Lorick shall automatically be revived, reinstated, and restored in such amount or amounts, and shall exist as though such Voidable Transfer had never been made to Lender. Nothing set forth herein is an admission that such Voidable Transfer has occurred or will occur. B. Lorick expressly acknowledges that Lender may rely upon advice of counsel and, if so advised by counsel, may settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement B. Lorick shall again be liable for any deficiency resulting from such settlement as provided in this Stipulation.

13. <u>Event of Default</u>. The occurrence or happening of any one of the following events (an "Event of Default") shall constitute a default hereunder in which event B. Lorick shall be in default under this Stipulation:

(a)     failure of B. Lorick to perform all terms and conditions of this Stipulation, or under any other document agreement or instrument entered into by the parties in connection herewith as and when required by the terms hereof;

(b)     there is a default or an Event of Default under any of the Loan Documents other than the Default,

(c)     if there shall occur any uninsured damage to the Premises caused by the negligence of B. Lorick; or

(d)     the inaccuracy or breach of any of the agreements, representations, warranties, acknowledgments, or covenants, made by B. Lorick in this Stipulation;

(e)     if any voluntary proceeding is commenced by B. Lorick under any reorganization, arrangement, readjustment, moratorium law or statute including, without limitation, the United States Bankruptcy Code, or if any involuntary proceeding under any reorganization, arrangement, readjustment, moratorium law or statute, including without

10

limitation, the United States Bankruptcy Code, is commenced against B. Lorick and such proceeding is not dismissed within twenty (20) days of its commencement, or if B. Lorick make, negotiate, or commence negotiations for a partial or complete assignment of his assets for the benefit of creditors pursuant to statutory or common law;

        (f)    if B. Lorick or any of his successors or assigns, or any other person or entity including, without limitation, a debtor-in-possession or a trustee, commences and obtains judgment in any action under any federal or state statute or common law to avoid all or any part of the transactions or payments contemplated by this Stipulation; or

        (g)    if B. Lorick shall commit any waste of the Premises.

    14.    Remedies. Upon the occurrence of an Event of Default, Lender shall send B. Lorick written notice of such default and provide him with five (5) days to cure such default. In the event that B. Lorick shall fail to cure such Event of Default within such five (5) day period, then, at the option of Lender, the Stay Period shall expire immediately and Lender may:

        (a)    immediately schedule a foreclosure sale; and

        (b)    invoke such other or additional remedies, in its sole discretion, as may be permitted under the Loan Documents or available to Lender at law or in equity.

    15.    Notices. All notices, requests, and demands required to be given hereunder shall be in writing and shall be deemed to have been duly given upon the date of service if served personally upon the party for whom intended or upon the date of mailing if mailed by certified mail to such party at the address as shown below, or such other address as hereafter designated by such party in writing:

11

If to Trustee:        Waterstone Asset Management, LLC
                      8720 Red Oak Blvd., Ste. 300
                      Charlotte, North Carolina 28217
                      Attn: Sumit K. Jain

with a copy to:       Kilpatrick Townsend & Stockton LLP
                      1114 Avenue of the Americas, 21st Floor
                      New York, New York 10036
                      Attention: Keith M. Brandofino, Esq.

If to B. Lorick:      Boysin Lorick
                      38 Utica Road
                      Edison, New Jersey 08820

With a copy to:       Mark S. Friedlander, Esq.
                      15 Maiden Lane
                      Suite 2000
                      New York, New York 10028

16.   Miscellaneous.

(a)   Financial Statements. B. Lorick shall deliver a copy of the current

financial statements for the Premise contemporaneously with the execution of this Stipulation. This

shall include, but is not limited to, the following: (i) copies of all tax returns; (ii) monthly operating

statements for the Premises; (iii) quarterly operating statements for the Premises; (iv) annual

financial statements for B. Lorick (setting forth B. Lorick's balance sheet and operating statements

for the Premises); and (v) a current Rent Roll certified by B. Lorick as being true, correct and

complete.

(b)   Delay not a Waiver.  No delay or omission in the exercise of any

power or remedy herein provided or otherwise available to Lender shall impair or affect Lender's

right thereafter to exercise same.

(c)   Conflicts.  If the terms and provisions contained in the Loan

Documents in any way conflict with the terms and provisions contained in this Stipulation, the

terms and provisions of this Stipulation shall prevail.

