UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BOYSIN LORICK and CYNTHIA LORICK,

                         Plaintiffs,

          -against-

KILPATRICK TOWNSEND AND STOCKTON
LLP, COLIN BERNARDINO, KEITH
BRANDOFINO, JOHN M. CHURCH, SUMIT
JAIN, WATERSTONE ASSET MANAGEMENT
LLC, WELLS FARGO BANK NA, and BERKADIA
COMMERCIAL MORTGAGE,

                         Defendants.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**18-CV-7178 (ENV)**

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, are respective motions filed by defendants Kilpatrick Townsend and Stockton LLP ("KTS"), along with Colin Bernardino, and Keith Brandofino (collectively, the "KTS defendants"), and by defendant Wells Fargo, N.A. ("WFB") (together, with the KTS defendants, "defendants"), to dismiss this case in its entirety, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Motion to Dismiss for Failure to State a Claim (June 1, 2020), Electronic Case Filing ("ECF") Docket Entry ("DE") DE #45; Motion to Dismiss for Failure to State a Claim (July 6, 2020) ("7/6/20 WFB Mot."), DE #50; Order Referring Motion (Apr. 1, 2021) ("Referral Order"). For the reasons detailed below, this Court recommends that defendants' motions be granted and the case dismissed.

## BACKGROUND

**Factual Background**[1]

In September 2005, plaintiffs Boysin and Cynthia Lorick (the "Loricks" or "plaintiffs") obtained a $2,250,000 loan (the "Loan") due on October 1, 2012, secured by a first mortgage (the "Mortgage") on one of their properties, an apartment building at 3126 Coney Island Avenue in Brooklyn, New York (the "Subject Property").   See Consolidation, Extension and Modification Agreement (the "Mortgage"), attached to Amended Final Judgment of Foreclosure and Sale ("Amended Foreclosure Judgment"), DE #45-5 at 88-115; [Second] Amended Complaint (May 11, 2020) ("SAC") ¶¶ 13-14, DE #44.  The Mortgage granted the Loricks an option to "automatically" extend the maturity date of the Loan for five years if plaintiffs submitted (a) written notice of their request at least 60 days prior to the original maturity date; and (b) at the time of the written request, simultaneous payment of 1% of the then unpaid principal balance.  See Mortgage ¶ 48; SAC ¶ 14.  Thereafter, on June 21, 2007, the Mortgage and Note were assigned to WFB, see attachment to Amended Foreclosure Judgment, DE #45-5 at 86, 117, with Waterstone Asset Management LLC ("Waterstone") and Berkadia Commercial Mortgage ("Berkadia") servicing the Mortgage.  See SAC ¶¶ 10-12, 15; [KTS] Memorandum of Law in Support of Motion for Dismissal of the SAC (June 1, 2020) ("KTS Mem.") at 1, 3, DE #45-12. [2]

---

[1] In setting forth the relevant factual history, the Court takes judicial notice of matters occurring in previous litigations involving the plaintiffs and most of the defendants herein, as the Court is permitted to do.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."); accord Cody v. Charter Commc'ns, LLC, No. 17-CV-7118 (KMK), 2020 WL 3639935, at *2 n.2 (S.D.N.Y. July 6, 2020).  Moreover, some of the filings and orders in those other proceedings have been docketed as exhibits by the parties to the instant lawsuit.  Unless otherwise noted by a docket entry number followed by a case title and/or docket number, this opinion's citations to docket entries ("DE") are to filings in the case at bar.

[2] Although the SAC names as defendants Waterstone and Berkadia, along with Waterstone's CEO and Asset Manager (John M. Church and Sumit Jain, respectively), see SAC ¶¶ 8, 9, it does not appear from the docket that plaintiffs ever perfected service on them, and they have not appeared in this action.

Plaintiffs contend that, in accordance with the terms of the Mortgage, Mr. Lorick renewed the Loan and extended its maturity date. Specifically, plaintiffs maintain that in or around July 2012, Mr. Lorick submitted a handwritten letter to the servicers requesting that the Loan be renewed,[3] and that, in a follow-up telephone conversation, an unnamed Berkadia representative told Mr. Lorick that the servicer would credit some of plaintiffs' funds in escrow toward the 1% renewal fee. See SAC ¶ 15. Presuming that the Loan had been renewed, plaintiffs made $17,290.39 monthly mortgage payments from September 2012 until November 2013.[4] See id. ¶ 16.

Implying that the Loan was never renewed, defendants contend that, having failed to pay the balance of the Loan by the maturity date of October 1, 2012, plaintiffs defaulted. See KTS Mem. at 3. On January 30, 2013, WFB, as Trustee, acting through Waterstone and represented by KTS, filed a foreclosure complaint in New York State Supreme Court, Kings County (the "Foreclosure Action"). See Complaint in Wells Fargo Bank, N.A. v. Lorick, et al. ("Foreclosure Compl."), DE #45-2.

Cynthia Lorick failed to appear in the Foreclosure Action, but Boysin Lorick filed a *pro se* Answer dated March 20, 2013, and, several months later, retained counsel, Mark Friedlander, Esq. See Stipulation of Settlement at 3, DE #45-3. In November 2013, after WFB moved for summary judgment, Mr. Lorick entered into a stipulation of settlement (the "Stipulation of Settlement")[5]; among other things, the Stipulation of Settlement acknowledged plaintiffs' default on

---

[3] No party has produced a copy of this letter.

[4] The SAC attaches copies of checks that the Loricks wrote to Berkadia every month from September 2012 until August 2013 in the amount of $17,290.39, see Exhibit to SAC, DE #44-1, as well as their joint bank account statement for the month of November 2013, reflecting their payment of $17,290.39 to Berkadia, see id. at 13.

[5] Thereafter, a new attorney entered the case, claiming to represent both Loricks. See *infra* p. 5.

the Mortgage Loan in the amount of $2,447,121.60, and, in the event that plaintiffs failed to pay off the Loan by January 1, 2014, consented to a public auction of the Subject Property. See id.; KTS Mem. at 3; see also Final Judgment of the Foreclosure Action ("Final Foreclosure Judgment"), DE #45-4; Amended Foreclosure Judgment, DE #45-5 at 8 (finding amount due to be $3,668,619.69, plus $85,000 in fees, as of January 31, 2016).

As the Loricks did not pay off the Mortgage before the stipulated deadline, the State Court entered a judgment in favor of WFB on February 21, 2014. See Final Foreclosure Judgment; see also SAC ¶ 33; KTS Mem. at 3. On June 3, 2016, upon the recommendations of the successor referee in the Foreclosure Action, the State Court entered an Amended Foreclosure Judgment, in the amount of $3,668,619.69 in favor of WFB. See Amended Foreclosure Judgment, DE #45-5 at 8; SAC ¶ 35; KTS Mem. at 3; see also [12/29/17] Order [of Bankruptcy Court] Granting Motion in Part in In re Lorick ("12/29/17 Bankruptcy Order"), DE #45-6. No appeal was taken from the State Court's foreclosure judgments.[6]

On December 15, 2016, plaintiffs filed for Chapter 11 bankruptcy protection, see Voluntary Bankruptcy Petition, DE #1 in In re Lorick (the "Bankruptcy Proceeding"), 1-16-45645-NHL (Bankr. E.D.N.Y. Dec. 15, 2016),[7] and the Subject Property was sold in connection with the Bankruptcy Proceeding, see Subject Property Deed of Sale, DE #39-7; SAC ¶ 39; KTS Mem. at 4; see also 12/29/17 Bankruptcy Order. Thereafter, on December 29, 2017, relying on the Amended Foreclosure Judgment, the federal judge in the Bankruptcy Proceeding (Judge Nancy Hershey Lord) entered an order that WFB was entitled to receive from the sales proceeds at least

---

[6] Both Loricks filed an appeal from an order granting WFB's motion to appoint a receiver, see Notice of Appeal, Doc. No. 187 in Foreclosure Action, but it was never perfected.