12

(d)     Material Adverse Change. B. Lorick shall, as soon as practicable but in any event within five (5) days after learning of any of the following, give written notice to Lender or its designated agent of: (i) any material proceeding instituted or threatened to be instituted, by or against B. Lorick in any federal, state, local, or foreign court or before any commission or other regulatory body (federal, state, local, or foreign); (ii) any material adverse change in business, assets, or condition, financial or otherwise, of B. Lorick; and (iii) the filing of any lien or encumbrance against the Premises.

(e)     Compliance with Laws. B. Lorick will comply with all applicable laws and regulations with respect to his property and business, or such laws and regulations as are hereafter enacted or promulgated by any governmental or quasi-governmental authority having jurisdiction over his or any of his property.

(f)     Remedies Cumulative. The rights and remedies granted to Lender hereunder are cumulative, and Lender has the right, without waiving any rights, to exercise any one or more of such rights alternatively, successively, or concurrently, as Trustee, in its sole discretion, deems advisable.

(g)     Partial Invalidity. In the event any of the terms, conditions, or covenants contained in this Stipulation shall be held to be invalid, then any such invalidity shall not affect any other of the terms, conditions, or covenants contained herein, which terms, conditions, and covenants shall remain in full force and effect.

(h)     Construction. The terms and conditions set forth in this Stipulation are the product of joint draftsmanship by the parties, each being represented by counsel, and any ambiguities in this Stipulation or any documentation prepared pursuant to or in connection with this Stipulation shall not be construed against any of the parties because of draftsmanship.

13

(i)     Time is of the Essence. B. Lorick understands and agrees that

**TIME IS OF THE ESSENCE** with respect to all dates set forth in this Stipulation.

17.     Counterparts. This Stipulation may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. A facsimile or Portable Document Format copy of this Stipulation shall be deemed an original.

18.     Waiver or Amendment. No amendment, modification, termination, or waiver of any provision of this Stipulation, nor consent to any departure by B. Lorick from this Stipulation, shall in any event be effective unless the same shall be in writing and signed by Trustee, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

19.     Merger. This Stipulation constitutes the entire agreement of the parties hereto, it being understood and agreed that all prior and contemporaneous representations, statements, understandings and agreements, oral or written, between the parties concerning the subject matter of this Stipulation are merged into this Stipulation, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying on any statement or representation, whether written or oral, not embodied in this Stipulation made by the other or any third party acting on behalf of the other. To the extent that any provision of this Stipulation conflicts with any provision in the Loan Documents, this Stipulation shall govern.

20.     Successors. This Stipulation shall be binding upon and inure to the benefit of Lender and B. Lorick and their respective successors and assigns, except that B. Lorick may

14

not assign or transfer any of his rights under this Stipulation without the prior written consent of Trustee.

21.   Jury Trial.  THE   PARTIES   HEREBY   KNOWINGLY   AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY MATTER RELATING IN ANY WAY TO THE LOAN OR THIS STIPULATION.

22.   Authority.  Each of the parties hereto warrants and represents to the other that each of them is authorized and empowered to enter into this Stipulation and perform its terms, and that in entering into this Stipulation and performing its terms, neither of them will be in violation of any other agreement, oral or written.

Dated:

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____
Name:   Keith M. Brandofino, Esq.
        Stefanie Lampf, Esq.
Attorneys for Plaintiff
1114 Avenue of the Americas
The Grace Building
New York, New York 10036
(212) 775-8713

BORROWER:

By: _____
    Name:  Boysin Lorick

By: _____
    Mark S. Friedlander, Esq
    Attorney for Defendant Boysin Lorick
    15 Maiden Lane
    Suite 2000
    New York, New York 10028
    (212) 962-2877

SO ORDERED:

_____ J.S.C.

15

not assign or transfer any of his rights under this Stipulation without the prior written consent of Trustee.

21.    Jury Trial.    THE    PARTIES    HEREBY    KNOWINGLY    AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY MATTER RELATING IN ANY WAY TO THE LOAN OR THIS STIPULATION.

22.    Authority.    Each of the parties hereto warrants and represents to the other that each of them is authorized and empowered to enter into this Stipulation and perform its terms, and that in entering into this Stipulation and performing its terms, neither of them will be in violation of any other agreement, oral or written.