[7] As plaintiffs' secured debts exceeded $1,149,525, plaintiffs' earlier Chapter 13 bankruptcy petition had been dismissed. See Voluntary Bankruptcy Petition in In re Lorick, 1-16-43194-NHL (Bankr. E.D.N.Y. July 20, 2016); Order Dismissing Chapter 13 Bankruptcy in 1-16-43194-NHL (Bankr. E.D.N.Y. Oct. 11, 2016).

$4,039,705.02, which included the Amended Foreclosure Judgment amount, $3,668,619.69; 9% accrued interest on that sum, totaling $170,967.73; and the attorneys' fees specified in the Amended Foreclosure Judgment, $85,000.  See 12/29/17 Bankruptcy Order.  Plaintiffs did not appeal that order to the District Court.[8]

In each of these proceedings, plaintiffs offered varying challenges to the legitimacy of the Stipulation of Settlement.  In the Foreclosure Action, Frank Wharton, an attorney claiming to represent both Loricks, filed a proposed Order to Show Cause stating that while Mr. Lorick had signed the Stipulation of Settlement on the advice of Mr. Friedlander, his then counsel of record, the Stipulation of Settlement was inaccurate and not binding on the Loricks, see Lorick Proposed Order to Vacate the Stipulation of Settlement in the Foreclosure Action ("Proposed OTSC"), DE #19-4, & Affirmation of Frank Wharton ¶ 22, attached thereto; the state judge declined to so-order the Proposed OTSC because Mr. Friedlander, not Mr. Wharton, was counsel of record, see Declined Order in the Foreclosure Action, DE #19-5.  In the Bankruptcy Proceeding, Karamvir Dahiya, Esq., plaintiffs' counsel in the instant case, filed an affidavit in which Mr. Lorick alleged, inter alia, that he "did not have the benefits [sic] of a good lawyer" in the Foreclosure Action, that WFB fraudulently asserted that plaintiffs had defaulted on the Loan, and that the Foreclosure Action "[j]udgment was obtained with fraud and filing false statements."  See Affidavit of Boysin Lorick ¶¶ 6-9, DE #196 in the Bankruptcy Proceeding (Bankr. E.D.N.Y. Dec. 11, 2017) ("Lorick Bankruptcy Aff.").[9]  Notwithstanding these challenges, the State Court in the Foreclosure Action

---

[8] Plaintiffs filed a challenge in District Court to a subsequent distribution order issued in the Bankruptcy Proceeding (in response to WFB's surcharge motion), see Notice of Appeal ("Notice of Appeal"), DE #1 in Lorick v. Wells Fargo Bank, 19-cv-00603-WFK (E.D.N.Y. Jan. 30, 2019), but they thereafter moved to dismiss that challenge, see Motion to Dismiss Notice of Appeal, DE #5 in 19-cv-00603-WFK (E.D.N.Y. May 3, 2019), and took no further appeal from orders issued in the Bankruptcy Proceeding.

[9] In the case at bar, the SAC alleges that Mr. Lorick signed blank pages rather than the Stipulation of Settlement.  See SAC ¶ 42; infra pp. 7-8.

specifically referenced the Stipulation of Settlement in calculating the Loricks' liabilities, and Judge Lord in the Bankruptcy Proceeding relied upon the foreclosure judgment amount in calculating WFB's distribution from the proceeds of the sale of the Subject Property.  See Amended Foreclosure Judgment; 12/29/17 Bankruptcy Order.

**Procedural History**

On December 17, 2018, following the sale of the Subject Property, plaintiffs commenced this case, initially proceeding *pro se*.[10]  See Complaint (Dec. 17, 2018) ("12/17/18 Compl."), DE #1.  In lieu of an answer, defendant WFB moved to dismiss for lack of subject matter jurisdiction and failure to state a claim.  See [WFB] Motion to Dismiss (July 12, 2019), DE #18.  One month prior to submitting his notice of appearance for plaintiffs, see [Dahiya] Notice of Appearance (Dec. 13, 2019), DE #32, Mr. Dahiya filed a memorandum in opposition to WFB's July 2019 motion to dismiss, requesting an opportunity to amend the complaint.  See Memorandum in Opposition (Nov. 18, 2019) at 13, DE #29.  Judge James Orenstein, the magistrate judge then assigned to this case, held a hearing to address the request to amend; granted plaintiffs leave to file a letter-motion to amend (accompanied by the proposed amended pleading); and, in light of the anticipated motion to amend, deemed the then pending motion to dismiss moot.  See Minute Entry (Jan. 14, 2020), DE #33; Order (Jan. 14, 2020); Transcript of Hearing held on January 14, 2020 (filed on July 21, 2021) ("1/14/20 Tr.") at 18:14-19:2, DE #64.

Despite Judge Orenstein's instructions, Mr. Dahiya filed an amended complaint without obtaining consent of opposing counsel or leave of the Court.  See Amended Complaint (Feb. 11,

---

[10] Plaintiffs filed a related *pro se* complaint against Bankruptcy Judge Lord, as well as one of the Loricks' former bankruptcy attorneys, Norma Ortiz, alleging that they had engaged in a range of misconduct during the Bankruptcy Proceeding.  See Complaint, DE #1 in Lorick v. Hershey Lord, 17cv6307-ENV-JO (E.D.N.Y. Oct. 27, 2017).  A judgment was entered dismissing the case with prejudice, for failure to prosecute.  See Judgment, DE #20 in 17cv6307-ENV-JO (E.D.N.Y. July 11, 2018).

2020), DE #34; Order (Feb. 18, 2020). Thereafter, plaintiffs moved to amend their pleading, over the objection of all defendants. See generally Motion to Amend (Feb. 21, 2020), DE #37; [WFB] Memorandum of Law (Mar. 20, 2020), DE #40; [KTS] Memorandum of Law (Mar. 20, 2020), DE #41. Following oral argument, Judge Orenstein granted plaintiffs' motion to amend. See Minute Entry (Apr. 13, 2020), DE #43; Transcript of Hearing held on April 13, 2020 (filed on July 13, 2020) ("4/13/20 Tr.") at 5:21-22, DE #56.