Dated:

KILPATRICK TOWNSEND & STOCKTON    BORROWER:
LLP

By:_____       By:_____
Name:  Keith M. Brandofino, Esq.       Name:  Boysin Lorick
       Stefanie Lampf, Esq.
Attorneys for Plaintiff
1114 Avenue of the Americas
The Grace Building                 By:_____
New York, New York 10036           Mark S. Friedlander, Esq.
(212) 775-8713                     Attorney for Defendant Boysin Lorick
                                   15 Maiden Lane
                                   Suite 2000
                                   New York, New York 10028
                                   (212) 962-2877

                                   SO ORDERED:

                                   _____
                                                      J.S.C.

                                   **HON. BERNARD J. GRAHAM**

# <u>EXHIBIT 1</u>

## RELEASE OF TRUSTEE

**KNOW ALL BY THESE PRESENTS THAT:**

BOYSIN LORICK ("B. Lorick"), on behalf of himself, and his respective successors and assigns, and all those entities claiming by, through, or under them, as releasors, together with their successors and assigns (collectively, "Releasors"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, do hereby remise, release and forever discharge Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, and its past and present officers, directors, shareholders, servicers, including, without limitation, Waterstone Asset Management, LLC, attorneys, employees, agents, attorneys, parent corporations, subsidiaries, affiliates, successors, and assigns, and the heirs, executors, trustees, administrators, successors, and assigns of any such persons or entities, as releasees (collectively, "Releasees"), of and from any and all actions, causes of action, suits, demands, claims and counterclaims, debts, dues, extents, specialties, liabilities, sums of money, accounts, bonds, performance bonds, bills, covenants, contracts, variances, controversies, agreements, warranties, promises, trespasses, damages undertakings, indemnification obligations, judgments and executions whatsoever, in law or in equity, which against the Releasees, the Releasors now has, ever had, or hereafter may have or which their respective successors and assigns now have, ever had, or hereafter may have in any form arising out of relating to the loan made by Independence Community Bank to B. Lorick and Cynthia Lorick in the amount of $2,250,000.00 (the "Loan") as evidenced and secured by, *inter alia*, that certain Consolidated and Restated Mortgage Note and Consolidation, Extension and Modification Agreement, each dated September 13, 2005, together with all other documents securing or evidencing the Loan from the beginning of the world to the date of this Release.

IN WITNESS WHEREOF, the undersigned has executed this Release as of this ___ day of October, 2013.

RELEASOR:

By: _____
Name:  Boysin Lorick

Sworn to before me this
_____ day of _____, 2013
_____
Notary Public

# EXHIBIT 2

At a Commercial Part of the Supreme
Court of the State of New York, held in
and for the County of Westchester, at the
Courthouse located at 360 Adams Street,
Brooklyn, New York, on the 21 day of
_Febuary_____, 2019

PRESENT: <u>Hon. Bernard J. Graham</u>
        Justice of the Supreme Court

---

WELLS FARGO BANK, N.A., as Trustee for
the registered holders of Sovereign Commercial
Mortgage Securities Trust, 2007-C1,
Commercial Mortgage Pass-Through
Certificates, Series 2007-C1,

                Plaintiff,

- against -

BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,
PRESERVATION AND DEVELOPMENT, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN
DOE NO. 10" inclusive, the last ten names being
fictitious and unknown to plaintiff, the persons or
parties intended being the tenants, occupants,
persons or corporations, if any, having or claiming
an interest in or lien upon the premises described
in the complaint,

                Defendants.

---

Index No. 500469/2013

**FINAL JUDGMENT OF**
**FORECLOSURE AND SALE**

---

UPON the summons and complaint dated January 30, 2013 duly filed in this action with

the Office of the Kings County Clerk on the same date (the "Complaint"); and upon the Notice

of Pendency of Action duly filed in this action with the Office of the Clerk of Kings County on

May 17, 2013; and upon proceedings thereon, showing that each of the defendants herein have

been duly served with the Summons and Complaint in this action; and it appearing to the

satisfaction of the Court that plaintiff Wells Fargo Bank, N.A., as Trustee for the registered

holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("Plaintiff"), acting by and through Waterstone Asset Management LLC, its Sub-Special Servicer, brings this action to foreclose a Consolidation, Extension and Modification Agreement (the "Consolidated Mortgage") upon certain real and personal property situated in the City of New York, County of Kings, State of New York, Block 8678, Lot 59 on the Tax Map of the County of Kings, known by the street address 3126 Coney Island Avenue (the "Premises"); and upon the executed Stipulation of Settlement dated November ___, 2013 (the "Stipulation of Settlement"), pursuant to which Boysin Lorick ("B. Lorick") consented to entry of this final judgment of foreclosure and sale;