The operative complaint that plaintiffs filed on May 11, 2020 — referenced herein as the Second Amended Complaint or SAC — offers yet a different challenge to the Stipulation of Settlement, asserting, by quoting correspondence from Mr. Dahiya, that Mr. Lorick's "[s]ign[ature]s [on the Stipulation of Settlement] were obtained on blank pages[,]" and that language was added "thereafter." SAC ¶ 42. Plaintiffs allege that a group of defendants associated with WFB — i.e., WFB, Berkadia, Waterstone and its representatives (the "WFB defendants") - colluded with the KTS defendants, consisting of KTS (the law firm that represented WFB in the Foreclosure Action and Bankruptcy Proceeding) and Colin Bernardino and Keith Brandofino (KTS partners who represented WFB in the Foreclosure Action) — to mislead the State Court throughout the Foreclosure Action and to continue their "manipulation and misrepresentation" when the Loricks sought refuge in the Bankruptcy Proceeding. See id. ¶¶ 21-43. More specifically, plaintiffs claim that defendants prosecuted the Foreclosure Action, and sought the sale of the Subject Property and distribution of the proceeds in the Bankruptcy Proceeding, by means of various fraudulent representations, including false claims that Mr. Lorick signed and was bound by the Stipulation of Settlement; that the Loricks had defaulted on the Loan; and that the Loricks owed an inflated debt that, among other things, did not reflect the Loricks' monthly payments after the Loan was purportedly renewed. See id.

7

The SAC contains eight causes of action.  According to plaintiffs, all defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by (1) fraudulently asserting that the Loricks had defaulted on the Note and Mortgage and by holding plaintiffs to a fraudulent Stipulation of Settlement, see id. ¶¶ 44-59; (2) conspired to violate RICO, see id. ¶¶ 60-67; (3) committed fraud in commencing the Foreclosure Action in the absence of a default on the Loan, and in relying on the fraudulent Stipulation of Settlement, see id. ¶¶ 68-80; and (4) were unjustly enriched, see id. ¶¶ 81-85; (5) the WFB defendants, by not renewing the term of the Loan, breached their contractual obligations under the Note and Mortgage, see id. ¶¶ 86-89; (6) the KTS defendants violated New York Judiciary Law § 487 by intentionally misrepresenting to the State and Bankruptcy Courts, "including the United States District Court for the Eastern District of New York and the United States Court of Appeals for the Second Circuit[,]" that the Loricks had defaulted on the Loan and that the Stipulation was reliable, see id. ¶¶ 90-96; (7) plaintiffs detrimentally relied on the WFB defendants' false promises to renew the Loan term, see id. ¶¶ 97-101; and (8) all defendants violated the implied covenant of good faith and fair dealing by commencing the Foreclosure Action against the Loricks, who had not defaulted on the Loan, see id. ¶¶ 102-105.  In connection with their first, second, and sixth claims, plaintiffs seek treble damages, reasonable attorneys' fees, and costs.  See id. ad damnum.  Plaintiffs request general and punitive damages on their third, fourth, fifth, seventh, and eighth claims.  See id.

The KTS defendants move to dismiss plaintiffs' Second Amended Complaint in its entirety, characterizing plaintiffs' claims as "nothing less than a collateral attack on the rulings, judgments and orders issued by the previous State and Bankruptcy Courts."  KTS Mem. at 2. They further contend that even if plaintiffs' claims were not precluded, the SAC fails to properly plead any RICO violation or to state any other claim.  See id. at 7-21.  WFB similarly argues that the SAC

fails to state any claims, see 7/6/20 WFB Mot. at 2-11, and that plaintiffs' claims are barred by principles of res judicata and by the *Rooker-Feldman* and *Younger* doctrines, see id. at 11-18.

Plaintiffs counter by reasserting that their allegations of defendants' purported conspiracy and deception are sufficient to withstand a motion to dismiss. See generally Memorandum in Opposition to the KTS Defendants Motion to Dismiss (June 22, 2020), DE #47; Memorandum in Opposition to the Wells Fargo Motion to Dismiss (June 22, 2020) ("Pl. Opp. Mem. WFB"), DE #48. Plaintiffs insist that their claims are not precluded because "Res Judicata does not apply, as the[*sic*] New York state [allows] permissive counterclaim[s]. Also, [a] lot of acts by the defendants are taking place after the commencement of the lawsuits and are[*sic*] thus are not barred by res judicata." Pl. Opp. Mem. WFB ¶ 13. Further, as plaintiffs "are not seeking to overturn the state court judgment[,]" their claims survive *Rooker-Feldman*, id., and the *Younger* abstention doctrine "has no place here," id.

Following the filing of these motions, the instant case was reassigned to the undersigned magistrate judge and, five months later, the pending motions were referred for a Report and Recommendation. See Docket Entry (Nov. 10, 2020); Referral Order (Apr. 1, 2021). On July 19, 2021, this Court held oral argument on the motions and took the matter under advisement. See Transcript of Hearing held on July 19, 2021 (docketed on July 21, 2021) ("7/19/21 Tr."), DE #65.

## DISCUSSION

Defendants seek an order dismissing plaintiffs' claims on the alternative grounds that the Court lacks subject matter jurisdiction, that res judicata bars the claims, and that the SAC fails to adequately state any claims. For the reasons explained below, the Court concludes that it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and that, in any event, the claims are precluded by virtue of res judicata.

# I.    Subject Matter Jurisdiction

## A.    Standard of Review

When reviewing a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil

Procedure (the "FRCP") for lack of subject matter jurisdiction — in contrast to a motion to dismiss

for failure to state a claim pursuant to Rule 12(b)(6) — a court "must accept as true all material

factual allegations in a complaint" *without* "draw[ing] inferences from the complaint favorable to

plaintiffs." Done v. Option One Mortg., No. 09-CV-4770 (JFB), 2011 WL 1260820, at *3

(E.D.N.Y. Mar. 30, 2011) (quoting J.S. *ex rel.* N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d

Cir. 2004)).[11] In evaluating a motion to dismiss, including but not limited to one on jurisdictional

grounds, a court may consider "(1) facts alleged in the complaint and documents attached to it or

incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it,

even if not attached or incorporated by reference, (3) documents or information contained in

defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it

in framing the complaint, . . . and [(4)] facts of which judicial notice may properly be taken under

Rule 201 of the Federal Rules of Evidence." Swiatkowski v. Citibank, 745 F.Supp.2d 150, 162

(E.D.N.Y. 2010) (internal quotation marks and citation omitted) (collecting cases), aff'd, 446

F.App'x 360 (2d Cir. 2011).  In addition, courts may consider matter outside the pleadings in

adjudicating motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Borrani v. Nationstar Mortg.,

LLC, No. 17-CV-9397 (KMK), 2019 WL 1429982, at *5 (S.D.N.Y. Mar. 29, 2019), aff'd, 820

---

[11] In considering a Rule 12(b)(6) motion to dismiss, a court must accept the complaint's factual allegations as true and draw all reasonable inferences *in favor* of the plaintiff.  See, e.g., Hourani v. Wells Fargo Bank, N.A., 158 F.Supp.3d 142, 146 (E.D.N.Y. 2016).  Nevertheless, to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); accord Butcher v. Wendt, 975 F.3d 236, 241 (2d Cir. 2020).