ORDERED, ADJUDGED AND DECREED, that pursuant to the terms of the Stipulation of Settlement the appointment of a referee to compute and ascertain the amount due to Plaintiff is waived as B. Lorick acknowledged that as of November 12, 2013 the total amount due under the Loan Documents is **$2,447,121.60** (the "Outstanding Indebtedness") calculated as follows:

| | |
|---|---|
| Unpaid Principal Balance | $1,992,410.85 |
| Accrued and Unpaid Contract Interest Through and Including October 14, 2013 | $125,812.46 |
| Accrued and Unpaid Default Interest Through and Including October 14, 2013 | $239,768.88 |
| Accrued and Unpaid Late Charges | $100,056.38 |
| Servicer Administrative Fees | $300.00 |
| Interest on Advances | $2,499.34 |
| Property Protection Advances | $375.00 |
| Outstanding Escrow Advances | $1,855.75 |

| | |
|---|---|
| Appraisal | $5,000.00 |
| Attorneys' Fees and Costs through execution of Settlement Agreement | $74,816.50 |
| *Subtotal* | *$2,542,895.16* |
| Credit for Escrow Funds on Deposit | $95,773.56 |
| Total | **$2,447,121.60** |

and it is further

ORDERED, ADJUDGED AND DECREED, that the mortgaged premises, as described

in the Complaint filed in this action, or such part of the real property thereof as may be sufficient

to discharge the mortgage debt evidenced by the Consolidated Mortgage in the original principal

amount of $2,250,000.00 recorded in the Kings County Clerk's Office on October 17, 2005 as

Control Number 2005000577501, the expense of the sale and the costs of this action as provided

by the Real Property Actions and Proceedings Law, be sold at public auction, by and under the

direction ~~of~~ *James I Williams    303 6th Avenue*

*Brooklyn NY* , at *(718) 965-1979*

. In the absence of the designated Referee, the Court

will designate a substitute Referee forthwith; that the said Referee give public notice of the time

and place of such sale according to law and the practice of this Court, in

*Brooklyn Eagle*; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee shall accept at such sale

the highest bid offered by a bidder, who shall be identified upon the court record, and shall

require that such successful bidder immediately pay to the Referee in cash or certified or bank

check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the

purchase of the premises unless such successful bidder is the plaintiff herein, in which case, no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the subject property, the property shall thereafter immediately, on the same day, be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED, that the closing of title shall take place at the office of the Referee or at such other location as the Referee shall determine within forty-five days after such sale unless otherwise stipulated by all parties. Any delay or adjournment of the closing date beyond forty-five days may be stipulated among the parties, with the Referee's consent, up to ninety days from the date of sale, but any adjournment beyond ninety days may be set only with the approval of this Court; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that such successful bidder shall fail to close on the date set by the Referee, then the successful bidder shall lose and forfeit its deposit; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee deposit all funds received pursuant to this Order in his/her own name as Referee in _such bank as referee shall designate_ and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the proceeds of such sale shall forthwith pay there from:

FIRST:   The statutory fee of said Referee for conducting the sale not to exceed $500.00.

**SECOND:**   The expenses of the sale, including the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale.

**THIRD:**   Said Referee shall also pay to the plaintiff or its attorneys the sum of $_____, with interest at the rate set forth in the loan documents from _____, to the date hereof, and the interest at the legal rate thereafter, or so much as the proceeds of the sale will pay of the same, and any expenses necessarily paid by the plaintiff to preserve the premises, such as the payment of taxes, etc., not previously included in any computations.

**ORDERED, ADJUDGED AND DECREED**, that in case the plaintiffs be the purchaser of the subject premises at said sale, said Referee shall not require the plaintiffs to pay in cash the entire amount bid at said sale, but shall execute and deliver only to the plaintiffs a deed of the premises sold upon the payment to said Referee of the sum awarded to him or her under the above provisions marked **"FIRST"** and **"SECOND"** if such expenses were paid by the Referee, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof. The balance of the amount bid, after deducting there from the aforementioned payments to the Referee for compensation and expenses, taxes, assessments, sewer rents, water rates, shall be allowed to the plaintiffs and applied by said Referee upon the amounts due to the plaintiffs as specified in item marked "THIRD". If upon so applying the balance of the amount bid, there shall be a surplus over and above said amounts due to the plaintiffs, the plaintiffs shall pay to the said Referee, upon delivery to plaintiffs of said Referee's Deed, the amount of such surplus. Any surplus remaining

after all payments as herein provided shall be deposited into Court in accordance with RPAPL Section 1354 (4) and the Referee shall immediately give notice of such surplus to the owner of the subject premises as identified by plaintiffs at the time of the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee take the receipt of the plaintiffs or plaintiffs' attorney for the amounts paid as hereinbefore directed in item marked "THIRD", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Westchester County Clerk, with a copy to the Chambers of the Appointing Justice, within thirty days upon completing the sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the Court with respect to any application for additional compensation; and it is further

ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff shall recover from the defendants Boysin Lorick & Cynthia Lorick, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the Real Property Actions and Proceedings Law within the time

limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession on production of the Referee's Deed; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event that the action is discontinued or the sale of the subject property is cancelled, the referee is entitled to a $250.00 fee; and it is further

ORDERED, ADJUDGED AND DECREED, that the each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such Notice of Pendency of this action, be and they hereby are, barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that the liens of the plaintiff other than the mortgage or mortgages that are the subject matter of this action also be foreclosed herein as though the plaintiff was named as a party defendant, specifically reserving to the plaintiff its right to share in any surplus monies as a result of such position as a lien creditor.

That a description of the said mortgaged premises hereinbefore mentioned, is annexed hereto as Schedule A - Legal Description.

Said Premises being commonly known as 3126 Coney Island Avenue, Brooklyn, New York; and it is further

ORDERED ADJUDGED AND DECREED, that the premises be sold in "as is" condition and sold subject to:

1.     Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley or highway;

2.     Restrictions, covenants, agreements, reservations, and easements of record, if any, insofar as the same may be in force and effect;

3.     Any state of facts an accurate, currently dated survey might disclose;

4.     Any facts an inspection of the premises would reveal;

5.     Rights of tenants and/or occupants in possession, if any;

6.     The right of redemption of the United States of America, if any;

7.     The rights of any defendants pursuant to CPLR §317, CPLR §2003 and CPLR §5015, if any;

8.     Charges for maintenance of street vaults, if any;

9.     Building or tract restrictions or regulations;

10.     Violations, notices, orders or other requirements issued by any federal, state, city, county, town or village agencies having jurisdiction of record, if any, now or hereafter against the premises;

11.     Security agreements, conditional bills of sale and chattel mortgages, if any;

12.     The liens of any prior judgments, mortgages or other encumbrances of record;

13.     Other conditions as set forth in the terms of sale more particularly to be announced at the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale shall pay for (i) any title insurance premiums; (ii) the Real Estate Transfer Tax (Article 31 of

the New York Tax Law) and any other tax imposed upon or arising from the transfer of title; (iii)

all abstract of title creation and/or continuation charges, and (iv) any other charges, occurring as

a result of the transfer, including, but not limited to, the recording fees; and it is further

     **ORDERED, ADJUDGED AND DECREED**, that a copy of this Judgment with Notice

of Entry shall be served upon the owner of Equity of redemption, any tenant named in this

action, any person having an interest in the premises, and any other party entitled to notice; and it

is further

     **ORDERED, ADJUDGED AND DECREED**, that any appointee named herein shall

comply with Section 35A of the Judiciary Law.

Dated: _7 / 21 / 2014_

          ENTERED:

              HONORABLE BERNARD J. GRAHAM, J.S.C.

                  HON. BERNARD J. GRAHAM

5021988V.2 57301/853817

Schedule A

All that certain plot, piece, or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Coney Island Avenue, distant 56.27 feet Southerly from the corner formed by the intersection of the Westerly side of Coney Island Avenue and the Southerly side of Ocean View Avenue;

RUNNING THENCE Westerly at right angles to Coney Island Avenue, 100 feet;

THENCE Southerly and parallel with Coney Island Avenue, 100 feet;

THENCE Easterly at right angles to Coney Island Avenue, 100 feet to the Westerly side of Coney Island Avenue;

THENCE Northerly along the Westerly side of Coney Island Avenue, 100 feet to the point or place of BEGINNING.

TOGETHER with all right, title and interest of, in and to any streets and roads abutting the above described premises.

SAID PREMISES being known as and by the street number 3126 Coney Island Avenue, Brooklyn, New York.