F.App'x 20 (2d Cir. 2020). "'The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" Done, 2011 WL 1260820, at *3 (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

### B. *Rooker-Feldman*

Defendant WFB argues that certain jurisprudential principles, including the *Rooker-Feldman* doctrine, deprive this Court of subject matter jurisdiction. See 7/6/20 WFB Mot. at 13-15. The KTS defendants lodge a similar *Rooker-Feldman* challenge, albeit in a footnote to their memorandum of law.[12] The *Rooker-Feldman* doctrine is rooted in the principle that, apart from the U.S. Supreme Court, federal courts lack appellate jurisdiction over state court decisions, see, e.g., Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014), and thus are not empowered to review "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments[,]" Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "Therefore, to the extent plaintiff[s] bring[ ] the instant complaint as a means to challenge [the] decision in the foreclosure action, this court lacks

---

[12] The aforementioned footnote is hardly a model of clarity. Alluding to remarks made by Judge Orenstein early in this litigation, the KTS defendants first suggest that they do not seek dismissal based on *Rooker-Feldman* (or res judicata), yet they then "submit that this Court lacks subject matter jurisdiction to consider any factual assertions Plaintiffs make in the SAC that are inconsistent with the holdings rendered in the Foreclosure Action or the Bankruptcy Proceeding." KTS Mem. at 9 n.2.

Despite the equivocal nature of the jurisdictional challenge by the KTS defendants, plaintiffs had an opportunity to and did address *Rooker-Feldman* and res judicata in responding to the arguments advanced by WFB, see Pl. Opp. Mem. WFB at 8-9, and, in any event, the Court has an independent obligation to assess subject matter jurisdiction, see Done, 2011 WL 1260820, at *4 n.3.

As for Judge Orenstein's casual comments from the bench, they neither rise to the level of a judicial ruling nor even address in any manner res judicata. Rather, Judge Orenstein stated, without further analysis, "I guess I am not sure I see it as a Rooker-Feldman issue[.]" 1/14/20 Tr. at 9:7-8; see also 4/13/20 Tr. at 6:2-7 (describing plaintiffs' claims as not "attack[ing] the underlying state court judgment" but "seeking different relief").

jurisdiction to hear this case." Feinstein v. The Chase Manhattan Bank, No. 06 CV 1512 JFB ARL, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006) (Bianco, J.) (collecting cases).[13]

To determine whether the *Rooker-Feldman* doctrine applies to a litigant's claims, courts must apply a four-prong test:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'. . . . The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (alteration in original) (footnote omitted) (quoting Exxon Mobil, 544 U.S. at 284).

All of plaintiffs' claims herein clearly meet the procedural requirements of the *Rooker-Feldman* doctrine, as summarized in Hoblock. The State Court in the Foreclosure Action issued its Amended Foreclosure Judgment against the Loricks in 2016[14] and, relying on that Judgment, the Subject Property was foreclosed upon and sold in connection with the Bankruptcy Proceeding in 2017; plaintiffs then commenced this litigation in 2018. Compare 12/29/17 Bankruptcy Order and Amended Foreclosure Judgment, with 12/17/18 Compl.[15]

---

[13] WFB also invokes the *Younger* abstention doctrine, which has no application in the present case, as one of the elements of that doctrine is that the plaintiff is seeking federal court intervention while "a state proceeding is pending[.]" 7/6/20 WFB Mot. at 15 (citing Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995)). Here, however, all state proceedings relevant to the current controversy concluded before this action was commenced.

[14] To the extent that Cynthia Lorick never formally appeared in the Foreclosure Action, that circumstance does not alter the analysis, as she clearly had notice of the litigation. See Gurdon v. Doral Bank, 15-CV-5674 (GBD) (JLC), 2016 WL 721019, at *5 & n.5 (S.D.N.Y. Feb. 23, 2016), adopted, 2016 WL 3523737 (S.D.N.Y. June 22, 2016); Andrews v. Citimortgage, Inc., No.14-CV-1534(JS)(AKT), 2015 WL 1509511, at *5-6 (E.D.N.Y. Mar. 31, 2015) (dismissing, on *Rooker-Feldman* grounds, fraud claims relating to defendant's attempt to foreclose on plaintiffs' property following default judgment in state foreclosure action).

[15] "[T]he fact that there are additional Defendants in the present case is not an obstacle to Rooker-Feldman's bar[,]" as "the Rooker-Feldman doctrine does not require that there be a complete identity of parties in the underlying state-court action as [in] the federal court case." Yan Ping Xu v. Suffolk Cnty., 19-cv-1362 (JMA) (ARL), 2021 WL 1163007, at *3 (E.D.N.Y. Mar. 26, 2021) (collecting cases).

Plaintiffs' claims in this case likewise satisfy the two substantive prongs of *Rooker-Feldman*, in that the injuries complained of were caused by the state court's judgment (the second prong) and invite this Court to review and reject that judgment (the third prong). While the "full meaning of [the Hoblock causality prong] is far from obvious[,]" McKithen v. Brown, 481 F.3d 89, 97 (2d Cir. 2007), the Second Circuit in Hoblock offered some "negative guidance as to what cases are *not* captured by the requirement": to wit, suits raising "independent claims," "even if they involve the identical subject matter and parties as previous state-court suits[,]" Hoblock, 422 F.3d at 86.[16] The claims asserted in the instant litigation, while dressed up as causes of action sounding in fraud, are anything but independent of the judgment rendered in the Foreclosure Action. Indeed, as Judge Vitaliano observed, in granting a similar Rule 12(b)(1) motion, "courts in this [C]ircuit routinely dismiss challenges to state court foreclosure judgments under *Rooker-Feldman*." Desir v. Florida Cap. Bank, N.A., 377 F.Supp.3d 168, 172 (E.D.N.Y. 2019); accord Blagrove v. Deutsche Bank Nat'l Tr. Co., 19-CV-5357 (RPK) (LB), 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (collecting cases).

When pressed at oral argument "to articulate with precision . . . the damages that the plaintiffs are asserting in this action that are not the result of the unfavorable judgment in the state court action[,]" 7/19/21 Tr. at 47:7-10, plaintiffs' counsel proffered a variety of theories, see id. at

---

[16] An example of an independent claim is one brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to collect on a debt owed as a result of a state court judgment. See, e.g., McCrobie v. Palisades Acquisition XVI, LLC, 664 F.App'x 81, 83 (2d Cir. 2016) (district court erred in applying *Rooker-Feldman* doctrine to FDCPA claims, as plaintiff was not seeking "to overturn the underlying state-court [default] judgment[,]" but instead was challenging defendants' "conduct in their attempts to collect on that judgment"); Borrani, 2019 WL 1429982, at *10 (in case arising out of allegedly defective and fraudulently obtained state foreclosure judgment, court concludes that "*Rooker-Feldman* deprives the Court of subject matter jurisdiction over Plaintiff's RICO, wire fraud, fraud and deceit, and intentional and/or negligent infliction of emotional distress, but not Plaintiff's FDCPA, TILA, RESPA, and unjust enrichment claims" – which the court dismissed based on collateral estoppel and res judicata); Hines v. HSBC Bank USA, 15-CV-3082 (CBA) (MDG), 2016 WL 5716749, at *5 (E.D.N.Y. Sept. 30, 2016) (*Rooker-Feldman* barred foreclosure-related claims, including plaintiff's challenge to "the authenticity of the underlying debt instruments," but did not bar collection-related claims).