E

X

H

I

B

I

T

H

FILED: KINGS COUNTY CLERK 09/25/2015 03:34 PM

NYSCEF DOC. NO. 219

INDEX NO. 500469/2013

RECEIVED NYSCEF: 09/25/2015

At IAS Part 57 of the Supreme Court of
the State of New York, held in and for the
County of Kings, at the Courthouse
thereof, located at 360 Adams Street,
Brooklyn, New York, on the ⟶7 day of
Aʒ̶u̶s̶t̶ 2015.

PRESENT: HON. LAWRENCE KNIPEL
Justice of the Supreme Court

WELLS FARGO BANK, N.A., as Trustee for the
registered holders of Sovereign Commercial
Mortgage Securities Trust, 2007-C1, Commercial
Mortgage Pass-Through Certificates, Series 2007-
C1,

                              Plaintiff,

              - against -

BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,
PRESERVATION AND DEVELOPMENT, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN
DOE NO. 10" inclusive, the last ten names being
fictitious and unknown to plaintiff, the persons or
parties intended being the tenants, occupants,
persons or corporations, if any, having or claiming
an interest in or lien upon the premises described
in the complaint,

                              Defendants.

Index No.:    500469/2013

**ORDER APPOINTING**
**SUBSTITUTE REFEREE**

UPON the Final Judgment of Foreclosure Sale of the Honorable Bernard J.

Graham, signed on February 21, 2014 and entered on March 5, 2014 (the "Final Judgment"),

appointing James I. Williams, Esq. as Referee to sell the property subject to the within action,

and on reading and filing the annexed affirmation of Therese M. Reyes, Esq., dated July 14,

2015, it is hereby

7322151V.1 57301/853817

ORDERED, that this action be, and the same is hereby referred to: _Jeffery Miller_ of _Jeffrey R. Miller & Assoc._ having an office at _32 Broadway – 13th Fl. NY NY 10004_ and telephone number of _(212) 227-4200_ as Substitute Referee for James I. Williams, Esq., to carry out all duties as Referee as set forth in the Final Judgment; and it is further

ORDERED, that James I. Williams, Esq., previously appointed Referee in this action pursuant to the Final Judgment be and he hereby is released and discharged from his duties as Referee without compensation; and it is further

ORDERED, that the Successor Referee herein appointed shall comply in all respects with the Final Judgment, which shall remain in full force and effect except as otherwise set forth herein.

ENTER,

HON. LAWRENCE KNIPEL, J.S.C.

2015 AUG 25  AM 8: 17  KINGS COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

WELLS FARGO BANK, N.A., as Trustee for the
registered holders of Sovereign Commercial
Mortgage Securities Trust, 2007-C1, Commercial
Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -

Index No.: 500469/2013

BOYSIN LORICK, CYNTHIA LORICK, NEW
YORK CITY DEPARTMENT OF HOUSING,
PRESERVATION AND DEVELOPMENT, NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE NO. 1" TO "JOHN DOE
NO. 10" inclusive, the last ten names being fictitious
and unknown to plaintiff, the persons or parties
intended being the tenants, occupants, persons or
corporations, if any, having or claiming an interest in
or lien upon the premises described in the complaint,

Defendants.

# ORDER APPOINTING SUBSTITUTE REFEREE



# KILPATRICK TOWNSEND

ATTORNEYS AT LAW

ATTORNEYS FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF
SOVEREIGN COMMERCIAL MORTGAGE SECURITIES TRUST, 2007-C1, COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-C1

OFFICES AND POST OFFICE ADDRESS

1114 Avenue of the Americas, 21st Floor
New York, NY 10036
TEL. NO.: (212) 775-8700
FAX NO.: (212) 775-8800

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

WELLS FARGO BANK, N.A., as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1,

Plaintiff,

- against -

BOYSIN LORICK, CYNTHIA LORICK, NEW YORK CITY DEPARTMENT OF HOUSING, PRESERVATION AND DEVELOPMENT, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and "JOHN DOE NO. 1" TO "JOHN DOE NO. 10" inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

Index No.: 500469/2013

---

# REFEREE'S OATH AND REPORT

---



ATTORNEYS FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF SOVEREIGN COMMERCIAL MORTGAGE SECURITIES TRUST, 2007-C1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C1

OFFICES AND POST OFFICE ADDRESS

1114 Avenue of the Americas, 21st Floor
New York, NY 10036
TEL. NO.: (212) 775-8700
FAX NO.: (212) 775-8800

US2008 4309079.1 58959-853817