47:11–49:24, but was constrained to acknowledge that the alleged injuries were caused by the sale of the Subject Property, id. at 49:4-10.[17]  As such, the harm to plaintiffs flowed from the Amended Final Judgment in the Foreclosure Action.  See Swiatkowski, 745 F.Supp.2d at 165 (where plaintiff sought monetary damages for financial and emotional distress resulting from defendants' conduct in obtaining and enforcing state court foreclosure judgment, which was relied upon by the bankruptcy court, the state court judgment was the cause of plaintiff's injuries and her claims were barred by *Rooker-Feldman*).

In an attempt to avoid *Rooker-Feldman's* jurisdictional bar, plaintiffs contend that their claims fail the final substantive prong of the Hoblock analysis, as plaintiffs are seeking "damages for non-renewal of the loan term" rather than "to overturn the state court judgment."  Pl. Opp. Mem. WFB at 8.  A demand for damages in lieu of equitable relief (such as setting aside a foreclosure sale) does not, however, end the inquiry under this prong: rather than looking to the form of the relief requested, courts must evaluate whether the state-court loser's federal action "invit[es] district court review and rejection of [the state court] judgments."  Hoblock, 422 F.3d at 85 (quoting Exxon Mobil, 544 U.S. at 284).  Accordingly, where the federal court would necessarily have to review the merits of the state court judgment to determine the plaintiff's entitlement to damages, the third prerequisite to application of *Rooker-Feldman* has been satisfied. See Swiatkowski, 745 F.Supp.2d at 165 ("Although plaintiff has labeled the relief in the complaint as seeking monetary damages [for injuries resulting from foreclosure judgment], it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment.").

---

[17] Specifically, he claimed that plaintiffs suffered artificially inflated amounts owed under the Note, a higher (i.e., default) interest rate, accelerated payments, attorneys' fees, and a depressed sale price on the Subject Property.  See 7/19/21 Tr. at 47:18-49:10.

Judge Bianco's analysis and conclusions in the strikingly similar Swiatkowski case apply with equal force to the case at bar.  Like plaintiffs in this case, Swiatkowski alleged that she had not defaulted under the mortgage and that the defendants had "engaged in a pattern of submitting fraudulent and perjurious documents related to the . . . Judgment of Foreclosure and Sale in other courts, including in Bankruptcy Court."  Swiatkowski, 745 F.Supp.2d at 165.  There, as here, the plaintiff complained that the defendants' "fraudulent behavior undermines the outcome of the state court proceeding that resulted in the foreclosure judgment[,]" which defendants then filed in support of their proof of claim in Swiatkowski's subsequent bankruptcy proceedings.  See id. Concluding that the allegations in the federal civil complaint were thus "inextricably intertwined with the state court judgment and would require overturning the state court judgment," and that "the state court judgment was the cause of plaintiff's injuries," Judge Bianco held that Swiatkowski's claims were barred by *Rooker-Feldman*.  Id.  On appeal, the Second Circuit affirmed "for substantially the same reasons stated [in Judge Bianco's] thorough and well-reasoned decision."  Swiatkowski v. Citibank, 446 F.App'x 360, 360 (2d Cir. 2011).  The Court of Appeals explained:

> Swiatkowski attempts to avoid application of the *Rooker-Feldman* doctrine by asserting that she is challenging the defendants' conduct in bankruptcy court in litigating a proof of claim, as opposed to their conduct in state court foreclosure proceedings.  The validity of the proof of claim at issue, however, depended entirely on the validity of the underlying state court foreclosure judgment such that a decision in Swiatkowski's favor would effectively amount to "declar[ing] the state court judgment fraudulently procured and thus void."

Id. (citation omitted).

So too here, plaintiffs cannot circumvent *Rooker-Feldman* by complaining of fraud in the state court proceedings and challenging the authenticity of the Stipulation of Settlement that

ultimately resulted in the Amended Foreclosure Judgment.  Contrary to plaintiffs' suggestion, there is no "fraud-on-the-court" exception to the *Rooker-Feldman* doctrine: The Second Circuit has "clearly held that a plaintiff cannot rely on allegations that the state court judgment at issue 'was obtained fraudulently' to avoid application" of that doctrine, since such an exception "'would require the federal courts to  review the state proceedings and determine that the . . . judgment was issued in error,' which *Rooker-Feldman* instructs we cannot do."  Fiorilla v. Citigroup Glob. Mkts., Inc., 771 F.App'x 114, 115 (2d Cir. 2019) (alterations in the original) (quoting Vossbrinck, 773 F.3d at 427); see Andrews v. Citimortgage, Inc., 14-CV-1534(JS)(AKT), 2015 WL 1509511, at *5 (E.D.N.Y. Mar. 31, 2015) (collecting cases and rejecting argument that "*Rooker-Feldman* does not apply because Defendant allegedly obtained the Foreclosure Judgment through fraud").  Nor should plaintiffs be heard to argue that their claims against defendants are somehow independent of the state court judgment in that they allege fraudulent conduct in connection with judicial proceedings but do not seek to set aside the state judgment; the Second Circuit rejected a similar argument in Fiorilla, concluding that the only fraud-related "'damage' [complained of] . . . comes from the unfavorable state court judgment."  771 F.App'x at 115.

To be sure, several relatively recent decisions of the Second Circuit have declined to sustain dismissals under *Rooker-Feldman*, concluding that the injuries of which the plaintiffs complained were not "produced by the state-court judgments at question [but were] merely ratified by such judgments[.]"  Sung Cho v. City of New York, 910 F.3d 639, 646 (2d Cir. 2018); accord Dorce v. City of New York, 2 F.4th 82, 104 (2d Cir. 2021).[18]  The Sung Cho and Dorce cases involved factual scenarios bearing no resemblance to the instant case.  The plaintiffs in both cases claimed to have received no notice that the City of New York had commenced proceedings, under

---

[18] In Dorce, after scrutinizing various aspects of the alleged injuries, the Second Circuit concluded that some of the plaintiffs' claims had been properly dismissed under *Rooker-Feldman*.  See 2 F.4th at 105.

municipal programs, pursuant to which the City sought to deprive them of substantial property rights (Sung Cho involved so-called "no-fault evictions," 910 F.3d at 642, whereas Dorce involved forfeitures of tax-delinquent properties, 2 F.4th at 88-90). In Sung Cho, the plaintiffs claimed that, faced with eviction, they had been coerced into entering into so-ordered settlement agreements that required them to waive various constitutional rights. See 910 F.3d at 643. In Dorce, the plaintiffs claimed to have received no notice of the state foreclosure proceedings that resulted in default judgments pursuant to which their properties were taken and their equity forfeited on account of modest tax delinquencies. See 2 F.4th at 91, 92. In both cases, the plaintiffs filed federal civil actions, challenging the municipal programs and raising claims that "implicate[d] fundamental constitutional rights[.]" Dorce, 2 F.4th at 100; see Sung Cho, 910 F.3d at 647-48.

The case at bar neither implicates fundamental constitutional rights nor involves plaintiffs who lacked notice of the underlying state Foreclosure Action. Rather, this suit represents the kind of collateral attack on a state court foreclosure judgment that has become all too commonplace in this Circuit. As Judge Vitaliano astutely observed in dismissing a similar lawsuit on jurisdictional grounds, courts within this Circuit, while "heeding [the Second Circuit's] caution" in Sung Cho and other decisions, "routinely dismiss challenges to state foreclosure judgments under *Rooker-Feldman*." Desir, 377 F.Supp.3d at 172; see also Yan Ping Xu v. Suffolk Cnty., 19-CV-1362 (JMA) (ARL), 2021 WL 1163007, at *4 (E.D.N.Y. Mar. 26, 2021) ("This case is distinguishable from Sung Cho (and the cases cited therein) because Plaintiff complains of injuries caused by the underlying state court [eviction] orders.").

The principle that emerges from all of the caselaw is that the Court "must scrutinize the injury of which [the] plaintiff[s] complain as a necessary step toward determining whether the suit impermissibly seeks review and rejection of a state court judgment, or permissibly seeks some

other remedy." Charles v. Levitt, 716 F.App'x 18, 21 (2d Cir. 2017) (citing Hoblock, 422 F.3d at 87-88); see Sung Cho, 910 F.3d at 646 (injury caused by state court judgment "is the core requirement from which the other *Rooker-Feldman* requirements derive") (internal quotation marks and alterations omitted). The injuries that plaintiffs' counsel identified at oral argument[19] all stem from the (allegedly tainted) unfavorable state court judgment and resulting sale of the Subject Property; accordingly, those allegations invite "review and rejection" of the Amended Foreclosure Judgment, contrary to *Rooker-Feldman*. See Fiorilla, 771 F.App'x at 115 (quoting Vossbrinck, 773 F.3d at 426; Hoblock, 422 F.3d at 85); see also Hourani v. Wells Fargo Bank, N.A., 158 F.Supp.3d 142, 146 (E.D.N.Y. 2016) (*Rooker-Feldman* barred review of claims as to which "the complained-of injury (i.e., sale of the Property) was the result of the state court's Foreclosure Judgment."); Andrews, 2015 WL 1509511, at *4 ("Plaintiffs' claim for the return of mortgage payments can only be construed as alleging injuries that occurred as a result of the Foreclosure Judgment[.]"); Gunn v. Ambac Assur. Corp., No. 11 Civ. 5497 (PAC)(JLC), 2012 WL 2401649, at *12 (S.D.N.Y. June 26, 2012) (the complained-of injuries, including the loss of plaintiff's home "and the funds he devoted to its improvements[,]" were caused by the foreclosure order, and the resulting claims were barred by *Rooker-Feldman*, notwithstanding plaintiff's allegation that the underlying judgments were procured by fraud), adopted, 2012 WL 318849 (S.D.N.Y. Aug. 6, 2012).[20] As in Swiatkowski and Fiorilla, plaintiffs' claims for pecuniary redress are "inextricably intertwined" with the state court judgment and hence are jurisdictionally barred by *Rooker-Feldman*. Simply put, "to the extent that plaintiff[s] claim[] [they] w[ere] aggrieved by the state

---

[19] See *supra* p. 15 & note 17.

[20] As discussed in the next section of this opinion, to the extent that *Rooker-Feldman* does not deprive the Court of jurisdiction over plaintiffs' claims related to the WFB defendants' failure to renew the Loan and/or to credit their account for any monthly mortgage payments made pursuant to the alleged renewal, such claims are nevertheless barred by res judicata.

court's ruling, the proper venue to challenge that decision was by appeal in state court – not in federal court." Swiatkowski, 745 F.Supp.2d at 167.

## II.    Res Judicata

Defendants additionally argue that res judicata precludes plaintiffs' claims. See, e.g., 7/6/20 WFB Mot. at 16-17; 7/19/21 Tr. at 17:1-6.[21]  This Court agrees. Thus, even assuming that some or all of plaintiffs' claims survive *Rooker-Feldman*, here, as in many other cases in this Circuit involving challenges to state foreclosure judgments, the case should be dismissed with prejudice under Rule 12(b)(6) on the basis of claim preclusion. See, e.g., Borrani, 2019 WL 1429982, at *12 ("[I]n addition to the Rooker-Feldman doctrine, . . . res judicata serve[s] as [an] alternative bas[i]s for the Court to dismiss Plaintiff's RICO, wire fraud and fraud and deceit claims[,]" as well as her unjust enrichment claim); Pennicott v. JPMorgan Chase Bank, N.A., 16 CV 3044 (VB), 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018) (although claims for fraud in the concealment, civil conspiracy, and breach of the covenant of good faith and fair dealing survived *Rooker-Feldman* challenge, they were barred by res judicata); Swiatkowski, 745 F.Supp.2d at 169-72. Where there has been "'a final judgment on the merits of an action,'" res judicata, also known as claim preclusion, provides an affirmative defense that precludes "'the parties or their privies from relitigating issues that were or could have been raised in that action.'" Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (emphasis added in Flaherty) (quoting Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998)). Here, as in Swiatkowski, 745 F.Supp.2d at 170, determinations in the Foreclosure Action and Bankruptcy Proceeding have res judicata effect on the claims in the SAC.

---

[21] Courts may also consider a res judicata defense *sua sponte*. See Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993).

A.    The Foreclosure Action

Turning first to the Foreclosure Action, "[t]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." Blumatte v. Farthing, 320 F.App'x 68, 70 (2d Cir. 2009) (quoting Wight v. BankAmerica Corp., 219 F.3d 79, 87-88 (2d Cir. 2000)).  Under New York law, res judicata bars a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015) (alterations and citation omitted); see Swiatkowski, 745 F.Supp.2d at 171.

Each of the aforesaid elements has been met in this case.  First, the Foreclosure Action resulted in an adjudication on the merits.  Faced with WFB's motion for summary judgment, Mr. Lorick entered into a Stipulation of Settlement, pursuant to which the State Court entered a judgment in favor of WFB when the Loricks failed to pay off the Mortgage before the stipulated deadline.  "The general rules governing judgments apply to those taken by consent or upon stipulation which, in the case of individuals and private corporations, constitute a bar to the same extent as other judgments." Canfield v. Elmer E. Harris & Co., 252 N.Y. 502, 505 (1930).  As for Cynthia Lorick, to the extent that she failed to enter an appearance in the Foreclosure Action, a "foreclosure default judgment is a final judgment on the merits." Harris v. BNC Mortg., Inc., 737 F.App'x 573, 575 (2d Cir. 2018); see Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 200 (2d Cir. 2001) (under New York law, res judicata applies "to an order or judgment taken by default").  In other words, "actual litigation is not required for res judicata; it need only

be shown that a party had the opportunity to litigate the claims." Harris, 737 F.App'x at 575

(citing EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 626 (2d Cir. 2007)).

The second prerequisite to claim preclusion has likewise been satisfied, as the Foreclosure

Action "involved the same adverse parties or those in privity with them[.]" Marcel Fashions, 779

F.3d at 108 (alteration omitted). The Loricks were named as defendants in the Foreclosure Action,

which was brought by WFB, a defendant herein. WFB was represented in that action by the KTS

defendants, who, while not parties to that litigation, were in privity with WFB, thereby satisfying

the second element of the test. See Ray Legal Consulting Grp. v. Gray, 37 F.Supp.3d 689, 701-02

(S.D.N.Y. 2014) (for purposes of res judicata, an attorney was in privity with his client, as they

shared the same interests); accord Boyd v. Wells Fargo Bank, N.A., 19-cv-4323 (MKB), 2021 WL

1812660, at *8 (E.D.N.Y. May 6, 2021).

Lastly, the claims asserted in this federal lawsuit were or could have been raised in the

prior action: "New York courts have adopted the 'transactional approach' to res judicata, holding

that if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause

of action and the later claim will be barred without regard to whether it is based upon different

legal theories or seeks different or additional relief." Davidson v. Capuano, 792 F.2d 275, 278

(2d Cir. 1986) (collecting cases); see Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994) (under

New York law, where claims "arise from the same underlying transaction[,]" parties are prevented

"from raising in a subsequent proceeding any claim they could have raised in the prior one")

(emphasis added).

The Loricks' claims in the case at bar challenge defendants' purported bad faith and fraud

in connection with their dealings with the Loricks, as well as the WFB defendants' violations of

their contractual obligations by failing to renew the Loan. Most of the factual allegations advanced

by plaintiffs "involve issues that could have been raised as claims and defenses in the state court proceedings." Swiatkowski, 745 F.Supp.2d at 172; see Hourani, 158 F.Supp.3d at 147-48 ("All of Hourani's claims [of fraud, bad faith, and breach of agreement] were . . . matters that Hourani raised or might have raised in that [foreclosure] action. As such, his claims are barred by res judicata."). Plaintiffs do not deny that the claims in the SAC arise out of the same "factual grouping" as those asserted in the Foreclosure Action and thus could have been interposed in that prior litigation. Instead they invoke New York's permissive counterclaim rule in arguing that res judicata "does not apply[.]" Pl. Opp. Mem. WFB at 8-9; see 7/19/21 Tr. at 38:9-38:15. But plaintiffs overstate the ramifications of the permissive counterclaim rule and, in focusing on counterclaims, overlook the fact that "[r]es judicata applies to defenses that could have been raised in the prior action as well." Swiatkowski, 745 F.Supp.2d at 171 (collecting cases); see Pennicott, 2018 WL 1891312, at *4; Hourani, 158 F.Supp.3d at 147 (res judicata "applies to defenses that could have been litigated, including defenses to a foreclosure") (internal quotation marks omitted).

In Harris v. BNC Mortgage, Inc., 737 F.App'x 573 (2d Cir. 2018), a *pro se* plaintiff sued several financial institutions, alleging that they had fraudulently obtained a default judgment against her in a New York State foreclosure action. See id. at 574. Like the Loricks, she invoked New York's permissive counterclaim rule in seeking to avoid claim preclusion. The Second Circuit swiftly rejected her argument and affirmed the district court's dismissal of the action:

> Harris is correct that New York, unlike the federal courts, does not have a compulsory counterclaim rule, requiring a defendant to raise any counterclaim it has that arises out of the facts of the plaintiff's claims. . . . But "a party is not free to remain silent in an action in which [s]he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." . . . Harris seeks to obtain declaratory relief that the defendants did not have a valid mortgage note and fraudulently obtained mortgage documents, and therefore were not entitled to recover any property or money from her related to the mortgage. This relief would be inconsistent with the judgment in the foreclosure action.

737 F.App'x at 575-76 (quoting Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of N.Y., 68 N.Y.2d 456, 462 (1986)) (brackets added in Harris).

Here, as in Harris, the claims alleged in the SAC could have been asserted in the Foreclosure Action — as defenses as well as counterclaims.  For example, plaintiffs contend that they did not default on the Loan, and Boysin Lorick interposed that defense in his *pro se* Answer in the State Case.  See Answer (Mar. 20, 2013), [NYCSEF] Doc. No. 225 at 2-3 in the Foreclosure Action ("In 27 years I own this property [I] never missed a payment.").  The Amended Foreclosure Judgment entered by the state judge determined otherwise, concluding that the Loricks had defaulted on the Note and Mortgage prior to the commencement of that lawsuit, as admitted by Mr. Lorick in his Stipulation of Settlement.  See Amended Foreclosure Judgment at 2.  Plaintiffs failed to appeal from that judgment[22] and are precluded from asserting any claim inconsistent with that determination.  Similarly, as the Final Judgment in the Foreclosure Action determined the amounts due from plaintiffs on the Note, see, e.g., [3/23/16] Foreclosure Action Report of Amount Due, DE #45-5 at 15-17, plaintiffs are likewise estopped from now challenging those calculations.

The decision in Graham v. Select Portfolio Servicing, Inc., 156 F.Supp.3d 491 (S.D.N.Y. 2016), is instructive.  In Graham, following a foreclosure action in state court, a mortgagor brought a federal action against a bank (the owner and holder of the mortgage) and the loan servicing company, asserting claims similar to those in the instant action, for fraud, breach of contract, unjust enrichment, conversion and related causes of action.  The defendants moved to dismiss the complaint, asserting, among other things, that the claims were barred by *Rooker-*

---

[22] The only appeal filed in the Foreclosure Action was from an order appointing a receiver, and that appeal was never perfected.  See *supra* note 6.

*Feldman* and res judicata.  In one set of claims, referenced in the opinion as "the loan modification claims," the plaintiff alleged that after his default on his payments, he and the loan servicing company had entered into a loan modification agreement, pursuant to which he had made five monthly payments; the bank nevertheless initiated a foreclosure action, obtained a judgment of foreclosure and sale, and refused to credit the five monthly payments to his account.  See id. at 500-01, 506-07.

After opining that the loan modification claims were not precluded by *Rooker-Feldman*, because "the record does not show that the state court decided any of the issues presented by [those particular] claims," id. at 508,[23] the district court held that res judicata barred the loan modification claims, see id. at 508-11.  As the court explained, "New York courts have held that a defendant in a foreclosure action should assert claims for breach of contractual obligations under the mortgage agreement as defenses against the plaintiff lender in the original foreclosure action."  Id. at 509 (collecting cases).  This principle applied to Graham's accusations of uncredited monthly payments:

> [T]he amount of the outstanding loan was itself an issue in the state court foreclosure proceeding. The failure to credit amounts that were in fact paid was an issue that should have been raised in the foreclosure action. The state court calculated the amount due on Graham's note and the amount of mortgage payments in default during the foreclosure proceeding.  Graham could have raised the issue of the uncredited payments before the state court and could have sought to deduct the payments from the amount he owed. . . .  Having had the opportunity to challenge the amount he owed, Graham cannot bring alternative claims that are premised on theories that were available to him and that he could have argued at the time of the state foreclosure proceeding. Based on the Court's review of the record, the allegations about [the loan servicer's] alleged failure to credit Graham's account for the five monthly payments he allegedly made, the unjust enrichment of the defendants, and the defendants' alleged conversion of the payments, are within the same nucleus of facts as the facts of the foreclosure action. Thus, res judicata bars the loan modification claims[.]

---

[23] The court in Graham did dismiss on *Rooker-Feldman* grounds Graham's remaining claims, which alleged, *inter alia*, that the bank had used void or counterfeit assignments, and had engaged in a "continuous practice of fraud upon the [state] court[.]"  Graham, 156 F.Supp.3d at 504-05.

Id. at 511 (record citations omitted).

In the instant case, as in Graham, the Loricks could have raised in the Foreclosure Action the issue of the uncredited monthly payments following WFB's alleged renewal of the Loan; what they cannot do is "bring alternative claims that are premised on theories that were available to [them] and that [they] could have argued at the time of the state foreclosure proceeding." Id. As the SAC's allegations concerning the failure to credit monthly payments to the Loricks' account "are within the same nucleus of facts as the facts of the foreclosure action[,]" id., res judicata bars the claims predicated on those allegations.

B.       The Bankruptcy Proceeding

To the extent that plaintiffs' RICO and fraud claims allege that Mr. Lorick was defrauded into signing the Stipulation of Settlement, those claims are similarly precluded on account of res judicata, albeit on a somewhat different basis. During the course of the Bankruptcy Proceeding, plaintiffs, in litigating the distribution of assets in the bankruptcy estate, challenged the legitimacy of the Stipulation of Settlement.[24] Judge Lord nevertheless relied upon the Amended Final Judgment in the Foreclosure Action in allocating the proceeds of the sale of the Subject Property, thereby rejecting the Loricks' objection to the Stipulation on which the judgment was based.[25]

---

[24] See, e.g., Debtors' Chapter 11 Disclosure Statement, DE #333 at 9 in the Bankruptcy Proceeding (Bankr. E.D.N.Y. Dec. 12, 2018) ("Mr. Friedlander obtained the signature of Mr. Lorick on a Stipulation of Settlement and Order (Stip) without the benefit of either reading or giving him a copy of the entire stipulation. Based on the Stip, on February 21, 2014 the State Supreme Court Judge Hon. Bernard Graham signed and 'So Ordered', and entered Final Judgment of Foreclosure and Sale."); Lorick Bankruptcy Aff. ¶¶ 3, 8, 9 ("This law firm [KTS] is responsible for taking away my property by unlawful means . . . . I did not have the benefits of a good lawyer. . . . [WFB] committed a fraud on the state court by misleading facts and creating paperwork which were false in order to achieve a result. . . . Judgement was obtained with fraud and filing false statements. . . . Where is my justice and payment on my claim for breach of contract and racketeering claim[?] So they are not entitled to any money disbursement from this case.").

[25] During oral argument on the pending motions, plaintiffs' counsel argued, without citation to the record, that the bankruptcy judge had expressly disclaimed any res judicata effect attaching to her orders and rulings. See 7/19/21 Tr. at 22:2-8. In response to this Court's request for a record citation, counsel thereafter submitted a transcript of a hearing in the Bankruptcy Proceeding on December 21, 2017, in which he had participated. See [12/21/17 Bankruptcy]

"The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." Katchen v. Landy, 382 U.S. 323, 334 (1966); accord EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007).[26]    As all the elements of res judicata have been satisfied with respect to the aforesaid determination of the bankruptcy court, plaintiffs' RICO and fraud claims, along with their breach of contract and related claims, are barred by res judicata. See Swiatkowski, 745 F.Supp.2d at 172 ("Res judicata also bars plaintiff's forgery and fraudulent document claims to the extent that they were raised in the Bankruptcy Court.").

In sum, to paraphrase Judge Bianco in Swiatkowski:

[B]ecause plaintiff[s] raised or could have raised [their] present claims in prior court actions, which were previously adjudicated on the merits—in both state court and before the Bankruptcy Court—and because plaintiff[s] [were] involved in those prior actions, res judicata bars plaintiff[s'] current federal claims based upon allegedly fraudulent submissions made by defendants in state court and Bankruptcy

---

Hearing Transcript, DE #63-1 in the Bankruptcy Proceeding. During that lengthy hearing on WFB's motion for an order distributing the proceeds of the sale of the Subject Property, Judge Lord addressed the disputed extent of WFB's entitlement and, in particular, the appropriate rate of post-judgment interest and WFB's demand for interest on interest; in response to Mr. Dahiya's "proposal . . . that . . . you give them the payment based on the state court judgment and that's it, whatever the state court has given," id. at 17:8-10, Judge Lord calculated post-judgment interest at the statutory 9% rate, rather than the default rate sought by WFB, without prejudice to WFB's right to litigate its entitlement to additional sums, and with a written order to follow. See, e.g., id. at 37:13-40:10, 41:2-4, 42:17-44:16, 46:14-19, 49:14-16, DE #63-1. The resulting written order confirms that, contrary to plaintiffs' suggestion, Judge Lord was not suggesting that all of her determinations in the Bankruptcy Proceeding were "without prejudice." See 12/29/17 Bankruptcy Order (granting in part WFB's motion for an order directing the distribution of sales proceeds, over the Loricks' "limited opposition"; authorizing a distribution to WFB of $4,039,705.12; and ruling "that this Order is without prejudice to [WFB's] ability to seek the balance of its requested relief, or to any other party's ability to oppose the same") (emphasis added).

[26] At oral argument on the pending motions, plaintiffs' counsel invoked the Second Circuit's decision in Crawford v. Franklin Credit Management Corp., 758 F.3d 473, 484-86 (2d Cir. 2014), a RICO civil action in which the Court of Appeals declined to accord any preclusive or estoppel effect to the failure of the borrower-plaintiff to disclose her claims against the lender-defendant as an asset in a prior bankruptcy case. See 7/19/21 Tr. at 28:12-29:13. In Crawford, the appellate court reasoned that because the plaintiff's bankruptcy petition had been dismissed, her property in the bankruptcy estate had been restored to her, giving her standing to present the claims in the civil action. See 758 F.3d at 484-85. In addition, as there had been no ruling by the bankruptcy court relating to the plaintiff's unscheduled causes of action, there was "no risk of inconsistent adjudications" and thus "no ground for judicial estoppel." Id. at 486.

Here, in contrast, there is in fact a "risk of inconsistent adjudications," inasmuch as judicial determinations were made in the Bankruptcy Proceeding before dismissal of the case, and plaintiffs now seek to relitigate those issues. Therefore, Crawford has no bearing on the issues in this case. See generally Swiatkowski, 745 F.Supp.2d at 160, 173 (despite dismissal of bankruptcy case without prejudice, court applies res judicata to bar claims that were litigated in the bankruptcy court).

Court, and based on any alleged error in the state court's Judgment of Foreclosure and Sale.

Id. at 173 (footnote omitted).[27]

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that defendants' motions to dismiss be granted and the action dismissed.

Any objections to the recommendations contained herein must be filed with Judge Vitaliano on or before September 3, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated:       **Brooklyn, New York**
             **August 20, 2021**

                              /s/ *Roanne L. Mann*
                              **ROANNE L. MANN**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[27] Inasumch as this Court recommends dismissal of plaintiffs' claims based on *Rooker-Feldman* and/or res judicata, it does not address defendants' arguments that the SAC otherwise fails to state a claim. See Borrani, 2019 WL 1429982, at *13. Should the District Court desire this Court's analysis of those arguments, it stands ready to provide it.